**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JOHN ACZEL                    :        NO: 3:00 CV 1802 (AWT)

                                   :

v.                             :

                                   :

LEONARD LABONIA and        :

ETHAN MABLE               :        JULY 30, 2004

**JOINT TRIAL MEMORANDUM**

**1.    Trial Counsel:**

    For the Plaintiff:        Tiziana M. Scaccia, ct08713
                                 GOLDSTEIN AND PECK, P.C.
                                 1087 Broad Street
                                 Bridgeport, CT 06606
                                 (203) 334-9421
                                 (203) 334-6949 (fax)

    For the Defendants:      Thomas R. Gerarde, ct05640
                                 John J. Radshaw III, ct19882
                                 HOWD & LUDORF
                                 65 Wethersfield Avenue
                                 Hartford, CT 06114-1190
                                 (860) 249-1361
                                 (860) 249-7665 (fax)

**2.    Jurisdiction.**

    This Court has jurisdiction over this matter pursuant to § 1331 and §1343 of Title 28, §1983, §1988 of Title 42 of the United States Code and pursuant to 28 U.S.C. §1367(a).  This Court also has supplemental jurisdiction or pendant jurisdiction over state law claims alleged by the Plaintiff against Defendants as those claims form a part of the same case or controversy.  Venue of this action is proper pursuant to 28 U.S.C. §1391.

**3.    Jury/Non-Jury.**

    This case will be tried to a jury on all issues so triable.

4.    **Nature of Case.**

The parties cannot agree on a statement concerning the nature of the case. Therefore, they have set down separate versions as follows:

a.    **Plaintiff's Version.**

This is a civil rights case brought by the plaintiff, John Aczel, under 42 U.S.C. Section 1983 and under 42 U.S.C. Section 1988 alleging that his Fourth and Fourteenth Amendment rights were violated. Plaintiff alleges that he was falsely arrested and subjected to excessive force on August 10, 1999 by Defendant, Leonard Labonia and Defendant, Ethan Mable, both of whom are police officers of the City of Danbury. Plaintiff alleges that he was subjected to excessive force by Defendant police officers when, without probable cause, the police officers placed him in the police cruiser and then subsequently repeatedly and violently struck his head, face, and body, pepper sprayed him and placed him under arrest.  Plaintiff claims that Defendant police officers had a realistic opportunity to prevent use of excessive force against him but did not do so, and that Defendant police officers denied him adequate medical care despite the obligation of police officers to provide medical treatment to persons injured by the police by falsely informing medical personnel at Danbury Hospital that he was intoxicated, although Defendant police officers did not seek to perform and did not perform any tests to confirm such claims.

Plaintiff also alleges that Defendant police officers violated the laws of the State of Connecticut. Plaintiff is suing Defendant police officers for violation of the state law tort of Assault and Battery.  Plaintiff is also suing Defendant police officers for wrongfully and unlawfully confining him in the police car before assaulting him and later detaining him at the police station, all without reason, justification or authority in violation of the

state law tort of False Imprisonment.  Plaintiff is also suing Defendant police officers for using the criminal process against him in order to intimidate him from asserting his rights against them and in order to cover up their own wrongdoing and avoid civil and criminal liability for their own acts in violation of the state law tort of Abuse of Process. As part of the Abuse of Process claim, Plaintiff claims that Defendant police officers arrested him for committing the crime of interfering with a police officer and breach of peace to conceal and excuse their attack on him.  Plaintiff further claims that Defendant police officers further attempted to conceal their attack on him by preparing a false police report, (which they knew, and intended, would be forwarded to and relied upon by a prosecutor), and, by falsely informing medical personnel at Danbury Hospital that he was intoxicated, although Defendant police officers did not seek to perform and did not perform any tests to confirm such claims.  Plaintiff is also suing Defendant police officers for violation of the state law tort of Intentional Infliction of Emotional Distress.

The Defendant police officers deny liability.  With respect to most of the claims made by Plaintiff, Defendant police officers assert that all of their actions were objectively reasonable under the circumstances.

Plaintiff claims as part of his damages that he was incarcerated for four to five hours, was required to appear in Court as an accused criminal, and was required to spend money to hire an attorney to defend himself against the false charges. Additionally, Plaintiff claims that he suffered a loss of liberty, inconvenience and humiliation, great physical pain and disability, and extreme emotional distress, with associated economic loss.  Plaintiff also claims to have suffered a traumatic brain injury, traumatic labyrinthitis, a fracture of the left wrist; traumatic headaches; TMJ injury; a

fractured zygomatic arch requiring surgical repair, rib injuries, and a knee injury.

**b.    Defendants' Version**

This is a civil rights case brought by the plaintiff under 42 U.S.C. § 1983 alleging that he was subject to excessive force on August 10, 1999 in the City of Danbury.  The plaintiff claims he was subject to excessive force by a police officer. The defendants claim that they were dispatched to Highland Avenue to investigate a complaint of a dispute. In the course of their investigation, they determined that the plaintiff was a suspect and briefly detained him in order to complete the investigation. During the brief detention, the plaintiff, who the officers suspected was intoxicated, refused to comply with the lawful instructions of the officers, became violent, assaulted a police officer and refused to submit to being handcuffed. The officers were forced to use a reasonable degree of force to ensure the plaintiff's compliance.

The plaintiff also joins pendent state law causes of action for Assault and Battery, False Imprisonment, Abuse of Process, and Intentional Infliction of Emotional Distress.

The defendant officers deny liability, and assert that all of their actions were reasonable and justified under the circumstances.

**5.    Stipulations of Fact and Law.**

a.    On August 10, 1999 Officers Leonard LaBonia and Ethan Mable were police officers employed by the City of Danbury Police Department.

b.    On August 10, 1999  Officer LaBonia was dispatched to investigate a complaint at 42 Highland Avenue, Danbury, CT

c.    Upon arrival, Officer Labonia parked his vehicle in the parking lot of 42 Highland Avenue, Danbury, CT

**6.    Plaintiff's Contentions.**

This is an action for money damages to redress the deprivation by Defendants of rights secured to Plaintiff by the Constitution and laws of the United States and the State of Connecticut.  The Defendants, Leonard Labonia (hereinafter "Labonia") and Ethan Mable (hereinafter "Mable") subjected the Plaintiff to unreasonable force in the course of an unlawful arrest.

On or about August 10, 1999, at approximately 4:30 p.m., Aczel had a verbal disagreement with a non-party concerning the use of a clothes dryer located at the premises known as 42 Highland Avenue, Danbury, CT. Labonia was called to the scene in the course of the verbal dispute. Upon arrival, Labonia, without probable cause or reasonable suspicion, directed Aczel to the back seat of the police car.  As Aczel entered the police car, the car was parked, the motor was off, and the windows were closed.  Labonia locked Aczel inside the car and left him unattended while he proceeded to interview the other participant to the dispute.  The heat and lack of air inside the police car caused Aczel to experience physical discomfort, including breathing difficulties.  Fearful for his safety, Aczel attempted to gain the officer's attention by knocking on the police car window.  In response, Labonia approached Aczel in a threatening and menacing manner, pulled him from the car, physically attacked Aczel and repeatedly and violently struck Aczel's head, face, and body, and sprayed Aczel with pepper spray.

Mable witnessed and participated in the attack on Aczel.  In arresting Aczel, Labonia and Mable used physical force which was clearly excessive in light of the circumstances existing at the time of the arrest. While being transported to the Danbury Police Station, Aczel, who is a native of Hungary and speaks with an accent, was subject to taunts and ridicule concerning his national origin.

When Aczel arrived at the police station there was an ambulance waiting for him. Upon arriving at the police station, Aczel was unable to talk due to a burning sensation in his chest and throat from the pepper spray.  He had no voice. He was taken to the hospital by ambulance. During the entire time he was at the hospital, he was unable to talk because of the effects of the pepper spray.  Aczel was unable to tell hospital

personnel that any portion of his body was sore and hurt because he could not talk. Moreover, at the hospital, Aczel was tied down in the stretcher and his hands were handcuffed on top of his stomach and therefore he could not use hand gestures to communicate.

Once at the hospital, an officer told the doctor "He's another drunken person". However, Aczel was not intoxicated on August 10, 1999. At the hospital, Aczel tried to talk to the doctor but because he had no voice, he articulated sounds which he likened to the grunt of a pig.  In response to the officer's comment to the attendants at the hospital, instructing that Aczel was drunk, the attendants brought Aczel to the left side of the hospital, where all the drug addicts and alcoholics are brought, rather than to the emergency room.

When at the hospital, Aczel's elbow, knees, legs and portions of his face were bruised, scraped and bleeding.   There was also dried blood on his body.   The inside of Aczel's mouth was bleeding.   Parts of his face had black and blue marks on it. Although a doctor saw Aczel in the hospital, the doctor did not treat his injuries.  No X-Rays were taken.  The doctor asked Aczel some questions, but Aczel did not respond because he had no voice, as aforesaid.   The doctor had conversations with the officers who accompanied Aczel and then discharged Aczel to the police.   Aczel was then bought back to the police station.  Aczel still had no voice when he arrived at the police station. Sometime after he was processed, Aczel's voice returned. Aczel remained at the police station for a couple of hours until bond was posted.  While at the station, he was in pain and "in bad shape".

At the police station, while Aczel was in a cell, a police officer taunted and teased him by flashing before him a brown bag and stating "Here is your dinner tonight" but the officer did not give Aczel any dinner.

No one never asked Aczel to give a statement concerning his version of the incident of August 10, 1999. At the police station, Aczel overheard the officers acknowledge that they were not sure as to what crime they were going to accuse Aczel of committing, and overheard one officer state "Don't worry, I fix it".  As soon as bond was posted, Aczel left the police department and was driven back to the hospital by a

friend.  During Aczel's second visit to the hospital, X-Rays were taken which showed broken bones on Aczel's face and wrist and broken ribs, etc.

Aczel was fingerprinted, photographed and informed for the first time, as he was leaving the police station, that he had been arrested for interfering with a police officer in violation of C.G.S. §53-167 and for breach of peace in violation of C.G.S. §53a-181.

Labonia and Mable's arrest of Aczel for committing the crime of interfering with a police officer and breach of peace was part of an attempt to conceal and excuse their attack on Aczel. Labonia and Mable further attempted to conceal their attack on Aczel by preparing a false police report, (which they knew, and intended, would be forwarded to and relied upon by a prosecutor), and, by falsely informing medical personnel at Danbury Hospital that Aczel's dazed and unstable demeanor was the result of intoxication, although Labonia/Mable did not seek to perform and did not perform any tests to confirm such claims.

As a result of the acts and omissions of Labonia and Mable, Aczel was incarcerated for four to five hours, was required to appear in Court as an accused criminal, and was required to spend money to hire an attorney to defend himself against the false charges.  Additionally, Aczel suffered a loss of liberty, inconvenience and humiliation, great physical pain and disability, and extreme emotional distress, with associated economic loss.  Aczel also suffered a traumatic brain injury, traumatic labyrinthitis, a fracture of the left wrist; traumatic headaches; TMJ injury; a fractured zygomatic arch requiring surgical repair, rib injuries, and a knee injury.

**7.    Defendants' Contentions.**

The defendants contend that on August 10, 1999, the defendants were dispatched to Highland Avenue to investigate a complaint of a verbal dispute. In the course of their investigation, they determined that the plaintiff was a suspect and briefly detained him in order to complete the investigation. The investigation revealed that two women accused the plaintiff of conduct that would amount to breach of peace and sexual assault. During the brief detention, the plaintiff, who the officers suspected was intoxicated, became violent, assaulted a police officer and refused to submit to being handcuffed. The officers were required to use a reasonable degree of force to ensure

the plaintiff's compliance and submission to being handcuffed. Following transport to the Danbury Police Headquarters, the plaintiff was charged and released on a non-surety bond. The plaintiff was taken to the hospital where the plaintiff was rude, belligerent, and appeared intoxicated. Nevertheless, the plaintiff was properly arrested for breach of peace and interfering with a police officer based on facts which developed during the course of the investigation.

**8.    Legal Issues:**

The parties cannot agree on the legal issues in this case. The objections have been noted after each issue upon which agreement could not be reached.

a.    Did Defendant police officers knowingly, while acting under color of law, act or fail to act outside the bounds or limits of their lawful authority?

**The defendants object to this legal issue.**

b.    Whether Defendants used excessive force under the circumstances against the plaintiff in violation of his Fourth Amendment rights?

c.    Whether Defendant police officers had a realistic opportunity to prevent use of excessive force against Plaintiff but did not do so in violation of Plaintiff's Fourteenth Amendment rights?

**The defendants object to this legal issue insofar as it relates to the Fourteenth Amendment. If the issue were rephrased to reference the Fourth Amendment, the defendants would not object.**

d.    Whether Defendant police officers denied Plaintiff adequate medical care subsequent to his arrest in violation of Plaintiff's Fourth Amendment and Fourteenth Amendment rights?

**The defendants object to this issue.**

e.    Whether Defendants abused process in violation of Connecticut common law?

f.    Whether Defendants falsely imprisoned the Plaintiff in violation of Connecticut common law?

g.    Whether Defendants intentionally inflicted emotional distress upon the Plaintiff in violation of Connecticut Common law?

h.    Whether Defendants committed the torts of assault and battery upon plaintiff in violation of Connecticut common law?

i.    Whether the acts, omissions or conduct of Defendants toward Plaintiff were callously, or maliciously, or wantonly, or oppressively done so as to warrant punitive damages?

**The defendants object to this legal issue. A proper phrasing of this issue would be as follows: "Whether the defendants' conduct warrants punitive damages?"**

j.    Whether the defendants' use of force was objectively reasonable under the law

k.    Whether the defendants are entitled to qualified immunity for their actions.

l.    Whether the defendants use of force was justified under Connecticut law.

**The plaintiff objects to this legal issue in that this issue mistates the standard under the law.**

9.    **Voir Dire Questions.**

a.    The plaintiff's proposed voir dire questions are attached as Exhibit A.

b.    The defendants' proposed voir dire questions are attached as Exhibit B.

10.    **List of Witnesses.**

a.    **Plaintiff's Lay Witnesses.**

1.    John Aczel, 42 Highland Avenue, Danbury, CT will testify as to facts relevant to the issue of liability and damages.  Mr. Aczel will offer preliminary testimony regarding himself and his business at 42 Highland Avenue, Danbury, CT (the situs of the incident).  He will offer testimony concerning his observations and conduct before, during and after the subject incident concerning the conduct of the

plaintiff and defendants, other police officers, and non-parties witnesses, before, during and after said incident. John Aczel will also testify as to the injuries he sustained in the incident and as to the treatment that he received for injuries sustained in the incident. John Aczel will also testify as to his relationship and history with Jeffrey Grant. John Aczel will also testify as to the history with Veronica DeStefano and with Gretchen Olson.

2.     Magdolna Aczel, 42 Highland Avenue, Danbury, CT Will testify as to facts relevant to the issue of liability and damages. Ms Aczel will offer testimony concerning her observation and conduct before, during and after the subject incident, concerning the conduct of the plaintiff and defendants, other police officers, and non-parties witnesses, before, during and after said incident. Ms. Aczel will also testify as injuries received by John Aczel. Ms. Aczel will also testify as to Plaintiff's relationship and history with Jeffrey Grant. Ms. Aczel will also testify as to the history with Veronica DeStefano and with Gretchen Olson.

3.     Maria Aczel,42 Highland Avenue, Danbury, CT. Will testify as to facts relevant to the issue of liability and damages. Ms Aczel will offer testimony concerning her observation and conduct before, during and after the subject incident and concerning the conduct of the plaintiff and defendants, other police officers, and non-parties witnesses, before, during and after said incident. Ms. Aczel will also testify as injuries received by John Aczel. Ms. Aczel will also testify as to Plaintiff's relationship and history with Jeffrey Grant. Ms. Aczel will also testify as to the history with Veronica DeStefano and with Gretchen Olson.

4.     Frank Butera, 53 Davis Street, Danbury, CT. Will testify as to facts relevant to the issue of liability and damages. Frank Butera will offer testimony concerning his observation and the conduct before,

during and after subject incident and concerning the conduct of the plaintiff and defendants, other police officers, and non-parties witnesses, before, during and after said incident. Frank Butera will also testify as injuries received by John Aczel. Mr. Butera will also testify as to Plaintiff's relationship and history with Jeffrey Grant. Mr. Butera will also testify as to the history with Veronica DeStefano and with Gretchen Olson.

5.      Jeffrey Grant, Bug Motors, 48 Davis Street, Danbury, CT. Will testify as to facts relevant to the issue of liability and damages. Jeffrey Grant will offer testimony concerning his observation and the conduct before, during and after subject incident and concerning the conduct of the plaintiff and defendants, other police officers, and non-parties witnesses, before, during and after said incident. Mr. Grant will offer testimony as to his history and relationship with Plaintiff.  Mr. Grant will offer testimony as to his conversations with Plaintiff's counsel prior to the conduct of his deposition in this case.  Mr. Grant will also give testimony as to the nature of his business.

6.      Leonard Labonia, 120 Main Street, Danbury, CT.  Will testify as to facts relevant to the issue of liability and damages.  Leonard Labonia will offer testimony concerning his physical fitness and training, his observation and conduct before, during and after the subject incident and concerning the conduct of the plaintiff and defendants, other police officers, and non-parties witnesses, before, during and after said incident. He will also testify as to injuries or lack thereof that he sustained in the subject incident and injuries sustained by Plaintiff.   Labonia  will also offer testimony as to his investigation and conversations with Veronica DeRosa Stefano and Gretchen Olsen.

g.      Ethan Mable, 7 Pondfield Road, Fairfield, CT. Will testify as to facts relevant to the issue of liability and damages. Ethan Mable will offer testimony concerning his physical fitness and training, his observation and conduct before, during and after the subject incident and concerning the conduct of the plaintiff and defendants, other police officers, and non-parties witnesses, before, during and after said incident.  He will also testify as to injuries or lack thereof that he sustained in the subject incident and injuries sustained by Plaintiff.  Ethan Mable will also offer testimony as to his investigation and conversations with Veronica DeRosa Stefano and Gretchen Olsen.

8.      Veronica DeRosa Stefano (LOCATING ADDRESS). Will testify as to facts relevant to the issue of liability and damages. Ms. DeStefano is expected to testify concerning the complaint against the plaintiff, her observation before, during and after the subject incident and concerning the conduct of the plaintiff and defendants, other police officers, and non-parties witnesses, before, during and after said incident. Ms. Stefano is expected to testify concerning her occupancy of the premises located at 42 Highland Avenue, Danbury, CT and the history between herself, Gretchen Olsen and Plaintiff.

9.      David Fesh, 50 Davis Street, Danbury, CT. Will testify as to facts relevant to the issue of liability and damages.  Mr. Fesh will offer testimony concerning his observations and conduct during and after the subject incident and concerning the conduct of the plaintiff and defendants, other police officers, and non-parties witnesses, before, during and after said incident.  Mr. Fesh will testify as to injuries sustained by Aczel during said incident.

10.     Diane Fernandez, 62 Davis Street, Danbury, CT.  Diane Fernandez will testify as to facts relevant to the issue of liability and damages.

Diane Fernandez will offer testimony concerning her observations and conduct before, during and after the subject incident and concerning the conduct of the plaintiff and defendants, other police officers, and non-parties witnesses, before, during and after said incident. She will testify that she went to the police station to pick up Plaintiff after he was arrested and brought him to the hospital. She will testify as to the injuries sustained by Plaintiff in the subject incident.

**The defendants object to this witness.**

11.     Chief of Police, Robert L. Paquette, Danbury Police Department. Will testify as to facts relevant to the issue of liability and damages. Chief of Police, Robert L. Paquette will give testimony to authenticate exhibits which plaintiff will introduce at trial as listed in Section 11 herein.

**The defendants object to this witness.**

12.     Chief of Police, Nelson Macedo, Danbury Police Department will testify as to facts relevant to the issue of liability and damages. Chief of Police, Nelson Macedo will give testimony to authenticate exhibits which plaintiff will introduce at trial as listed in Section 11 herein.

**The defendants object to this witness.**

13.     Lieutenant Kluge, Danbury Police Department will testify as to facts relevant to the issue of liability and damages.  Lieutenant Kluge will give testimony to authenticate exhibits which plaintiff will introduce at trial as listed in Section 11 herein.

**The defendants object to this witness.**

14.     Lynn Beardsley, Personnell Director, Keeper of Records, City Hall, 155 Deer Hill Avenue, Danbury, CT 06810.  Lynn Beardsley will

give testimony to authenticate exhibits which plaintiff will introduce at trial as listed in Section 11 herein.

**The defendants object to this witness.**

15.    Dawn Maracho, 40 Highland Avenue, Danbury, CT Will testify as to facts relevant to the issue of liability and damages.  Ms. Maracho will offer testimony concerning her observation and conduct before, during and after the subject incident concerning the conduct of the plaintiff and defendants, other police officers, and non-parties witnesses, before, during and after said incident.

**The defendants object to this witness.**

16.    Gretchen Olsen (LOCATING ADDRESS) Will testify as to facts relevant to the issue of liability and damages.  Ms. Olsen is expected to testify concerning the complaint against the plaintiff, her observation before, during and after the subject incident and concerning the conduct of the plaintiff and defendants, other police officers, and non-parties witnesses, before, during and after said incident.  Ms. Olsen is expected to testify concerning her occupancy of the premises located at 42 Highland Avenue, Danbury, CT and the history between herself Veronica DeRosa Stefano and Plaintiff.

**b.    Plaintiff's Expert witnesses.**

1.    Dr. Jan Mashman, Associated  Neurologists, 69 Sand Pit Road, Suite 300 Danbury, CT 06810

Subject Matter of Testimony

Dr. Jan Mashman is expected to testify as to the injuries and trauma suffered by the Plaintiff as a result of the August 10, 1999 incident, in accordance with his records and reports previously disclosed. Dr. Mashman will testify concerning his course of treatment for such injuries and trauma, the extent of recovery, permanent partial disabilities and impairments of various bodily functions and body parts and body

members as a result of the injuries, and the impact of said permanent partial disabilities and impairments on the Plaintiffs future lifestyle, daily activities, and the causal relationship between said injuries and trauma and the subject incident. As a result of the incident described in the complaint, Dr. Mashman will testify that Plaintiff suffered from dizziness, swelling, forgetfulness, coordination problems, weakness of the frontalis causing some obscuration of his left visual field,  a fracture of his left zygoma, cervical myofascial pain and decreased vision on the left.  Dr. Mashman will also testify that Plaintiff had swelling of his facial fracture regressing his zygomatic arch that had been repaired by Dr. Trusheim.  This expert will testify that Plaintiff also suffered from persistent and severe positional vertigo that was exacerbated by bending, looking up, turning over in bed, etc.  Dr. Mashman will testify that as a result of the incident more particularly described in the complaint, Plaintiff found that the eyelashes of his left eye drooped in front of his visual fields, obscuring his visual acuity. Dr. Mashman will testify that Plaintiff suffered from post-traumatic labyrinthitis, a left zygomatic arch fracture, and weakness of the left front talus.  This doctor will also testify that he began Plaintiff on a course of physical therapy and vestibular rehab.   Dr. Mashman will testify that he conducted an eletroencephalogram on Plaintiff.  He will testify that a visual study and a brain stem auditory study were also conducted on Plaintiff. He will testify that after testing, Plaintiff showed an abnormal VER study on the right side consistent with an abnormality of the right visual pathway anterior to the optic chiasm. The EEG was normal and the BAER was normal.  Dr. Mashman will testify that Plaintiff will be permanently impaired in that he will continue to suffer from positional vertigo, balance difficulties, and co-ordination difficulties.

Substance of Facts and Opinions

Dr. Mashman's facts and opinions will be based upon his medical records and medical reports, diagnostic testing and test results, as particularly provided and disclosed by the Plaintiff to the Defendants by way of the Plaintiff's answers to Defendants' interrogatories and requests for production, and any additional medical reports provided to the Plaintiff by the aforementioned doctors subsequent to the Plaintiff's disclosure, as on file, and up to the time of trial, as such reports become available. His facts and opinions will include that the injuries, symptoms and disabilities

- 15 -

of the Plaintiff as set forth in said reports and the Plaintiff's complaint were caused by and as a result of the incident which is the subject matter of this lawsuit and said injuries, symptoms`and disabilities have had an adverse impact on the Plaintiff's health, body functions, lifestyle, daily activities, work activities and/or earning capacity.

Grounds for Opinion

Dr. Mashman's opinions will be based upon his examination of the Plaintiff, his course of treatment for the Plaintiff, his review of the various medical records, diagnostic test results and other test results, and based upon his education, training and experience in his field speciality and treatment.

2.    Dr. Raphael Schwartz, Danbury Internal Medicine, 92 Locust Avenue, Danbury, CT 06810

Subject Matter of Testimony

Dr. Raphael Schwartz is expected to testify as to the injuries and trauma suffered by the Plaintiff as a result of the August 10, 1999 incident, in accordance with his records and reports previously disclosed. He will testify concerning his course of treatment for such injuries and trauma, the extent of recovery, permanent partial disabilities and impairments of various bodily functions and body parts and body members as a result of the injuries, and the impact of said permanent partial disabilities and impairments on the Plaintiff's future lifestyle, daily activities, and the causal relationship between said injuries and trauma and the subject incident. Dr. Schwartz will testify that as a result of the incident, more particularly described in the complaint, Plaintiff was rendered acutely incapacitated, in severe pain, involving the face, arms and legs. Plaintiff was barely able to speak due to facial swelling and had difficulty opening his mouth.    This doctor will testify that Plaintiff had ecchymossis and swelling of the right eye and cheek.  Dr. Schwartz will testify that Plaintiff had a tender left rib cage and had swelling of both knees, which were also tender to the touch.   This expert will testify that Plaintiff, as a result of this incident, was required to wear a splint on his left arm and wrist.   Dr. Schwartz will testify that Plaintiff had problems sleeping and difficulties getting out of bed because of pain in his back. Dr. Schwartz will testify that, Plaintiff suffered from positional vertigo and dizziness.  Dr. Schwartz will testify that,

Plaintiff suffered from a cervical spine injury. Dr. Schwartz will testify that Plaintiff suffered from a right zygoma fracture, fracture of left 9-10-11 ribs, left kidney trauma, fracture of the left wrist, and patella fracture.  Dr. Schwartz will testify that,  he referred Plaintiff to an oral surgeon, Dr. H. Silver, for the fracture of the zygoma, and an orthopedic, Dr. Fish, for the left wrist.  Dr. Schwartz will testify that X-rays were taken of Plaintiff's cervical spine, which showed severe degenerative disc and joint of Luschka changes present from C4 through C7 and a straightening of the normal cervical lordosis.  Dr. Schwartz will also testify that Plaintiff underwent liver function studies.  Dr. Schwartz will testify that a CT scan of the abdomen showed that Plaintiff had a moderate diffuse fatty infiltration with mild hepatomegaly and prominent left upper quadrant epigastric vessels raising the possibility of some degree of portal hypertension.  Dr. Schwartz will testify that Plaintiff was required to undergo surgical correction of the fractured left zygoma and that Dr. Trusheim did the surgery.

Substance of Facts and Opinions

Dr. Schwartz's facts and opinions will be based upon his medical records and medical reports, diagnostic testing and test results, as particularly provided and disclosed by the Plaintiff to the Defendants by way of the Plaintiff's answers to Defendants' interrogatories and requests for production, and any additional medical reports provided to the Plaintiff by the aforementioned doctors subsequent to the Plaintiff's disclosure, as on file, and up to the time of trial, as such reports become available. His facts and opinions will include that the injuries, symptoms and disabilities of the Plaintiff as set forth in said reports and the Plaintiff's complaint were caused by and as a result of the incident which is the subject matter of this lawsuit and said injuries, symptoms and disabilities have had an adverse impact on the Plaintiff's health, body functions, lifestyle, daily activities, work activities and/or earning capacity.

Grounds for Opinion

Dr. Schwartz's opinions will be based upon his examination of the Plaintiff, his course of treatment for the Plaintiff, his review of the various medical records, diagnostic test results and other test results, and based upon his education, training and experience in his field speciality and treatment.

3.    Dr. Daniel N. Fish, Brookfield Orthopedic Associates, P.C., 60 Old
      New Milford Road, Suite 3G, Brookfield, CT 06804

Subject Matter of Testimony

Dr. Daniel N. Fish is expected to testify as to the injuries and trauma suffered by the Plaintiff as a result of the August 10, 1999 incident, in accordance with his records and reports previously disclosed. He will testify concerning his  course of treatment for such injuries and trauma, the extent of recovery, permanent partial disabilities and impairments of various bodily functions and body parts and body members as a result of the injuries, and the impact of said permanent partial disabilities and impairments on the Plaintiff's future lifestyle, daily activities, and the causal relationship between said injuries and trauma and the subject incident.  Dr. Fish will testify that he treated Plaintiff for the fracture to his left wrist (distal radius fracture). Dr. Fish will testify that, Plaintiff was splinted since the time of the injury.  Dr. Fish will testify that Plaintiff's left wrist showed a moderate amount of swelling.  Dr. Fish determined that Plaintiff suffered from a left wrist distal radius fracture, minimally displaced, as a result of the incident described in the complaint and placed Plaintiff in a short-arm cast and thereafter in a removable wrist brace.

Substance of Facts and Opinions

Dr. Fish's facts and opinions will be based upon his medical records and medical reports, diagnostic testing and test results, as particularly provided and disclosed by the Plaintiff to the Defendants by way of the Plaintiff's answers to Defendants' interrogatories and requests for production, and any additional medical reports provided to the Plaintiff by the aforementioned doctors subsequent to the Plaintiff's disclosure, as on file, and up to the time of trial, as such reports become available. His facts and opinions will include that the injuries, symptoms and disabilities of the Plaintiff as set forth in said reports and the Plaintiff's complaint were caused by and as a result of the incident which is the subject matter of this lawsuit and said injuries, symptoms and disabilities have had an adverse impact on the Plaintiff's health, body functions, lifestyle, daily activities, work activities and/or earning capacity.

Grounds for Opinion

Dr. Fish's opinions will be based upon his examination of the Plaintiff, his course of treatment for the Plaintiff, his review of the various medical records, diagnostic test results and other test results, and based upon his education, training and experience in his field speciality and treatment.

4.     Dr. Lewis Trusheim, DDS, Associated Oral and Maxillofacial
       Surgeons, 107 Newtown Road, Suite 1A, Danbury, CT 06810

Subject Matter of Testimony

Dr. Lewis Trusheim is expected to testify as to the injuries and trauma suffered by the Plaintiff as a result of the August 10, 1999 incident, in accordance with his records and reports previously disclosed. He will testify concerning his course of treatment for such injuries and trauma, the extent of recovery, permanent partial disabilities and impairments of various bodily functions and body parts and body members as a result of the injuries, and the impact of said permanent partial disabilities and impairments on the Plaintiffs future lifestyle, daily activities, and the causal relationship between said injuries and trauma and the subject incident. Dr. Trusheim will testify that Dr. Silver referred Plaintiff to him for treatment of the left zygomatic arch fracture sustained in the assault of August 10, 1999. Dr. Trusheim will testify that Plaintiff complained of limited opening of his jaw and pain in the left side of his face radiating to the ear and temple. Dr. Tusheim will testify that the CAT scan study from 8-17-99 confirmed the clinical and panoramic exam diagnoses of a depressed left zygomatic arch fracture. Dr. Tusheim will testify that on August 27, 1999 an open reduction of the zygomatic arch fracture was accomplished at the ambulatory surgery unit at Danbury Hospital. This doctor will also testify that Plaintiff was also experiencing weakness of the muscles of the eyebrow and upper lid, secondary to inflamation in the area branches of the facial nerve. This expert will testify that Plaintiff also suffered from bilateral TMJ trauma.

Substance of Facts and Opinions

Dr. Trusheim's facts and opinions will be based upon his medical records and medical reports, diagnostic testing and test results, as particularly provided and disclosed by the Plaintiff to the Defendants by way of the Plaintiff's answers to

Defendants' interrogatories and requests for production, and any additional medical reports provided to the Plaintiff by the aforementioned doctors subsequent to the Plaintiff's disclosure, as on file, and up to the time of trial, as such reports become available. His facts and opinions will include that the injuries, symptoms and disabilities of the Plaintiff as set forth in said reports and the Plaintiff's complaint were caused by and as a result of the incident which is the subject matter of this lawsuit and that said injuries, symptoms and disabilities have had an adverse impact on the Plaintiff's health, body functions, lifestyle, daily activities, work activities and/or earning capacity.

Grounds for Opinion

Dr. Trusheim's opinions will be based upon his examination of the Plaintiff, his course of treatment for the Plaintiff, his review of the various medical records, diagnostic test results and other test results, and based upon his education, training and experience in his field speciality and treatment.

5.    Harold Silver, DDS, 93 West Street, Suite 5, Danbury, CT 06810

Subject Matter of Testimony

Dr. Harold Silver is expected to testify as to the injuries and trauma suffered by the Plaintiff as a result of the August 10, 1999 incident, in accordance with his records and reports previously disclosed. He will testify concerning his  course of treatment for such injuries and trauma, the extent of recovery, permanent partial disabilities and impairments of various bodily functions and body parts and body members as a result of the injuries, and the impact of said permanent partial disabilities and impairments on the Plaintiff's future lifestyle, daily activities, and the causal relationship between said injuries and trauma and the subject incident. Dr. Silver will testify as to the treatment of Plaintiff with respect to the zygomatic arch fracture that Plaintiff sustained as a result of the incident described in the complaint.

Substance of Facts and Opinions

Dr. Silver's facts and opinions will be based upon his medical records and medical reports, diagnostic testing and test results, as particularly provided and disclosed by the Plaintiff to the Defendants by way of the Plaintiff's answers to

Defendants' interrogatories and requests for production, and any additional medical reports provided to the Plaintiff by the aforementioned doctors subsequent to the Plaintiff's disclosure, as on file, and up to the time of trial, as such reports become available. His facts and opinions will include that the injuries, symptoms and disabilities of the Plaintiff as set forth in said reports and the Plaintiff's complaint were caused by and as a result of the incident which is the subject matter of this lawsuit and said injuries, symptoms and disabilities have had an adverse impact on the Plaintiff's health, body functions, lifestyle, daily activities, work activities and/or earning capacity.

Grounds for Opinion

Dr. Silver's opinions will be based upon his examination of the Plaintiff, his course of treatment for the Plaintiff, his review of the various medical records, diagnostic test results and other test results, and based upon his education, training and experience in his field specialty and treatment.

6.     Physicians and Staff Danbury Hospital, 24 Hospital Street, Danbury, CT 06810 including but not limited to Dr. Joseph Muratori

Subject Matter of Testimony

The physicians and staff of Danbury Hospital are expected to testify as to the injuries and trauma suffered by the Plaintiff as a result of the August 10, 1999 incident, in accordance with their records and reports previously disclosed. They will testify concerning their course of treatment for such injuries and trauma, the extent of recovery, permanent partial disabilities and impairments of various bodily functions and body parts and body members as a result of the injuries, and the impact of said permanent partial disabilities and impairments on the Plaintiff's future lifestyle, daily activities, and the causal relationship between said injuries and trauma and the subject incident. These experts will testify that Plaintiff was admitted to Danbury Hospital on 8/10/99, handcuffed, and in the custody of the Danbury Police Department.  These experts will testify that Plaintiff complained of being kicked and struck by the officers. These experts will testify that there were contusions and abrasions noted to Plaintiff's right temple and facial area, right arm, and both knees.   These experts will further testify that upon arrival to the hospital, Plaintiff complained of right shoulder, kidney,

face arm, head, back, abdomen and knee pain. These experts will testify that Plaintiff's eyes were swollen.  These experts will testify that Plaintiff had a contusion of the right eye and cheek and swelling. These experts will testify that Plaintiff had swelling in his face, right periorbital ecchymosis, and abrasions to the left chin.  These experts will testify that Plaintiff had tenderness of the right shoulder. These experts will testify that Plaintiff was discharged to the custody of the police and the hospital stressed about the patient's head injury precautions.  These experts will testify that Plaintiff returned to the hospital on August 11, 1999, for evaluation of the right and left TMJ for possible fracture. These experts will testify that Plaintiff was sent for a CT scan.  The diagnostic tests indicated that Plaintiff was suffering  from a fracture of the left wrist and distal forearm and wrist soft tissue swelling and a fracture of the left zygomatic arch. These experts will also testify that exam findings showed a bruise in Plaintiff's periorbital area on the right and tenderness to palpatin of zygoma bilateral with severe pain to palpation of the right zygomatic arch and right posterior belly of temporalis muscle.

Substance of Facts and Opinions

Their facts and opinions will be based upon their medical records and medical reports, diagnostic testing and test results, as particularly provided and disclosed by the Plaintiff to the Defendants by way of the Plaintiff's answers to Defendants' interrogatories and requests for production, and any additional medical reports provided to the Plaintiff by the aforementioned doctors subsequent to the Plaintiff's disclosure, as on file, and up to the time of trial, as such reports become available. His facts and opinions will include that the injuries, symptoms and disabilities of the Plaintiff as set forth in said reports and the Plaintiff's complaint were caused by and as a result of the incident which is the subject matter of this lawsuit and said injuries, symptoms and disabilities have had an adverse impact on the Plaintiff's health, body functions, lifestyle, daily activities, work activities and/or earning capacity.

Grounds for Opinion

Their opinions will be based upon their examination of the Plaintiff, their course of treatment for the Plaintiff, their review of the various medical records, diagnostic test

results and other test results, and based upon their education, training and experience in their field specialty and treatment.

7.    Physicians and Staff, Danbury Hospital Dental Services, 24 Hospital Street Danbury, CT 06810

Subject Matter of Testimony

The physicians and staff of Danbury Hospital Dental Services are expected to testify as to the injuries and trauma suffered by the Plaintiff as a result of the August 10, 1999 incident, in accordance with their records and reports previously disclosed. They will testify concerning their  course of treatment for such injuries, and trauma, the extent of recovery, permanent partial disabilities and impairments of various bodily functions and body parts and body members as a result of the injuries, and the impact of said permanent partial disabilities and impairments on the Plaintiff's future lifestyle, daily activities, and the causal relationship between said injuries and trauma and the subject incident.  These experts will testify that a Panorex view revealed findings of probable bilateral condyle fractures.  They will also testify that Plaintiff was given six Percocet tablets to take home with him.

Substance of Facts and Opinions

Their facts and opinions will be based upon their medical records and medical reports, diagnostic testing and test results, as particularly provided and disclosed by the Plaintiff to the Defendants by way of the Plaintiff's answers to Defendants' interrogatories and requests for production, and any additional medical reports provided to the Plaintiff by the aforementioned doctors subsequent to the Plaintiff's disclosure, as on file, and up to the time of trial, as such reports become available.  Their facts and opinions will include that the injuries, symptoms and disabilities of the Plaintiff as set forth in said reports and the Plaintiff's complaint were caused by and as a result of the incident which is the subject matter of this lawsuit and said injuries, symptoms and disabilities have had an adverse impact on the Plaintiff's health, body functions, lifestyle, daily activities, work activities and/or earning capacity.

Grounds for Opinion

Their opinions will be based upon their examination of the Plaintiff, their course of treatment for the Plaintiff, their review of the various medical records, diagnostic test results and other test results, and based upon their education, training and experience in their field speciality and treatment.

    c.    **Defendants' Lay Witnesses:**

    1.    John Aczel, 42 Highland Avenue, Danbury, CT.  Mr. Aczel will testify concerning his observations and conduct before, during and after the subject incident and concerning the conduct of the plaintiff and the defendants during and after said incident.

    2.    Magdolna Aczel, 42 Highland Avenue, Danbury, CT. Ms. Aczel will testify concerning her observations and conduct before, during and after the subject incident and concerning the conduct of the plaintiff and the defendants during and after said incident.

    3.    Maria Aczel,42 Highland Avenue, Danbury, CT. Ms. Aczel will testify concerning her observations and conduct before, during and after the subject incident and concerning the conduct of the plaintiff and the defendants during and after said incident.

    4.    Jeffrey Grant, Bug Motors, 48 Davis Street, Danbury, CT. Mr. Grant will offer testimony concerning his observations and conduct before, during and after the subject incident and concerning the conduct of the plaintiff and the defendants during and after said incident.

    5.    Leonard Labonia, Danbury Police Department, 120 Main Street, Danbury, CT. Officer Labonia will testify as to his actions and observations as the investigating officer during the course of said investigation on August 10, 1999.

    6.    Ethan Mable, Danbury Police Department, 120 Main Street, Danbury, CT. Officer Mable was dispatched to assist Officer

Labonia and Officer Mable and will testify as to his actions and observations during the course of said assistance and investigation.

7.  Veronica DeRosa Stefano (current address unknown at this time). Ms. Stefano was the complainant who caused the dispatch of the police to 42 Highland Ave on the date in question. Ms. Stefano is expected to testify concerning her complaint against the plaintiff, her observations and conduct before, during and after the subject incident and concerning the conduct of the plaintiff and the defendants during and after said incident.

8.  David Fesh, 50 Davis Street, Danbury, CT. Mr. Fesh will offer testimony concerning his observations and conduct during and after the subject incident and concerning the conduct of the plaintiff and the defendants during and after said incident.

9.  Gretchen Olsen, Unknown address, Ms. Olsen was a co-complainant who cause the dispatch of the police to 42 Highland Ave on the date in question. Ms. Olsen is expected to testify concerning her complaint against the plaintiff, her observations and conduct before, during and after the subject incident and concerning the conduct of the plaintiff and the defendants during and after said incident.

**The plaintiff objects to this witness.  Plaintiff further objects to defendants' description of this witness as a co-complainant.**

10. Officer Joseph Riolo, Danbury Police Department, 120 Main Street, Danbury, CT. Officer Riolo was dispatched to assist Officer Labonia and Officer Mabale and will testify as to his actions and observations during the course of said assistance and investigation.

**The plaintiff objects to this witness.**

11. Officer Karl Murphy, Danbury Polce Department, 120 Main Street, Danbury, CT. Officer Murphy was dispatched to assist Officer

Labonia and Officer Mable and will testify as to his actions and observations during the course of said assistance and investigation.

**The plaintiff objects to this witness.**

12.    John Reed, at EMS, Danbury ER Dept. Mr. Reed responded to the Danbury PD in connection with his employment as an emergency medical technician and treated the plaintiff for his injuries. He will testify as to his actions and observations of the plaintiff during the course of said treatment.

**The plaintiff objects to this witness.**

13.    "Matt C.", at EMS, Danbury ER Dept. Matt responded to the Danbury PD in connection with his employment as an emergency medical technician and treated the plaintiff for his injuries. He will testify as to his actions and observations of the plaintiff during the course of said treatment.

**The plaintiff objects to this witness.**

14.    Sgt. Brian Merrick, Danbury Police Department, 120 Main Street, Danbury, CT. Sgt. Merrick participated in the investigation of the incident in which the plaintiff was arrested.  He will testify as to his actions and observations during the course of said investigation.

**The plaintiff objects to this witness.**

15.    David Owen, Precision, address TBD. Mr. Owen will offer testimony concerning his observations and conduct before, during and after the subject incident and concerning the conduct of the plaintiff and the defendants during and after said incident.

**The plaintiff objects to this witness.**

d.    **Defendants' Expert Witnesses:**

1.    Dr. Joseph Muratori, Danbury Hospital, 24 Hospital Avenue, Danbury, CT 06810

<u>Subject Matter of Testimony</u>:

Dr. Muratori will testify regarding his observation, treatment and assessment of the plaintiff as seen in the Emergency Department at Danbury Hospital on August 10, 1999, in accordance with his records and reports previously disclosed by plaintiff's counsel.  He is also expected to testify as to plaintiff's medical and physical condition as observed by him upon plaintiff's arrival to the emergency department on the above-indicated date.

<u>Substance of Facts and Opinions</u>:

Dr. Muratori will testify in accordance with his findings, observations and test results, as reflected in his medical reports and records on the plaintiff, previously disclosed by plaintiff's counsel.

<u>Summary of Grounds for Opinions</u>:

Dr. Muratori will base his testimony upon his examination of the plaintiff, his course of treatment and his review of the various medical records and tests performed on the plaintiff.  Dr. Muratori will further base his opinions and conclusions upon his education, experience and expertise as a medical doctor.

**Plaintiff objects to this expert witness**

11. **Exhibits**

a. **Plaintiff's Proposed Exhibits:**

Exhibit 1:    Life Expectancy Table

**The defendants object to this exhibit.**

Exhibit 2:    Deposition transcript of David Fesh, and Exhibits to the deposition

**The defendants object to this exhibit.**

Exhibit 3:     Deposition transcript of John Aczel and Exhibits to the
               deposition

      **The defendants object to this exhibit.**

Exhibit 4:     Deposition transcript of Magdolna Aczel and Exhibits to the
               deposition

      **The defendants object to this exhibit.**

Exhibit 5:     Deposition transcript of Maria Aczel and Exhibits to the
               deposition

      **The defendants object to this exhibit.**

Exhibit 6:     Deposition transcript of Frank Butera and Exhibits to the
               deposition

      **The defendants object to this exhibit.**

Exhibit 7:     Deposition transcript of Jeffrey Grant and Exhibits to the
               deposition

      **The defendants object to this exhibit.**

Exhibit 8:     Deposition transcript of Leonard Labonia and Exhibits to the
               deposition

      **The defendants object to this exhibit.**

Exhibit 9:     Deposition transcript of Ethan Mable and Exhibits to the
               deposition

      **The defendants object to this exhibit.**

Exhibit 10:    Deposition transcript of Veronica DeRosa Stefano and
               Exhibits to the deposition

      **The defendants object to this exhibit.**

Exhibit 11:    Photos of the scene of the incident

Exhibit 11a:   Diagram showing distance re: scene of accident

- 28 -

Exhibit 12:    Photos of injuries sustained by John Aczel

Exhibit 13:    The News-Times, Food Section, Wednesday, April 3, 2002, article entitled "The Goolash Place Gains Fame"

**The defendants object to this exhibit.**

Exhibit 14:    The Interstate Gourmet-New Encland, authored by Neil Weiner and David Schwartz

**The defendants object to this exhibit.**

Exhibit 15:    In Food today-Service with a Smile, video, by the Food Network

**The defendants object to this exhibit.**

Exhibit 16:    Gourmet, The Magazine of Good Living, February 2002

**The defendants object to this exhibit.**

Exhibit 17:    The All-New Road Food, authored by James & Michael Stern, copyright 1992

**The defendants object to this exhibit.**

Exhibit 18:    Certified Copy of the Weather Report and key to Weather Report

**The defendants object to this exhibit.**

Exhibit 19:    Shirt Aczel wore on date of the incident

Exhibit 20:    Ethan Mable's Responses to Interrogatories and Production Request dated February 16, 2001

**The defendants object to this exhibit.**

Exhibit 21:    Leonard Labonia's Responses to Interrogatories and Production Requests dated February 16, 2001

**The defendants object to this exhibit.**

Exhibit 22:    John Aczel's Responses to First Set of Interrogatories and Requests for Production dated 1/9/2001

**The defendants object to this exhibit.**

Exhibit 23:    Plaintiff's medical records, notes, bills, x-ray and other radiographic tests, and the results thereof

Exhibit 24:    Two versions of the Incident Report 8/10/99 at 1700 hours, No 99-22746, including Exhibits and Diagrams

**The defendants object to this exhibit.**

Exhibit 25:    Both versions of the following attached to the Incident Report of 8/10/99:

Statement of Ethan Mabel

Statement of Officer Murphy

Statement of David Fesh

Statement of Veronica DeRosa

Statement of Gretchen Olsen

**The defendants object to this exhibit.**

Exhibit 26:    Statement of Magdolna Aczel, dated September 28, 1999

**The defendants object to this exhibit.**

Exhibit 27:    Statement of David Fesh, dated October 13, 1999, and August 10, 1999

**The defendants object to this exhibit.**

Exhibit 28:    Statement of Frank Butera dated September 28, 1999 and August 10, 1999

**The defendants object to this exhibit.**

Exhibit 29:    Statement of Veronica DeRosa dated August 10, 1999

**The defendants object to this exhibit.**

Exhibit 30:    Statement of Gretchen Olson dated August 10, 1999

**The defendants object to this exhibit.**

Exhibit 31:    Statement of Dawn Moracho dated September 28, 1999

**The defendants object to this exhibit.**

Exhibit 32:    City of Danbury-Use of Force Policy

**The defendants object to this exhibit.**

Exhibit 33:    City of Danbury Police Department, Code of Conduct

**The defendants object to this exhibit.**

Exhibit 34:    Rules and Regulations of the Police Department of the City
of Danbury, revised February 1977

**The defendants object to this exhibit.**

Exhibit 35:    City of Danbury Police Directives

**The defendants object to this exhibit.**

Exhibit 36:    Directive 83-09, Preliminary Investigation Procedures dated
July 11, 1983

**The defendants object to this exhibit.**

Exhibit 37:    Directive 83-16 Danbury Police Notebook Requirement
dated December 5, 1983

**The defendants object to this exhibit.**

Exhibit 38:    Directive 84-02, Policy for the Use of Chemical Sprays,
dated April 30, 1984

**The defendants object to this exhibit.**

Exhibit 39:    Directive 85-02, Deadly Force dated March 29, 1985

**The defendants object to this exhibit.**

Exhibit 40:    Directive 86-01, Policy for use of Handcuffs dated February 3, 1986

**The defendants object to this exhibit.**

Exhibit 41:    Directive 95-02, Policy for the Use of Handcuffs, dated March 02, 1995

**The defendants object to this exhibit.**

Exhibit 42:    Directive: Use of Air-conditioners, dated June 28, 1979

**The defendants object to this exhibit.**

Exhibit 43:    General Order 00-01 Protocol Procedure for Investigation of the Use of Deadly Force Pursuant to General Statutes 51-277a

**The defendants object to this exhibit.**

Exhibit 44:    General Order 00-02, Court Appearance, dated February 25, 2000

**The defendants object to this exhibit.**

Exhibit 45:    General Order 01-03, Addendum to General Order 98-05, Use of Force-Use of Pepperball SA200 System dated July 23, 2001

**The defendants object to this exhibit.**

Exhibit 46:    Department Order 80-5, re injuries that need treatment dated December 3, 1980

**The defendants object to this exhibit.**

Exhibit 47:    General Order 83-06, Field Interrogations Cards-Policy & Procedure dated April 4, 1983

**The defendants object to this exhibit.**

Exhibit 48:     General Order 83-09, Deadly Force Policy and Operational
                Procedures, dated October 10, 1983

**The defendants object to this exhibit.**

Exhibit 49:     General Order 84-01, Holding Facility (Lockup) Operating
                Procedures, dated May 1, 1984

**The defendants object to this exhibit.**

Exhibit 50:     General Order 84-03, Operational Procedures for the
                Detective Division, General Investigations Section

**The defendants object to this exhibit.**

Exhibit 51:     General Order 85-03, Use of Force, Weapons, dated
                December 1, 1985

**The defendants object to this exhibit.**

Exhibit 52:     General Order 86-01, Use of Force-Weapons, dated May 16,
                1986

**The defendants object to this exhibit.**

Exhibit 53:     General Order 92-01, Unarrests, dated February 6, 1992

**The defendants object to this exhibit.**

Exhibit 54:     General Order 98-05, Use of Force Police dated November
                30, 1998

**The defendants object to this exhibit.**

Exhibit 55:     Internal Investigation Report, I.A.D. Control 97-04-01, and
                entire file produced in discovery regarding the complaint by
                Linda Scalzo against Officer Ethan Mable

**The defendants object to this exhibit.**

Exhibit 56:    Internal Investigation and entire file of complaint of Peter McManus against Officer Leonard Labonia, as produced in discovery

**The defendants object to this exhibit.**

Exhibit 57:    Complaint of Richard Bennett against Officer Ethan Mable dated November 16, 2000 and entire file produced in discovery regarding the Bennet complaint

**The defendants object to this exhibit.**

Exhibit 58:    Disciplinary Matter re: Leonard Labonia re: violation of Section 5.18 of the Danbury Police Department Code of Conduct and entire file regarding the violation and disciplinary action, produced in Discovery, re: complaint of Philip Fernez

**The defendants object to this exhibit.**

Exhibit 59:    Complaint of Charles Kaminskas Architect and entire file produced in Discovery regarding the complaint of Charles Kaminskas Architect re: Leonard Labonia

**The defendants object to this exhibit.**

Exhibit 60:    Complaint of Sgt. Merrick and Disciplinary matter re: Ethan Mable and entire file produced in Discovery regarding the complaint.

**The defendants object to this exhibit.**

Exhibit 61:    Invoice of Attorney Steven R. Smart

**The defendants object to this exhibit.**

Exhibit 62:    Retainer Agreement and Invoice of Goldstein and Peck, P.C.

**The defendants object to this exhibit.**

Exhibit 63:    Bill of Costs and Order re: Bill of Costs of the United States District Court for the Second Circuit

**The defendants object to this exhibit.**

Exhibit 64:    United States District Court for the Second Circuit Court of Appeals decision in this case

**The defendants object to this exhibit.**

Exhibit 65:    Affidavit of Goldstein and Peck, PC. re: Attorney Fees and Costs

**The defendants object to this exhibit.**

Exhibit 66:    City of Danbury's responses to Interrogatories and Request for Production

**The defendants object to this exhibit.**

**b.     Defendant's Proposed Exhibits:**

1.     City of Danbury Police Report for Incident #99-22746

2.     Medical Reports from Danbury Hospital of the plaintiff for August 10, 1999.

3.     Ambulance Medical Report from Danbury EMS for the plaintiff for August 10, 1999

4.     Weather report

**The plaintiff objects to this exhibit.**

5.     Photographs of location of subject incident

**The plaintiff objects to this exhibit.**

6.     Map/Diagram of location of subject incident.

**The plaintiff objects to this exhibit.**

12.    **Deposition Testimony.**

None expected other than for purposes of cross-examination.  However, the parties reserve the right to offer deposition testimony in the event any witness is unavailable at time of trial within the meaning of the Federal Rules of Evidence.

13.    **Requests for Jury Instructions.**

The plaintiff's proposed jury instructions are attached as Exhibit C. The defendants' proposed jury instructions are attached as Exhibit D.

14.    **Anticipated Evidentiary Problems.**

a.    The plaintiff will be filing motions in limine to address the following:

1.    References proposed to be made by Defendants to a complaint of a sexual assault

2.    References proposed to be made by Defendants alleging that Plaintiff was intoxicated

3.    All witnesses listed by Defendants

4.    The testimony of Gretchen Olsen

5.    The testimony of Officer Joseph Riolo

6.    The testimony of Karl Murphy

7.    The testimony of John Reed, at EMS, Danbury ER Department

8.    The testimony of Matt C at EMS, Danbury ER Department

9.    The testimony of Sergeant Brian Merrick, Danbury Police Department

10.    The Testimony of David Owen, Precision

11.    Defendants proposed Exhibit Number 4, the Weather Report

12.    Defendants proposed Exhibit Number 5, Photographs of location of subject incident

13.    Defendants proposed Exhibit Number 6, Map/Diagram of location of subject incident.

14.    Defendants' References to Conn. Gen. Stat. 53a-22

15.    The testimony of Dr. Joseph Muratori.

b.    The defendants will be filing motions in limine to address the following issues:

1.    The testimony of Diane Fernandez;

2.    The testimony of Chief Robert L Paquette;

3.    The testimony of Former Chief Nelson Macedo;

4.    The testimony of Lt. Kluge;

5.    The testimony of Lynn Beardsley;

6.    The cumulative, repetitious and unnecessary nature of the testimony of Dr. Harold Silver, DDS, Dr. Trushiem, DDS and Danbury Hospital Dental Service;

7.    The cumulative, repetitious and unnecessary nature of the testimony of Drs. Mashman, Schwartz, and Fish;

8.    Plaintiff's Proposed Exhibits 2-10, depositions transcripts and exhibits to said depositions;

9.    Plaintiff's Proposed Exhibits 13-17, articles concerning the plaintiff's restaurant, some written after the subject incident;

10.    Plaintiff's Proposed Exhibits 20-22, Responses to interrogatories and requests for production by plaintiff and defendants;

11.    Plaintiff's Proposed Exhibit 24, Two versions of incident report;

12.    Plaintiff's Proposed Exhibit 25, Two versions of statements;

13.    Plaintiff's Proposed Exhibit 26 – 31, Statements of Aczel, Fesh, Butera, DeRosa, Olson, Moracho;

14.  Plaintiff's Proposed Exhibits 32 – 54, Polices, orders and Directives of the City of Danbury Police Department;

15.  Plaintiff's Proposed Exhibit 55 – 60, Internal affairs reports/investigations/complaints;

16.  Plaintiff's Proposed Exhibit 61, invoice of Attorney Smart;

17.  Plaintiff's Proposed Exhibit 62, retainer agreement between plaintiff and Goldstein & Peck;

18.  Plaintiff's Proposed Exhibit 63 & 64, Bill of Costs and Decision of Court of Appeals;

19.  Plaintiff's Proposed Exhibit 65, Affidavit of Goldstein & Peck re attorney's fees

20.  Plaintiff's Proposed Exhibit 66, City of Danbury's Responses to Interrogatories and requests for production.

21.  Life expectancy table

**15.  Proposed Findings of Fact/Conclusions of Law.**

Not applicable.

**16.  Trial Time.**

a.  Plaintiff believes that the case will take two to three weeks to try.

b.  The defendants submit that this case will be tried in seven (7) to ten (10) days.

**17.  Further Proceedings.**

a.  The plaintiff believes no further proceedings are necessary prior to trial other than the adjudication of its Motions in Limine listed in section 14, *infra.* Plaintiff notes that this case has not been pre-tried to date.

b.  The defendants submit no further proceedings are necessary prior to trial other than the adjudication of their motions in limine as listed in section 14, *infra.*

18.    **Election for Trial by Magistrate.**

The parties have not agreed to have the case tried by a United States Magistrate.

19.    **Statement In Lieu of Opening Statement.**

The parties cannot agree on a statement in lieu of opening statement. Therefore, they have set down separate versions as follows:

a.    **Plaintiff's Version**

Plaintiff, John Aczel, brings this lawsuit against Defendants, Leonard Labonia and Ethan Mable, Danbury Police Officers, regarding an incident which took place on August 10, 1999 at 42 Highland Avenue, Danbury, CT.

Plaintiff seeks remedies under Title 42 of the United States Code, Sections 1983 and 1988 and under the laws of the State of Connecticut.  Plaintiff alleges that his rights under the Fourth and Fourteenth Amendment to the United States Constitution were violated. Plaintiff alleges that he was falsely arrested and subjected to excessive force by Defendant police officers when, without probable cause, the police officers placed him in the police cruiser and then subsequently repeatedly and violently struck his head, face, and body, pepper sprayed him and placed him under arrest.  Plaintiff claims that Defendant police officers had a realistic opportunity to prevent use of excessive force against him but did not do so, and that Defendant police officers denied him adequate medical care despite the obligation of police officers to provide medical treatment to persons injured by the police by falsely informing medical personnel at Danbury Hospital that he was intoxicated, although Defendant police officers did not seek to perform and did not perform any tests to confirm such claims.

Plaintiff also alleges that Defendant police officers violated the laws of the State

of Connecticut. Plaintiff is suing Defendant police officers for violation of the state law tort of Assault and Battery.  Plaintiff is also suing Defendant police officers for wrongfully and unlawfully confining him in the police car before assaulting him and later detaining him at the police station, all without reason, justification or authority in violation of the state law tort of False Imprisonment.  Plaintiff is also suing Defendant police officers for using the criminal process against him in order to intimidate him from asserting his rights against them and in order to cover up their own wrongdoing and avoid civil and criminal liability for their own acts in violation of the state law tort of Abuse of Process. As part of the Abuse of Process claim, Plaintiff claims that Defendant police officers arrested him for committing the crime of interfering with a police officer and breach of peace to conceal and excuse their attack on him.  Plaintiff further claims that Defendant police officers further attempted to conceal their attack on him by preparing a false police report, (which they knew, and intended, would be forwarded to and relied upon by a prosecutor), and, by falsely informing medical personnel at Danbury Hospital that he was intoxicated, although Defendant police officers did not seek to perform and did not perform any tests to confirm such claims.

Plaintiff is also suing Defendant police officers for violation of the state law tort of Intentional Infliction of Emotional Distress.

The Defendant police officers deny liability.  With respect to most of the claims made by Plaintiff, Defendant police officers assert that all of their actions were objectively reasonable under the circumstances.

**b.    Defendants' Version**

Plaintiff, John Aczel brings this lawsuit against Defendants, Leonard Labonia and Ethan Mable, Danbury Police Officers, regarding an incident which took place on August 10, 1999 at 42 Highland Avenue, Danbury, CT.

Plaintiff seeks remedies under Title 42 of the United States Code, Sections 1983 and under the laws of the State of Connecticut.  Plaintiff brings this lawsuit under the Fourth Amendment to the United States Constitution, which prohibits the use of excessive force by a police officer and requires officers, who have a realistic opportunity, to prevent the use of excessive force.

The plaintiff claims he was subject to excessive force by a police officer in the course of his arrest. He claims he did nothing to warrant being arrested. The defendants claim that they were dispatched to Highland Avenue to investigate a complaint of a dispute. In the course of their investigation, they determined that the plaintiff was a suspect and briefly detained him in order to complete the investigation. During the brief detention, the plaintiff, who the officers suspected was intoxicated, refused to comply with the lawful instructions of the officers, became violent, assaulted a police officer and refused to submit to being handcuffed. The officers were forced to use a reasonable degree of force to ensure the plaintiff's compliance.  The defendants maintain that the plaintiff was properly arrested for breach of peace and interfering with a police officer based on facts which developed during the course of the investigation.

In this case Plaintiff is also suing Defendants for violation of the state law torts: Assault and Battery, False Imprisonment, Abuse of Process, and Intentional Infliction of Emotional Distress.

The defendant officers deny liability, and assert that all of their actions were reasonable and justified under the circumstances.

**20**     **Limiting Instructions.**

a.     Plaintiff will seek a Limiting Instruction on Defendants' reliance on C.G.S. 53a-22.

b.     Plaintiff will seek a limiting instruction on any reference proposed to be made by defendants to a complaint of sexual assault.

c.     Plaintiff will seek a limiting instruction on any reference proposed to be made by defendants alleging that plaintiff was intoxicated.

**21.**     **Special Verdict Forms**

a.     The plaintiff's proposed special verdict form is attached as Exhibit E.

b.     The defendants' proposed special verdict form is attached as Exhibit F.

THE PLAINTIFF,
JOHN ACZEL


/s/ Tiziana M. Scaccia
Tiziana M. Scaccia, ct 08713
GOLDSTEIN & PECK, P.C.
1087 Broad Street
Bridgeport, CT 06604
(203) 334-9421
(203) 334-6949 (fax)

THE DEFENDANTS,
LEONARD LABONIA
ETHAN MABLE


/s/ John J. Radshaw III
Thomas R. Gerarde, ct05640
John J. Radshaw III, ct19882
HOWD & LUDORF
65 Wethersfield Avenue
Hartford, CT 06114-1190
(860) 249-1361
(860) 249-7665 (fax)