# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOHN ACZEL : NO: 3:00 CV 1802 (AWT)

V. :

LEONARD LABONIA, ETHAN MABLE :
AND CITY OF DANBURY : JULY 30, 2004

## PLAINTIFF'S PRELIMINARY REQUESTS TO CHARGE

### KNOWLEDGE OF LAW, REQUIRED

Officials are held to have constructive knowledge of established law.  The responsibility for keeping abreast of constitutional developments in criminal law squarely is placed on the shoulders of law enforcement officials. Law enforcement officials must be cognizant not only how far their authority extends, but also of the point at which their authority ends.

Ward v. San Diego, 783 F.2d 1385, 1388 (9th Cir.), superseded on other grounds 791 F.2d 1329 (9th Cir. 1986);Salahuddin v. Coughlin, 781 F.2d 24, 27 (2d Cir.1986). 324

### RIGHT TO BE LEFT ALONE

The right to be left alone is the right most valued by civilized men.

Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, Holmes, Butler, and Stone, JJ., dissenting from denial of certiorari). See also, Duran v. City of Douglas, Arizona, 904 F.2d 1372, 1376 (9th Cir.1990).

### POLICE TO EXERCISE RESTRAINT, CAN BE SUBJECTED TO VERBAL ABUSE

Police officers are expected to exercise greater restraint in their responses than the average citizen. Buffkins v. Omaha, 922 F.2d 465, 472 (8th Cir.1990).

Exhibit C

**RESISTANCE TO POLICE, LAWFULNESS**

It is lawful to resist unlawful conduct by police. One need not submit to illegal police conduct, and may resist illegal police conduct. Of course, whether allegedly illegal police conduct to which resistance has been offered was in fact illegal, is an issue of fact to be decided by, you, the jury. In other words, a person can sue reasonable force in self-defense where the force exerted by the police in effecting an arrest is excessive.

Curry v. City of Syracuse, 316 F.3d 324 (2ⁿᵈ Cir. 2003) and cases cited therein,  Robins v. Harum, 773 F.2d 1004, 1008 (9th Cir.1985); MacDonald v. Musick, 425 F.2d 373, 377 (9th Cir.), cert. denied, 400 U.S. 852, 91 S.Ct. 54, 27 L.Ed.2d 90 (1970); Cohen v. Norris, 300 F.2d 24, 31-32 (9th Cir.1962); See also, Dixon v. Richer, 922 F.2d 1456, 1463 (10ᵗʰ Cir. 1991)(Plaintiff's resistence to "being chocked and beaten does not retroactively justify' officers' action in choking and beating him"; DeGraff v. District of Columbia, 120 F.3d 298 (D.C. Cir. 1997).

**BURDEN OF PROOF - CLAIMS**

The party making a claim has the burden of proof with respect to that claim. Thus, the plaintiff has the burden of proving each essential element of each cause of action upon which the plaintiff relies. I will review those elements with you in one moment. The defendants do not have to present evidence to disprove the plaintiff's claim.

Gulycz v. Stop & Shop Companies, Inc., 29 Conn. App. 519, 523, cert. denied, 224 Conn. 923 (1992);  See also, State of Connecticut, Judicial Branch, Form Civil Jury Instructions, @ http://www.jud.state.ct.us/, and cases cited therein.

**BURDEN OF PROOF - AFFIRMATIVE DEFENSES**

The defendants in this case, in addition to denying the claims made by the plaintiff, have affirmatively asserted certain special defenses to the plaintiff's claims. I will review these special

defenses with you in a moment. The defendants have the burden of proof as to the allegations of any special defenses upon which the defendants rely. The plaintiff does not have the burden to disprove the allegations of the defendants' special defenses. Rather, each party has the burden of proving that party's own claims and no burden to disprove the claims of that party's adversary.

Perley v. Glastonbury Bank & Trust Co., 170 Conn. 691, 698 (1976);  See also, State of Connecticut, Judicial Branch, Form Civil Jury Instructions, @ http://www.jud.state.ct.us/, and cases cited therein.

## STANDARD OF PROOF

In order to meet his or her burden of proof, a party must satisfy you that his or her claims on an issue are more probable than not. You may have heard in criminal cases that proof must be beyond a reasonable doubt, but I must emphasize to you that this is not a criminal case, and you are not deciding criminal guilt or innocence. In civil cases such as this one, a different standard of proof applies. The party who asserts a claim has the burden of proving it by a fair preponderance of the evidence, that is, the better or weightier evidence must establish that, more probably than not, the assertion is true. In weighing the evidence, keep in mind that it is the quality and not the quantity of evidence that is important; one piece of believable evidence may weigh so heavily in your mind as to overcome a multitude of less credible evidence. The weight to be accorded each piece of evidence is for you to decide.

As an example of what I mean, imagine in your mind the scales of justice. Put all the credible evidence on the scales regardless of which party offered it, separating the evidence favoring each side. If the scales remain even, or if they tip against the party making the claim, then that party has failed to establish that assertion. Only if the scales incline, even slightly, in favor of the assertion

may you find the assertion has been proved by a fair preponderance of the evidence.

Tianti v. William Raveis Real Estate, Inc., 231 Conn. 690, 702 (1995); Holmes v. Holmes, 32 Conn. App. 317, 318, cert. denied, 228 Conn. 902 (1993).

## ELEMENTS OF § 1983

The Plaintiff has filed this action under a provision of the United States Code, Title 42, Section 1983, which gives a person the right to bring a lawsuit for a violation of a constitutional right by a police officer acting in an official capacity.  In order to prevail on this claim, the plaintiff must prove two things:

1. that the defendants acted under color of law; and
2. that the defendants deprived the plaintiff of one or more constitutional rights.

The first element, "Acting under color of law" simply means acting in one's capacity as a police officer. There is no dispute that the defendants' in this case were acting under color of law at the time of this incident, and you must find this element to have been established.

As to the second element, Plaintiff in this case claims that defendants deprived the plaintiff of his rights under the Fourth Amendment to the United States Constitution, which prohibits the use of excessive force by a police officer and places a legal duty on the police to provide medical treatment to persons injured by the police.

Plaintiff also brings this lawsuit under Fourteenth Amendment to United States Constitution prohibiting the infringement of the right to due process of law for the state created  right to liberty, and which places  a legal duty on the police to provide medical treatment for persons injured by the police, and which places an affirmative duty on police officers, who have a realistic opportunity, to

prevent use of excessive force.

In this case, Plaintiff is also suing Defendants for violation of the following state created rights: Assault and Battery, False Imprisonment, Abuse of Process, and Intentional Infliction of Emotional Distress.

142 U.S.C. § 1983; Gomez v. Toledo, 446 U.S. 635 (1980); Monell v. Department of Social Servs., 436 U.S. 658 (1978); Monroe v. Pape, 365 U.S. 167 (1961).

## FOURTEENTH AMENDMENT

The Fourteenth Amendment to the Constitution provides that:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor shall any state deny to any person the equal protection of the laws.

U.S. Constitution, amendment IV, § 1 & 5; Monroe v. Pape, 365 U.S. 167, 172, 81 S.Ct. 473, 476, 5 L.Ed.2d 472(1961).

## DUE PROCESS, TYPES OF VIOLATIONS

The Fourteenth Amendment embodies three different protections: (1) a procedural due process protection requiring the state to provide individuals with some type of process before depriving them of their life, liberty, or property; (2) a substantive due process protection, which protects individuals from arbitrary acts that deprive them of life, liberty, or property; and, (3) an incorporation of specific protections afforded by the Bill of Rights against the states. The third interest is made up of rights

created by state law, and which become part of the due process of state law that is incorporated into and is protected by federal law.

Miller v. Campbell, 945 F.2d 348, 352 (10th Cir.1991), cert. denied, 602 U.S. 1096, 112 S.Ct. 1174, 117 L.Ed.2d 419 (1992).

## FOURTEENTH AMENDMENT, STANDARDS GOVERNING

The Fourteenth Amendment to the Constitution provides that no state shall deprive any person of his liberty without due process of law. The "liberty" of the individual, which the federal Constitution secures and protects is not an absolute and unqualified freedom to do as one pleases at all times and under all circumstances, and it is subject to reasonable restraints, including restraints that are reasonably imposed by law. The plaintiff in this case had the legal right at all times not to be deprived, without due process of law, of any life, liberty, or property interest secured or protected by the Constitution or laws of the United States.

To be deprived of liberty "without due process of law" means to be deprived of liberty without authority of law. Before the jury can determine whether or not plaintiff was deprived by defendants of any liberty under the federal Constitution "without due process of law," the jury must first determine whether a defendants intentionally or knowingly did the acts alleged, and, if so, whether defendants acted within or without the bounds of lawful authority under law.

If defendants acted within the limits of lawful authority under law, then defendants could not have deprived a plaintiff of any liberty "without due process of law," since state law applicable in this case meets the requirements of the federal Constitution.

See <u>Duran v. City of Douglas, Arizona,</u> 904 F.2d 1372, 1376 (9th Cir.1990).

## DUE PROCESS, STATE CREATED RIGHTS

State law can create protected liberty interests by substantially limiting the exercise of official discretion. The use of mandatory language in state law creates such interests.  In other words, the laws of a particular state may create rights that become "the process" to which one is entitled as part of substantive due process, and when state laws create rights to a liberty interest, infringement of those state rights constitutes a violation of the federal right to due process of state law.  In this case, Plaintiff is suing Defendants for the following state created rights: False Imprisonment, Abuse of Process, Intentional Infliction of Emotional Distress...

<u>Roberts v. Spalding,</u> 783 F.2d 867, 870 (9th Cir.1986); <u>McFarland v. Cassady,</u> 779 F.2d 1426, 1428 (9th Cir.1986).

## DUE PROCESS, PURPOSES

The due process clause secures the individual from the arbitrary exercise of the powers of government and prevents governmental power from being used for purposes of oppression.

<u>Daniels v. Williams,</u> 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) (quoting <u>Hurtado v. California,</u> 110 U.S. 516, 527, 4 S.Ct. 111, 117, 28 L.Ed. 232 (1884), and <u>Murray's Lessee v. Hoboken,</u> 59 U.S. (18 How.) 272, 277, 15 L.Ed. 372 (1856)).

## DUE PROCESS, SUBSTANTIVE

To establish a violation of substantive due process, it must be proved that the government's action

was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.

While a Fourth Amendment claim lies against an officer who uses excessive force, a Fourteenth Amendment claim lies against an officer who has a realistic opportunity to prevent the use of excessive force but who willfully fails to do so. An officer who fails to intervene also may be held liable vicariously under the Fourth Amendment as though he actually used excessive force.

There is a duty to assume responsibility for the safety of one with respect to whom the state has created the danger to which the victim of harm is exposed. The established right is one to substantive due process.

When one has been placed in a helpless or dependent condition by the state, she or he is entitled to the broader right to be protected from harm.

Defendants who fails to intervene or who create danger which causes harm are responsible for that harm.

United States v. Koon, 34 F.3d 1416, 1447 (9th Cir.1994); see DeShaney v. *Winnebago* County Soc. Serva. Dept., 489 U.S. 189, 199-200, 109 S.Ct. 998, 1005-06, 103 L.Ed.2d 249 (1989); Wood v. Ostrander, 879 F.2d 583, 589-90 (9th Cir.1989), cert. denied. 498 U.S. 938, 111 S.Ct. 341, 112. L.Ed.2d 305 (1990); LM, v. Grubbs, 974 F.2d 119 (9th Cir.1992), cert. denied, 508 U.S. 951,113 S.Ct. 2442, 124 L.Ed.2d 660 (1993).

## PROCEDURAL DUE PROCESS DEFINED

Procedural due process forbids the use of the legal process for a wrongful purpose.

Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir.1994); see Torres v. Superintendent of Police, 893 F.2d

404, 410 (1st Cir.1990).

## LEGAL DUTY TO SUMMON MEDICAL CARE FOR THOSE INJURED BY POLICE

The police have a legal duty to provide medical treatment for a person injured by police, and this duty arises under both the due process clause of the Fourteenth Amendment and the Fourth Amendment. The failure to provide medical treatment for a person injured by police gives rise to liability.

See Lewis v County of Sacramento, 98 F.3d 434, 438 (9th Cir.1996) (either Fourth or Fourteenth Amendment may be source of the right). City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 240, 103 S.Ct. 2979, 2981, 77 L.Ed.2d 605 (1983); Wilson v. Meeks, 52 F.3d 1547, 1555 (10th Cir.1995); Rock v. Me Coy, 763 F.2d 394, 396 (10th Cir.1985); Meade v. Grubbs, 841 F.2d 1512, 1519 (10th Cir.1988); Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir.1990).

## DENIAL OF MEDICAL ATTENTION

Plaintiff claims that he was denied adequate medical care subsequent to his arrest. Deliberate indifference to serious medical needs of one who is arrested violates the right to due process of law. Thus, if you find that the defendants were aware of the fact that plaintiff was seriously in need of medical attention, and failed to provide access to medical personnel or intentionally delayed such access, or if you find that defendants intentionally failed to cooperate with medical personnel who did see the plaintiff, then you shall find that the defendants are liable for a violation of plaintiff's constitutional rights in this regard. Although mere negligent or inadvertent inattention to plaintiff's medical needs does not amount to a violation of his constitutional rights, if you find that the

defendants deliberately assumed a posture of indifference to his serious medical needs, you must find them liable for a violation of his constitutional rights.

Estelle v. Gamble, 429 U.S. 97 (1976).

**FOURTH AMENDMENT**

The plaintiff claims that the defendants also violated his rights under the Fourth Amendment to the United States Constitution. The Fourth Amendment reads:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Every person has the constitutional right to be free from the unreasonable seizure of his person by law enforcement agents. You must determine whether any seizures which you find took place were reasonable under constitutional standards.  You should take into account all of the facts and circumstances which were known, or which should have been known, by the defendants when you are assessing their liability to the plaintiff. The question you must answer is whether in the face of such facts and circumstances a given defendant treated plaintiff unreasonably and violated his constitutional rights, as I shall define them for you.  Either an illegal stop of a person, or an illegal detention of a person, or an illegal arrest of a person or a use of unreasonable force against a person is a violation of the provision of the Fourth Amendment just read to you. When a police officer makes an illegal stop, or an illegal detention, or an illegal arrest, a plaintiff may recover damages

under the Civil Rights Act, 42 United States Code Section 1983, against that police officer.

An arrest accompanied by excessive force violates the provision of the Fourth Amendment just read to you. When a police officer uses excessive force, a plaintiff may recover damages against that police officer under the Civil Rights Act.

Amendment 4, United States Constitution; <u>Davidson v. O'Lone,</u> 752 F.2d 817, 827 (3d Cir.1984);<u>Griffin v. Wisconsin,</u> 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987).

**POLICE BRUTALITY (VIOLATION OF 42 USC §§ 1983 USE OF EXCESSIVE FORCE)**

The plaintiff claims that the defendants violated his constitutional right not to be subjected to use of excessive force by a police officer. He brings this claim under a federal law, 42 U.S. Code § l983, that provides that a person acting under color of state law who violates a person's rights under the United States Constitution can be held liable for money damages to the person whose rights he has violated.

In order to prove this claim, the plaintiff must prove:

First, that the defendants were acting under color of state law.

Second, that the defendants engaged in actions that deprived Plaintiff of his constitutional right not to be subjected to use of excessive force, and

Third, that the defendants' acts were the proximate or legal cause of the injuries or losses claimed by the plaintiff.

The first element, "Acting under color of law" simply means acting in one's capacity as a police

officer. There is no dispute that the defendants' in this case were acting under color of law at the time of this incident, and you must find this element to have been established.

Police officers get their authority under state law, so they are acting under color of state law when they act in their capacity as police officers.

The second element requires more explanation. The fourth amendment to the United States Constitution guarantees people the right not to be unreasonably seized by government officials, including police officers. This right is violated if a police officer subjects a person to excessive force. The right of a police officer to stop and arrest a person necessarily carries with it the right to use some degree of physical coercion or contact to effect the arrest. This does not mean, however, that the officer may use excessive amounts of force.

Force is excessive, and use of such force constitutes a violation of a person's rights under the fourth amendment, if the amount of force used would not be considered reasonable by a reasonably competent police officer in the circumstances presented at the exact time that the police officer used such force. The test is not whether the defendants thought their use of force was reasonable, but rather it is an objective standard: would a reasonably competent police officer consider the use of such amount of force under the circumstances at the time the force was used to be reasonable?

Applying this standard requires careful attention to the facts and circumstances of the case, including the severity of the crime at issue, whether the plaintiff posed an immediate threat to the safety of the officer or others, and whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight.

The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20-20 vision of hindsight. Not every push or shove, even if it may later seem unnecessary in the peace of the courtroom, violates the fourth amendment.

The issue is whether the force used was reasonable, not the officer's intent or frame of mind. An officer's bad intentions or hostile frame of mind toward the plaintiff will not make a fourth amendment violation out of the use of force that is a reasonable amount of force under the circumstances. An officer's good intentions will not make constitutional what is, in fact, an unreasonable use of force.

It is these constitutional standards, rather than the text of any state statute or any departmental regulation, that should govern your consideration of this claim.

The facts are in dispute as to what the circumstances were when the defendants acted.

In this case, facts are in dispute as to whether a lawful stop, seizure and/or arrest took place when Officer Labonia initially placed John Aczel in the police cruiser and when Aczel was placed in the police cruiser the second time, as to the circumstances surrounding Plaintiff's detention, stop, or arrest, as to whether there was probable cause to arrest Aczel, as to who initiated the use of force, as to the amount and nature of force used by the Officers on John Aczel, as to the extent of injuries suffered by John Aczel.

You must determine what the circumstances were at the precise time that Defendants acted. You are simply to determine what the situation was at the time the defendants used force, and whether a reasonably competent police officer would not have used such force under the circumstances at the

time.

The third element that the plaintiff must establish is that the defendants' use of force was the proximate cause or legal cause of the injuries or losses that the plaintiff sustained. An injury or loss is proximately caused by an action if that action was a substantial factor in bringing about the injury or the loss. The injury or loss must also be either a direct result or a reasonably probable consequence of the act of the defendants. In other words, the plaintiff must satisfy you that his injuries or losses were the natural and probable consequence of the defendants' acts, and that the defendants ought to have foreseen that injury or loss was likely to result from such acts.

Gaham v. Connor, 490 U.S. 392 (l989); U.S. Constitution, amend. IV; 42 U.S.C. § 1983. See also, State of Connecticut, Judicial Branch, Form Civil Jury Instructions, @ http://www.jud.state.ct.us/, and cases cited therein.


## FOURTH AMENDMENT, PROTECTS CRIMINAL SUSPECTS

The individual and his private property are fully protected by the Fourth Amendment whether or not the individual is suspected of criminal behavior.

Cassady v. Tackett, 938 F.2d 693, 696 (6th Cir.1991) (quoting from Camara v. Municipal Court of San Francisco, 387 U.S. 523, 530, 87 S.Ct. 1727, 1731, 18 L.Ed.2d 930 (1967).


## DEFINITION OF A FOURTH AMENDMENT "SEIZURE"

The Fourth Amendment prohibits the unreasonable "seizure" of a person. A person is "seized" within the meaning of the Fourth Amendment when in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.

Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. Physically grabbing, moving, and seating a suspect to ask questions, even in public, clearly restrains that suspect's liberty in a non-voluntary way, and indeed the use of physical means to restrain a person's movement is the most obvious form of seizure.

A seizure occurs when either the citizen submits to an assertion of authority or physical force is applied, regardless of whether the citizen yields to that force. A seizure is effected by the slightest application of physical force. Many different seizures may occur during a single series of events. Each potential seizure, for example, a stop, an arrest, a use of force, is to be separately evaluated for its legal sufficiency.

If you find that the plaintiff was seized under this definition and that the defendants did not have sufficient cause for the seizure, then you must find that the seizure violated the plaintiff's constitutional rights.

California v. Hodari D., 499 U.S. 621 (1991); United States v. Mendenhall, 446 U.S. 544, 554 (1980). The level of proof required to justify a seizure will depend upon the intrusiveness of the seizure; United States v. Mendenhall, 446 U.S. 544, 553-55, 100 S.Ct. 1870, 1076-77, 64 L.Ed.2d 497 (1980); Ludwig v. Anderson, 54 F.3d 465, 471 (8th Cir.1995); California v. Hodari D., 499 U.S. 621, 625, 626, 111 S.Ct. 1547, 1550 113 L.Ed.2d 690 (1991); Ludwig v. Anderson, 54 F.3d 465, 471 (8th Cir.1995); California v. Hodari D., 499 U.S. 621, 625, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690 (1991); see also, Hopkins v. Andaya, 958 F.2d 881 (9th Cir.1992).

**SEIZURES, TYPES OF**

Stops under the Fourth Amendment fall into three categories. First, police may stop a citizen for questioning at any time, so long as that citizen recognizes that he or she is free to leave. Such brief, "consensual" exchanges need not be supported by any suspicion that the citizen is engaged in wrongdoing, and such stops are not considered seizures. Second, the police may "seize" citizens for brief, investigatory stops. This class of stops is not consensual, and such stops must be supported by "reasonable suspicion." Finally, police stops may be full-scale arrests. These stops, of course, are seizures, and must be supported by probable cause.

Morgan v. Woessner, 975 F.2d 629, 636 (9th Cir.1992)

## INVESTIGATORY STOPS, DEFINED- REASONABLE SUSPICION

When a police officer even briefly detains an individual and restrains that person's right to walk away, he has seized that individual. A detention no matter how momentary is a seizure under the Fourth Amendment.

To justify a limited momentary detention of a person or investigative stop without violating the Fourth Amendment's proscription against an unreasonable seizure, the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so; the facts must be such as would cause any reasonable police officer in like position, drawing when appropriate on his training and experience, to suspect the same criminal activity and the same involvement by the person in question. The corollary to this rule, of course, is that an investigative stop or detention predicated on

mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good

faith.  Each police action, stop, arrest, frisk, search, must be separately supportable by facts known

to the officer who engages in each such activity.

Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); United States v. Sugrim, 732 F.2d 25 28 (2d Cir.1984); Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968); Florida v. Royer, 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983); United States v. Rose, 731 F.2d 1337, 1342 (8th Cir.1984); United States v. Thomas, 844 F.2d 678, 681 (9th Cir.), opinion superseded on other grounds 863 F.2d 622 (9th Cir. 1988).


## THERE MUST BE A LEGAL BASIS FOR EACH INCIDENT OF A DETENTION

Detention without individualized and articulated grounds for each incident of a detention [such as

handcuffing, forcing to the ground, putting in a police cruiser] is unconstitutional.

I.N.S. v. Delgado, 466 U.S. 210, 216-17, 104 S.Ct. 1758, 1762-63, 80 L.Ed.2d 247 (1984); Martinez v. Nygaard, 831 F.2d 822, 827 (9th Cir.1987).


## SEIZURES


To evaluate the constitutionality of a seizure one scrutinizes only the seizure itself, not the events

leading to the seizure, for reasonableness under the Fourth Amendment.  Actions prior to the

moment of seizure are irrelevant to the issues presented.  Thus, you must  focus the reasonableness

of-seizure inquiry narrowly on what police knew at the moment a seizure was made. It also provides

that certain actions prior to the occurrence of a seizure may not be part of the inquiry.  In practical

terms, what this means is that not all information on which seizures are based necessarily is relevant

to the reasonableness determination.

Schulz v. Long, 44 F.3d 643, 648, 649 (8th Cir.1995); Carter v. Buscher, 973 F.2d 1328 (7th Cir.1992); Fraire v. Arlington, 957 F.2d 1268, 1275-76 (5th Cir.), cert. denied, 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992); but see, Estate of Starks v. Enyart, 5 F.3d 230, 233-34 (7th Cir.1993); Graham v. Connor, 490 U.S. 386, 397 (1989); Parratt v. Taylor, 451 U.S. 527 (1981); Gomez v. Toledo, 446 U.S. 635 (1980); Monroe v. Pape, 365 U.S. 167,172,81 S.Ct. 473, 476, 5 L.Ed. 2d 472 (1961); Palmquist v. Selvik, 111 F.3d 1332, 1339 (7th Cir.1997); see Sherrod v. Berry, 856 F.2d 802, 803-05 (7th Cir.1988) (en bane); Schulz v. Long, 44 F.3d 643, 648, 649 (8th Cir.1995). Carter v. Buscher, 973 F.2d 1328 (7th Cir. 1992); Fraire v. Arlington, 957 F.2d 1268, 1275-76 (5th Cir.), cert. denied, 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992) . But see, Estate of Starks v. Enyart, 5 F.3d 230, 233-34 (7th Cir.1993).


## SEIZURES, CONSENT, REFUSAL TO RESPOND

A citizen may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds. In other words, there must be a legal basis for any seizure, and that one has the right not to stop for police, or not to respond to police at all, and that, absent legal cause for police action, failure to cooperate does not operate to furnish otherwise lacking legal cause for police action.


Florida v. Royer, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed,2d 229 (1983); Morgan v. Woessner, 975 F.2d 629 (9th Cir.1992) (withdrawn); United States v. Thomas, 844 F.2d 678, 684 (9th Cir.), opinion superseded on other grounds 863 F.2d 622 (9th Cir. 1988);  Pliska v. Stevens Point, 823 F.2d 1168, 1177 (7th Cir.1987) (quoting from Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).


## SEIZURES, THOROUGH INVESTIGATION

It is incumbent upon law enforcement officials to make a thorough investigation and exercise reasonable judgment before involving the awesome power of arrest and detention.


Moore v. Marketplace, 754 F.2d 1336, 1345-46 (7th Cir. 1985); BeVier v. Hucal, 806 F.2d 123, 127

(7th Cir.1986).

## SEIZURES, RESTRAINT ON FREEDOM

Whenever an officer restrains the freedom of a person to walk away, he has seized that person.

Posr v. Doherty, 944 F.2d 91, 98 (2d Cir.1991).

## SEIZURES, FREEDOM TO WALK AWAY

An officer's failure to advise a citizen of his freedom to walk away is a significant indicator of what

that citizen reasonably believed.

Morgan v. Woessner, 975 F.2d 629, 636 (9th Cir.1992) (withdrawn); Florida v. Royer, 460 U.S. 491,
103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

## SEIZURES, FREEDOM TO LEAVE

An officers' request that an individual accompany him to another location may tend to indicate that

the individual reasonably believed that he was not free to walk away.

Florida v. Royer, 460 U.S. 491, 503, 103 S.Ct. 1319, 1327, 75 L.Ed.2d 229 (1983); Morgan v.
Woessner, 975 F.2d 629 (9th Cir.1992) (withdrawn).

## PROBABLE CAUSE FOR ARREST

The Fourth Amendment permits police to detain an individual only if they have an articulable and

reasonable suspicion that the individual has committed or is about to commit a crime.  To arrest an

individual, police need more than a reasonable suspicion; they must have probable cause. A police officer may not arrest a person without an arrest warrant unless he has probable cause to believe that a crime has been committed and that the person in question has committed that crime. Probable cause exists if the facts and circumstances known to the officer, and of which he had reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the suspect probably has committed a crime. A mere possibility that the person has committed a crime is not enough. The hunch, guess, conjecture, or surmise of an officer is not enough, and there must be enough actual evidence to reasonably lead to the conclusion that the suspect has committed a crime. If you find that the defendants arrested the plaintiff without probable cause, you must find the defendants liable for a violation of the plaintiff's constitutional rights.

Duraway v. New York, 442 U.S. 200 (1979); Brown v. Texas, 443 U.S. 47 (1979); Henry v. United States, 361 U.S. 98 (1959); Brinegar v. United States, 338 U.S. 160, 175-76 (1949); Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir.1991); Weyant v. Okst, 101 F.3d 845, 851 (2d Cir.1996). See also, Dunaway v. New York, 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254 n. 9 60 L.Ed.2d 824 (1979); Wong Sun v. U.S., 371 U.S. 471, 479, 83 S.Ct. 407, 412-19, 9 L.Ed.2d 441 (1963); Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 1310-11, 93 L.Ed. 1879 (1949); Mackinney v. Nielsen, 69 F.3d 1002, 1005 (9th Cir.1995).


## STOP BECOMES ARREST WHEN NOT "MOMENTARY"

An otherwise legal stop or detention becomes an arrest when it ceases to be "momentary."

United States v. Patterson, 648 F.2d 625, 633 (9th Cir. 1981).


## STOPS, LENGTH OF, CASE-SPECIFIC

A stop whose duration is too long becomes an arrest, and, unless there is probable cause to arrest, then the stop-arrest is unconstitutional.

United States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985); Alexander
v. County of Los Angeles, 64 F.3d 1315, 1320 (9th Cir.1995).


**STOP BECOMES ARREST WHEN ONE BELIEVES HE IS UNDER ARREST**

A lawful stop or detention becomes an arrest, for which probable cause legally is required, when a

reasonable person would believe that he is under arrest.

Martinez v. Nygaard, 831 F.2d 822, 828 (9th Cir.1987).


**ARRESTS, WARRANTLESS**

A warrantless arrest without probable cause violates the Constitution and forms the basis for a
section 1983 claim.

Marx v. Gumbinner, 905 F.2d 1503, 1505 (11th Cir.1990); see also, Reeves v. City of Jackson. 608
F.2d 644, 651 (5th Cir.1979).

**PROBABLE CAUSE, REASONABLE INQUIRY**

If a reasonable officer would have made further inquiry before effecting a warrantless arrest, then

there is no probable cause.

Merriman v. Walton, 856 F.2d 1333, 1335 (9th Cir,1988).

**PROBABLE CAUSE**

Mere suspicion, common rumor, or even strong reason to suspect are not enough to constitute

probable cause either to arrest or to search.  In order for there to be probable cause, there must be

some objective evidence which would allow a reasonable person to deduce that a particular

individual has committed or is in the process of committing a criminal offense.  Probable cause

exists where the facts and circumstances within the officers' knowledge and of which the officers

have reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person who is placed under arrest.

If facts relied on by officers, taken individually or together, are fully consistent with legitimate behavior, no probable cause exists.

McKenzie v. Lamb, 738 F.2d 1005 (9th Cir.1984).

## PROBABLE CAUSE, TO BE DETERMINED AT MOMENT OF ARREST

Probable cause must be determined at the time an arrest is made, and facts learned or evidence obtained as a result of a stop or arrest cannot be used to support probable cause unless they were known to the arresting officer at the moment the arrest was made.

Allen v. City of Portland, 73 F.3d 232, 236 (9th Cir.1995); see Wong Sun v. U.S., 371 U.S. 471, 482, 83 S.Ct. 407, 414, 9 L.Ed.2d 441 (1963); Henry v. U.S., 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959).

## PROBABLE CAUSE, NOT BASED ON VERBAL OPPOSITION TO POLICE

The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest, for which probable cause is required, is one of the principal characteristics by which we distinguish a free nation from a police state.

Houston v. Hill, 482 U.S. 451,. 461-63, 107 S.Ct. 2502, 2509-11, 96 L.Ed.2d 398 (1987); see also, Buffkins v. Omaha, 922 F.2d 465, 472 (8th Cir.1990).

## PROBABLE CAUSE, NOT BASED ON RESISTING, NO BOOTSTRAPPING OF PROBABLE CAUSE

A resisting arrest charge cannot provide probable cause for an arrest ab initio when there is no other underlying offense on which to base an arrest.

Groman v. Township of Manalapan, 47 F.3d 628, 635 (3d Cir.1995).

## PROBABLE CAUSE MAY NOT BE BASED ON CIVIL CONDUCT

By its definition, probable cause can exist only in relation to criminal conduct, and civil disputes cannot give rise to probable cause.

Allen v. City of Portland, 73 F.3d 232, 237 (9th Cir.1995); Kennedy v. Los Angeles Police Dept., 901 F.2d 702 (9th Cir. 1989); Peterson v. City of Plymouth, 60 F.3d 469 (8th Cir.1995); Moore v. Marketplace Restaurant, 754 F.2d 1336 (7th Cir.1985); see also, Thomas v. Sams, 734 F.2d 185 (5th Cir.1984).

## PROBABLE CAUSE, FACTS THAT NEGATE TO BE CONSIDERED

Facts and circumstances within an officer's knowledge that would lead a reasonable person to conclude that a suspect has not committed a crime and which tend to negate probable cause, or which would tend to sway the probable cause calculus in favor of a suspect must be considered in determining whether probable cause existed.

Sutkiewicz v. Monroe Co. Sheriff, 110 F.3d 352, 358 (6th Cir.1997); see also, Reid v. State of New Hampshire, 56 F.3d 332, 341 (1st Cir.1995); Haupt v. Dillard, 17 F.3d 285, 290 & n. 5 (9th Cir.1994).

## SEIZURES, RETALIATION

The Fourth Amendment right to be free from arrests without probable cause is clearly established.

Probable cause is obviously lacking when the arrest is motivated purely by a desire to retaliate against a person who verbally challenges the authority to effect a seizure or arrest. The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.

Gasho v. United States, 39 F.3d 1420, 1438 (9th Cir.1994); Houston v. Hill, 482 U.S. 451, 462-63, 107 S.Ct. 2502, 2510, 96 L.Ed.2d 398 (1987).

## THE CONSEQUENCES WHEN A STOP IS IN FACT AN ARREST

Whether a particular detention is a stop or an arrest is of importance because the classification will determine whether probable cause was required for an arrest, and may determine the legality of the police conduct.  When police conduct renders a stop to be an arrest, and there is no probable cause for arrest, though there may be founded suspicion for a stop, the police conduct is unconstitutional.

Washington v. Lambert, 98 F.3d 1181, 1185-86 (9th Cir. 1996).

## STOP MAY BE AN ARREST IF PERSON STOPPED IS COOPERATIVE

Certain police actions constitute an arrest, for which probable cause is required, in certain circumstances, such as, for example, when suspects are cooperative and police are too aggressive. When suspects are uncooperative, those same police actions may not constitute an arrest.

Washington v. Lambert, 98 F.3d 1181, 1185 (9th Cir.1996).

## STOPS, DETENTION IN POLICE CAR
Detention in a patrol car exceeds permissible limits absent some reasonable justification.

United States v. Ricardo D., 912 F.2d 337, 341 (9th Cir. 1990); United States v. Del Vizo, 918 F.2d 821, 825 (9th Cir. 1990) (where no resistance to police, limits of investigative stop exceeded by ordering suspect from his car at gunpoint and handcuffing him).

**STOPS, HANDCUFFING NOT TYPICALLY PART OF STOP**

Handcuffing is not part of a typical stop or detention.

United States. v. Bautista, 684 F.2d 1286, 1288-89 (9th Cir.1982), cert. denied, 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983).

**FACTORS TO BE CONSIDERED TO DETERMINE IF A STOP IS AN ARREST**

Factors to be considered in deciding whether a stop or detention is an arrest are the intrusiveness of the stop, the aggressiveness of the police methods used, how much a plaintiff's liberty was restricted, the justification for the use of the tactics employed, and whether police had a sufficient basis to fear for safety so as to warrant the action taken. Whether a stop or detention constitutes an arrest is determined by evaluating not only how intrusive the stop or detention was, but also by evaluating whether the methods used by police were reasonable given the circumstances.

Washington v. Lambert, 98 F.3d 1181, 1185 (9th Cir.1996).

**FACTORS WHICH RENDER A STOP TO BE AN ARREST**

Various factors are to be weighed to determine if a stop or a detention is an arrest, and they include, the length of a detention, whether a suspect was handcuffed (handcuffing substantially aggravates the intrusiveness of a typical stop), whether weapons were drawn, and if they were drawn for how

long and based on what facts, whether a suspect's freedom of movement was restricted, whether a suspect was placed in a police cruiser or moved, the specificity or lack of specificity had about both the suspect sought and the person stopped.

The intrusiveness of the stop must be weighed against the information had. Less information requires less intrusiveness, and more information permits a greater restriction on liberty.

Washington v. Lambert, 98 F.3d 1181, 1187, 1189-90 (9th Cir.1996); United States v. Ricardo D., 912 F.2d 337, 340-42 (9th Cir.1990); United States v. Robertson, 833 F.2d 777, 781(9th Cir.1987); United States v. Bautista, 684 F.2d 1286, 1289 (9th Cir.1982), cert. denied, 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983); United States v. Del Vizo, 918 F.2d 821, 825 (9th Cir.1990); United States v. Chamberlin, 644 F.2d 1262, 1267 (9th Cir.1980), cert. denied, 453 U.S. 914, 101 S.Ct. 3148, 69 L.Ed.2d 997 (1981).

## ARRESTS, ARREST WORDS NEED NOT BE SPOKEN

An arrest need not be formal; it may occur even if the formal words of arrest have not been spoken, provided that the subject is restrained and his freedom of movement is restricted.

Posr v. Doherty, 944 F.2d 91; 98 (2d Cir.1991).

## ARRESTS, FREEDOM TO LEAVE

The determination of whether an arrest has occurred for Fourth Amendment purposes does not depend upon whether officers announced that they were placing suspects under arrest, but, rather depends upon whether a reasonable person innocent of any crime would have believed that he or she was not free to leave.

United States v. Rose, 731 F.2d 1337, 1342 (8th Cir.1984); United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980).

**ARRESTS, DEFINITION**

An arrest or seizure occurs when the officer by means of physical force or show of authority has in some way restrained the liberty of a citizen. A show of official authority such that a reasonable person would have believed he was not free to leave indicates that an arrest has occurred. The determination of whether an arrest has occurred is not dependent upon whether the citizen is formally placed under arrest.

United States v. Maez, 872 F.2d 1444, 1450 (10th Cir.1989) (quoting from Terry v. Ohio, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1878 n. 16, 20 L.Ed.2d 889 (1968), and Florida v. Royer, 460 U.S. 491, 502, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983).

**ARRESTS, ORDERING TO FREEZE**

An arrest occurs by ordering a person to "freeze."

Posr v. Doherty, 944 F.2d 91, 98 (2d Cir.1991).

**ARRESTS, EXAMPLES OF ARREST INDICIA**

The threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of a citizen by an officer, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled, all are circumstances which indicate an arrest.

United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980).

## PRETEXTUAL STOP DEFINED

Pretextual stops are illegal. A pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop. The test of whether a stop is pretextual is whether objective facts, given a reasonable officer, and under the circumstances, would have made the stop absent a desire to investigate an unrelated serious offense.

United States v. Cannon, 29 F.3d 472, 474, 476 (9th Cir. 1994) (quoting United States v. Guzman, 864 F.2d 1512, 1515, 1517 (10th Cir.1988)). See also, United States v. Smith, 799 F.2d 704, 709 (11th Cir.1986); United States v. Hernandez, 55 F.3d 443 (9th Cir.1995). See also, Arizona v. Hicks, 480 U.S. 321, 329, 107 S.Ct. 1149, 1155, 94 L.Ed.2d 347 (1987).

## WARRANTLESS ARRESTS, BURDEN OF PROOF

A warrantless arrest in a non-public place is presumptively unreasonable and violative of the fourth amendment. The burden is on the defendants to prove, by a preponderance of the evidence in the case, that the warrantless arrest in a non-public place was reasonable and hence legal. Once a warrantless arrest is established, the burden of going forward with the evidence passes to the defendants.

Gilker v. Baker, 576 F.2d 245, 246 (9th Cir.1978); United States v. Driver, 776 F.2d 807, 810 (9th Cir.1985).

## FORCE, REASONABLENESS

The right of an individual not to be subjected to excessive force has long been clearly established, and the question here is whether it was objectively reasonable for defendants to believe that their treatment of plaintiff did not violate that right.

Authority Calamia v. New York, 879 F.2d 1025, 1035 (2d Cir. 1989).

**FORCE, VALID ARREST**

You, the jury, can could conclude that even if police did have probable cause to arrest, they

nevertheless applied excessive force.

Barlow v. Ground, 943 F.2d 1132 (9th Cir. 1991).

**FORCE, DEADLY FORCE DEFINITION**

"Deadly force" is force which the actor uses with the purpose of causing or which he knows to create

a substantial risk of causing death or serious bodily harm.

Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985); Model Penal Code §
3.11(2) (1962); see also, Mattis v. Schnarr, 547 F.2d 1007, 1009 n. 2 (8th Cir.1976) (en banc),
vacated as moot sub nom. Ashcroft v. Mattis, 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977);
Pruitt v. City of Montgomery, 771 F.2d 1475, 1479-80 (11th Cir.1985).

**FORCE, DEADLY**

An officer's use of deadly force is reasonable only if the officer has probable cause to believe that

the suspect poses a significant threat of death or serious physical injury to the officer or others.

Scott v. Henrich; 39 F.3d 912 (9th Cir.1994) (quoting from Tennessee v. Garner, 471 U.S. 1, 3, 105
S.Ct. 1694, 1697, 85 L.Ed.2d 1 (1985).

**FORCE, MORE THAN ONE USE IN CONTINUING SITUATION**

In an ongoing situation, when force is used by police more than once, each use of force must be

judged for reasonableness or unreasonableness of force used by the police as of the moment at which

that force was used.

Curnow v. Ridgecrest Police, 952 F.2d 321 (9th Cir.1991); Hopkins v. Andaya, 958 F.2d 881 (9th Cir.1992).

**FORCE, MODERATION**

A police officer may not reasonably use greater levels of force when alternative courses of action involving uses of lesser levels of force are open to him.

Hopkins v. Andaya, 958 F.2d 881, 887 (9th Cir.1992).

**FORCE, TEST**

A citizen has the right to be free from unreasonable force when being arrested or detained by a law enforcement officer.  The test you are to use to determine if the force used in this case was excessive is this: pay careful attention to the facts and circumstances, including the severity, or lack of severity, of the alleged crime in issue;  the motivation for the arrest or detention; the extent of the injury inflicted; whether the person against whom the force was used posed an immediate threat to the safety of the police or others; and whether the person against whom the force was used was actively resisting arrest or attempting to evade arrest by flight (trying to get away). You must weigh together all of these three factors to determine whether or not the force used was or was not excessive.

Hence, an allegation that force used during a personal seizure was excessive as measured by these factors states a claim for relief under section 1983 predicted upon the Fourth Amendment. A plaintiff asserting that his arrest was unlawful, that he had a right to resist, and that he sustained injuries as a result of his resistance states a claim under Section 1983.

Graham v. Connor, 490 U,S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989); Smith v. City of Fontana, 807 F.2d 796 (9th Cir.1987), withdrawn and republished at 818 F.2d 1411 (9th Cir.1987).  Street v. Parham, 929 F;2d 537, 540 (10th Cir.1991); Zuchel v. Spinharney, 890 F.2d 273, 274 (10th Cir.1989).

## FORCE, REASONABLENESS

The reasonableness inquiry extends only to those facts known to the officer at the precise moment the officer effectuates a seizure.  Reasonableness means the standard of reasonableness at the moment force is used. Events which occurred before the moment at which force is used are not probative of the reasonableness of the decision to use force.

Greenidge v. Ruffin, 927 F.2d 789, 792 (4th Cir.1991).

## FORCE, METHOD OF USE
Reasonableness depends on not only when a seizure is made, but also on how it is carried out.

Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985).

## FORCE, FACTORS, HANDCUFFING TIGHTLY

If, under the totality of the circumstances, a police officer unreasonably seizes a person by using excessive force, he has violated that person's Fourth Amendment rights.  A police officer's use of force violates the Constitution if, judging from the totality of the circumstances, the officer used greater force than was reasonably necessary.  Handcuffing one too tightly may constitute excessive force.

Lester v. City of Chicago, 830 F.2d 706, 713 (7th Cir.1987).

## FORCE, FACTORS

The use of any force by officers simply because a suspect is argumentative, contentious, or vituperative is illegal. Force can only be used to overcome physical resistance or threatened force, and a lack of provocation or need to use force would make any use of force excessive. The use of more force than is necessary or of force for an improper purpose is illegal.

Bauer v. Norris, 713 F.2d 408, 412 (8th Cir.1983); Agee v. Hickman, 490 F.2d 210, 212 (8th Cir.1974), cert. denied, 417 U.S. 972, 94 S.Ct. 3178, 41 L.Ed.2d 1143 (1974).

## EXCESSIVE FORCE-FOURTH AMENDMENT STANDARD

The plaintiff claims that excessive force was used by the defendants in connection with his arrest. A person, even if he is being lawfully arrested, has a constitutional right to be free of excessive force. An officer is entitled to use such force as a reasonable person would think is required to take one arrested into custody, and this may include such physical force as is reasonably necessary to subdue a person who is struggling with an officer. However, an officer is not allowed to use any force beyond that reasonably necessary to accomplish his lawful purpose. Thus, if you find that the defendants used greater force than was reasonably necessary in the circumstances of this case, you must find that the defendants are liable for a violation of the plaintiffs constitutional rights.

Graham v. Connor, 490 U.S. 386 (1989).

## EXCESSIVE FORCE-OBJECTIVE TEST

Whether the force used by the officers was reasonable must be judged from the perspective of an objectively reasonable officer. It is your decision of what force a reasonable officer would have used which controls, not the state of mind of defendants themselves. Evil intentions on the part of the

officer will not establish a constitutional violation if the force used was objectively reasonable. At the same time, if the force used was unreasonable, you must hold the officer liable for a constitutional violation, even if you believe he had good intentions.

Graham v. Connor, 490 U.S. 386 (1989).

## EXCESSIVE FORCE-PERSON ALREADY RESTRAINED

The use of any force by police officers is not reasonable under the Constitution if there is no need for force. It is unreasonable and a violation of the Fourth Amendment for a police officer to use physical force on a person who has been arrested and restrained, who is securely under the control of the police, and who is not attempting to escape.

Cox v. Treadway, 75 F.3d 230, 234 (6th Cir. 1996).

## DANGER CREATION

An individual's constitutional right to protection from the use of excessive force, may arise when the police affirmatively creates the danger to which a person is exposed. To show this constitutional right applies, a plaintiff must prove that persons acting under color of state law acted with deliberate indifference in affirmatively placing a person in danger. The deliberate indifference standard requires that a defendant have actual knowledge of, or willfully ignore, impending harm, that is, a defendant knows that something is going to happen but ignores the risk and exposes someone to it. In order to establish Section 1983 liability, a plaintiff must show that the person acting under color of law participated in creating a dangerous condition, and acted in deliberate indifference to the known or obvious danger in subjecting a person to it. That is, the danger must have been

foreseeable.

United States v. Reese, 2 F.3d 870, 888 (9th Cir.1993); L.W. v. Grubbs, 92 F.3d 894, 900 (9th Cir.1996) (Grubbs II); Sledd v. Linsday, 102 F.3d 282, 288 (7th Cir.1996).


## CREATION, BY USE OF EXCESSIVE FORCE, OF A SITUATION IN WHICH LATER JUSTIFIABLE FORCE IS USED IS ACTIONABLE

A classic Fourth Amendment violation is stated by showing that officers used excessive force in creating the situation which caused a plaintiff to take the actions he did. When police create a situation in which their own actions cause them to use excessive force in response to force used by another person, then the police may be held liable for their use of responsive force even if, taken alone, their second use of force was justified. Use of excessive force which provokes a response of force and results in an additional, responsive use of police force is actionable.

Alexander v. City and County of San Francisco, 29 F.3d 1355, 1366 (9th Cir.1994), cert. denied, 513 U.S. 1083, 115 S.Ct. 735, 130 L.Ed. 2d 638 (1995); Reynolds v. County of San Diego, 84 F.3d 1162, 1169 (9th Cir.1996) (quoting Alexander v. City and County of San Francisco, 29 F.3d 1355, 1366 (9th Cir. 1994), cert. denied, 513 U.S. 1083, 115 S.Ct. 735, 130 L.Ed.2d 638 [19951).


## FORCE, HANDCUFFING

Officers use excessive force on a plaintiff by unreasonably injuring a wrist as they handcuff.

Hansen v. Black, 885 F.2d 642, 645 (9th Cir. 1989).


## GRATUITOUS, EXCESSIVE FORCE

Beating and kicking restrained suspects who are in the control of the police is plainly excessive force. The need for force is nonexistent when a suspect is handcuffed and not trying to resist or

escape. There is no occasion for the use of any force against a person who quietly submits, and no

matter how difficult it is to apprehend a person, the law does not permit officers to beat him once he

is securely in custody.

Cox v. Treadway, 75 F.3d 230, 234 (6th Cir.1996); Lewis v. Downs, 774 F.2d 711, 714 (6th
Cir.1985); Mc Dowell v. Rogers, 863 F.2d 1302, 1307 (6th Cir.1988); Feemster v. Dehntjer, 661
F.2d 87, 89 (8th Cir.1981).

## DETENTION IN A POLICE CAR CAN BE EXCESSIVE FORCE

'[U]necessary exposure to the heat of the sun, to prolonged thirst and taunting, and to a deprivation

of bathroom breaks' can violate the Fourth Amendment, which requires a showing of objective

unreasonableness rather than any particular subjective motivation. See Graham v. Connor, 490 U.S.

386, 398 (1989); Hope v. Pelzer, 122 S. Ct. 2508, 2514 (2002); Burchett vs. Kiefer, 310 F.3d 937,

945 (6 th Cir.  2002).

"...[U]necessary detention in extreme temperatures, like those that could be reached in an

unventilated car in ninety-degree heat, violates the Fourth Amendment's prohibitions on

unreasonable searches and seizures". Burchett vs. Kiefer, 310 F.3d 937, 945 (6th Cir.  2002).

In considering whether a person's fourth amendment rights were violated, you can consider the

government's interest in effecting the seizure against the imposition of excessive heat on the

individual.  You can also consider whether the officers had equally effective alternative ways of

detaining the person that would not have subjected him/her to excessive heat. For example, you can

consider whether the officers  rolled down the windows to allow air in the police cruiser  or whether

the officers utilized the car's cooling or ventilation devices. Id. at 945. An officer's failure to use equally effective alternative ways of detaining the person that would not have subjected him/her to excessive heat indicates a wanton indifference to important safety factors. Graham v. Connor, 490 U.S. 386, 398 (1989); Burchett vs. Kiefer, 310 F.3d 937, 945 (6 th Cir. 2002).

The Fourth Amendment permits detention using only 'the least intrusive means reasonably available.' United States v. Sanders, 719 F.2d 882, 887 (6th Cir. 1983) (quotation omitted); Burchett vs. Kiefer, 310 F.3d 937, 945 (6 th Cir. 2002).

'[C]laims of excessive force do not necessarily require allegations of assault,' but rather can consist of the physical structure and conditions of the place of detention. Cornwell v. Dahlberg, 963 F.2d 912, 915 (6th Cir. 1992); Burchett vs. Kiefer, 310 F.3d 937, 945 (6 th Cir. 2002). In other words, 'detention on the cold, muddy ground' could constitute a claim of excessive force. Id.

**PEPPER SPRAY= EXCESSIVE FORCE**

The use of pepper spray is excessive force in cases where the crime is a minor infraction, the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else. The use of pepper spray is reasonable, however, where the plaintiff was either resisting arrest or refusing police requests, such as requests to enter a patrol car or go to the hospital. Pepper spray is a reasonable alternative to escalating a physical struggle with an arrestee. Vinyard vs. Wilson, 311 F.3d 1340, 1348 (11 th Cir. 2002).

**UNPROVOKED FORCE EXCESSIVE**

Police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever.

Clash v. Beatty, 77 F.3d 1045, 1048 (7th Cir.1996); Lanigan v. Village of East Hazel Crest, Ill., 110 F.3d 467, 475 (7th Cir.1997); see also, McDonald v. Haskins, 966 F.2d 292 (7th Cir.1992).


## EXCESSIVE FORCE UNLAWFUL, POLICE ON NOTICE

All government officials are on notice that it is unlawful to use excessive force against citizens.

P.B. v. Koch, 96 F.3d 1298, 1304 (9th Cir.1996).


## NO SPECIFIC INTENT REQUIRED

It is not necessary to find that a defendant had any specific intent to deprive the plaintiff of his constitutional rights, or that he acted with malice or ill will in order to find for the plaintiff. The plaintiff is entitled to relief if a defendant intended the actions which resulted in a violation of his constitutional rights. Whether any of the officers acted with subjective good faith is irrelevant, and plaintiff need not prove that the officers had an evil heart.

Graham v. Conner, 490 U.S. 386, 397 (1989); Parratt v. Taylor, 451 U.S. 527 (1981); Gomez v. Toledo, 446 U.S. 635 (1980); Monroe v. Pape, 365 U.S. 167 (1961).


## CREDIBILITY OF WITNESSES

The testimony of a law enforcement officer should be considered by you just as any other evidence in this case, and in evaluating his credibility you should use the same guidelines which you apply to the testimony of any witness. You should not give either greater or lesser credence to the testimony of a witness merely because he is a law enforcement officer.

Roberts v. Hollocber, 664 F.2d 200 (8th Cir. 1981); Darbin v. Nourse, 664 F.2d 1109 (9th Cir. 1981); Bush v. United States, 375 F.2d 602, 605 (D.C. Cir. 1967).

## BIAS OF OFFICIALS AS WITNESSES

Several of the witnesses in this case are still employed by the City of Danbury and hence are interested witnesses in the outcome of this case. Their relationship with and employment by the City of Danbury are matters for you to consider, together with your observation of the witnesses and the testimony you have heard, in determining whether they are biased in favor of the defendants, and what weight you will give to their testimony.

## DUTY TO PREVENT WRONGS

A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his or her presence by other officers. If any police officer witnesses another person or police officer engaging in unconstitutional conduct and does not take affirmative steps to prevent such conduct, then the officer who witnesses, but who fails to attempt to prevent such conduct, is liable for the consequences of such conduct.

O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir.1988); Bruner v. Dunaway, 684 F.2d 422 (6th Cir.1982), cert. denied, 459 U.S. 1171, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983); Armster v. City of Riverside, 611 F.Supp. 103 (C.D.Cal.1985).

## JOINT TORTFEASORS

In this case there are multiple individual defendants and you must determine whether any or all of them are liable to the plaintiff. In this connection, you should determine whether the officers acted jointly with and/or assisted each other. Where two or more persons act together and cause a wrong to

another, they incur a joint liability for the acts of each other. The law does not require the injured

party to establish how much of the injury was done by one person and how much of the injury was

done by another. Rather, it permits the injured party to treat all concerned in the injury jointly and all

are liable to respond to the plaintiff in a total sum as damages. All those who actively participate in a

wrongful act, by cooperation or request, or who lend aid or encouragement to the wrongdoer, or

ratify and adopt his acts for their benefit, are equally liable with him. Express agreement is not

necessary, and all that is required is that there should be a common design or understanding, even if

it is a tacit one.

1 Prosser, Law of Torts, § 46, pp. 322-24 (5th ed. 1984).

**EVIDENCE, CIRCUMSTANTIAL**

Circumstantial evidence can speak clearly and often unequivocally; properly construed, it is as

objective and reliable as any other evidence.

Hopkins v. Andaya, 958 F.2d 881, 888 (9th Cir.1992).


**EVIDENCE, MISSING WITNESS RULE**

The missing witness rule permits an inference of unfavorable testimony from the missing witness,

but only if that witness is peculiarly within the opposing party's power to produce. Thus, to draw the

unfavorable inference, counsel must show either that the missing witness is physically available only

to the opponent or that the witness has the type of relationship with the opposing party that

pragmatically renders his/her testimony unavailable to the party who wishes to call him/her as a

witness.

Littlefield v. McGuffey, 954 F.2d 1337, 1346-47 (7th Cir. 1992); United States v. Caccia, 122 F.3d
136 (2d. Cir. 1997).

**STATE LAW CLAIMS**

As I have already discussed, in this case, Plaintiff is also suing Defendants for violation of state created rights of False Imprisonment, Assault and Battery, Abuse of Process, Intentional Infliction of Emotion Distress. I will now discuss these state created rights.

**FALSE IMPRISONMENT**

a. Now, false imprisonment is the unlawful restraint by one or more persons of the physical liberty of another. It is an act directly or indirectly confining another within the boundaries fixed by the actor for any time whatsoever, however short, irrespective of whether harm is caused, and provided that

      (1) the act is intended to confine the other;

      (2) the one being confined is conscious of that confinement; and

     (3) the confinement is not consented to or is otherwise not privileged.

Our law implies a force in every false imprisonment, and any unlawful detention of a person against his will is such a false imprisonment. It is not an essential element for a plaintiff to resist an attempt to hold him, or to disregard orders or to use actual force in order to preserve his rights against one who has falsely imprisoned or unlawfully detained him. I shall speak more of this later.

b. The burden of proof in this action is upon the plaintiff to prove that his physical liberty has been restrained by the defendants acting here individually and/or jointly and/or acting through their agents, servants and employees, or anyone with authority from them so to do. If he has proved that the defendants restrained the plaintiff's liberty, then the defendants are liable, unless they have

proven by a fair preponderance of the evidence that such restraint was lawful; that is, that it was objectively reasonable under our law.

c. Now, that being the situation, the logical way for you to approach the performance of your duties in this case would seem to be for you first to pass upon the question as to whether the plaintiff's liberty has been restrained by the defendants, and when, of course, I say "the defendants", I mean defendants, acting individually and/or jointly and/or through any of their agents or servants in authority; and then if you find that it was, to pass upon the question of whether defendants were objectively reasonable under the law in doing what they did.

d. Speaking generally, everyone is at liberty to go where he will without being directly restrained by anyone else; so it is that any direct [or indirect] restraint by which a person is compelled to stay in any place against his will for any time, long or short, is a violation of his legal right and gives rise to a cause of action in his favor against the person or corporation so restraining him. In order to be unlawful the restraint must be intentional. The mere accidental hampering of a person's movements is not unlawful and, indeed, a restraint which results simply from negligence is not such a restraint as to give rise to a cause of action for false imprisonment. The restraint which must be proved, and in order to be a ground for an action of false imprisonment, must be a direct restraint of a person's freedom to move, or must be a compulsion to move where the person does not wish to go; that is to say, a compulsion to go or stay against a person's will. In order to be false imprisonment, this restraint must be by force, express or implied. That is, it must be by force or something which in the eyes of the law is the equivalent of force.

e. Any exercise of force, express or implied, by which in fact the other person is deprived of his liberty, is compelled to remain where he does not wish to remain, or is compelled to go where he

does not wish to go, is an imprisonment. While actual force is not necessary, it is essential that the conduct of the person complained of must at least be such as to show that force will be used to detain the plaintiff, if necessary.

f. An unlawful restraint may exist by threats, as well as by actual force; and the threats may exist or may be manifest either by conduct or words or both. If the words or conduct are such as to induce a reasonable apprehension of force and the kind of force to be used, then it is the same as though actual force had been applied. In other words, false imprisonment may exist even though there is not any actual physical force used in the confining and restraining as, for instance, where one is led to believe that the efforts to escape from the place in which he finds himself would meet with resistance that would result in, substantial humiliation, disgrace or serious inconvenience or violence,

g. Now, in this case you will have in mind a restraint of a person's freedom to move is not such a restraint as will give rise to a cause of action for false imprisonment unless it is a restraint against a person's will. If the plaintiff had consented to the restraint he, of course, has no cause of action, and his suit must fail. Accordingly, a plaintiff in this or any action for false imprisonment must present not only evidence that he has been restrained, but also that the restraint has been against his will. If the plaintiff here consented to the restraint and acquiesced in it willingly, he has no ground of complaint with respect to the amount of restraint which he consented to. See Wright, FitzGerald and Ankerman, Conn. Law of Torts (3rd Ed.) § 15.

h. When we speak of consent in this connection we mean, of course, free consent, not consent into which he was forced by any unlawful means, nor consent into which he was trapped.

i. The question of whether false imprisonment has occurred may arise in cases of temporary

detention and inconvenience occurring in the everyday affairs of life. A reasonable detention for a reasonable purpose, if not accompanied with force or threats of violence, does not constitute a false imprisonment, since there is no actual restraint. But if this detention is unreasonably long and brought about by compulsion so that the plaintiff submits in an apprehension of force or arrest, a defendant is liable. Words may be sufficient to constitute an imprisonment if they involve a restraint upon the person and the party is accordingly restrained; for one is not obliged to incur the risk of personal violence and insult by resisting until actual force is used. Conversely, if a plaintiff voluntarily submits, there is no illegal confinement, as where a person accused of a crime voluntarily, that is from his own choice or with full consent, or of his own free will, accompanies his accusers for the purpose of proving his innocence, and where no force is used. Submission must be by reason of apprehension of force or other unlawful means, otherwise the plaintiff does not recover. It is, again, for you to determine what the true facts are and to apply to them the law which I give you. <u>Collier v. King's Mill Store, Inc., Common Pleas Court</u>, Hartford County, Case No, 70192 (1959). See generally Wright, FitzGerald and Ankerman, Conn. Law of Torts (3rd Ed.) § 12,; 2 See generally <u>Green v. Don roe</u>, 186 Corm. 265 (1982).

See also, State of Connecticut, Judicial Branch, Form Civil Jury Instructions, @ <u>http://www.jud.state.ct.us/,</u> and cases cited therein.

**ASSAULT AND BATTERY**

a. The plaintiff in this case is also claiming to recover damages for physical injuries which he alleges were inflicted upon him by the defendants; that is, the plaintiff bases his claim upon what is ordinarily spoken of as an assault and battery. Without bothering you with certain technical aspects of the law involved in this claim, I shall use the word "assault" in the meaning usually given to it by men not skilled in the law. So used, an assault may be defined as an unlawful application of force or

violence to the person of another. That definition involves two elements: Force or violence must be applied to the person of another, and as to this element I need only to add that it does not matter, as far as the liability of the defendants are concerned, how little or how great was that force or violence, although, if you find that the defendants did commit an assault, the amount of damages you can properly determine to be due the plaintiff would vary with the extent and nature of the force applied.

b. The other element involved in the offense with which the plaintiff charges the defendants is that the application of the force or violence must be unlawful. That does not necessarily mean that there was any preconceived intent on the part of the defendants to injure the plaintiff, although an assault arising out of such an intent would be unlawful. Nor need an assault in order to be unlawful necessarily be intentional, or wanton, that is, the result of a reckless disregard of consequences on the part of the one charged with the offense. It would be sufficient if the assault was the result of negligence on his part, that is to say, of a failure on his part to use the care which a person of ordinary prudence would use under the circumstances present. Lentine v. McAvoy, 105 Conn. 528, 531 (1927). But, to be a basis of recovery, the application of force or violence must, by reason of the intent, the wanton conduct, or the negligence of the party charged with the offense, be unlawful. From that it follows that if the force or violence applied to the person of the plaintiff was the result of mere accident, apart from intention, wantonness or negligence, it was not unlawful and the plaintiff cannot recover. Morris v. Platt, 32 Conn. 75, 87 (1864).

c. In summary, therefore, the plaintiff must have proved to you by a fair preponderance of the evidence that the defendants did unlawfully apply force or violence to his person; and unless the plaintiff has so proved, you need go no further in your consideration of the case, but must render a

verdict for the defendants.

 See also, State of Connecticut, Judicial Branch, Form Civil Jury Instructions, @ http://www.jud.state.ct.us/ and cases cited therein.

## ABUSE OF PROCESS

Plaintiff is also suing Defendant police officers for using the criminal process against him in order to intimidate him from asserting his rights against them and in order to cover up their own wrongdoing and avoid civil and criminal liability for their own acts in violation of the state law tort of Abuse of Process.   As part of the Abuse of Process claim, Plaintiff claims that Defendant police officers arrested him for committing the crime of interfering with a police officer and breach of peace to conceal and excuse their attack on him.  Plaintiff further claims that Defendant police officers further attempted to conceal their attack on him by preparing a false police report, (which they knew, and intended, would be forwarded to and relied upon by a prosecutor), and, by falsely informing medical personnel at Danbury Hospital that he was intoxicated, although Defendant police officers did not seek to perform and did not perform any tests to confirm such claims.

Abuse of process is a person's use of a legal  process against another person in an improper manner or to accomplish a purpose for which it was not designed. Varga v. Pareles, 137 Conn. 663, 667, 81 A.2d 112 (1951)]; Schaefer v. O. K. Tool Co., 110 Conn. 528, 532-33, 148 A. 330 (1930). The tort of abuse of process arises out of the accomplishment of a result that could not be achieved by the proper and successful use of the legal process.

Honan v. Dimyan, 52 Conn. App. 123 (1999); Suffield Development Associates Limited Partnership v. National Loan Investors, 64 Conn. App. 192 (2001); 1 F. Harper, F. James & O. Gray, Torts (2d Ed. 1986) §§ 4.9; R. Mallen & V. Levit, Legal Malpractice (2d Ed. 1981) §§ 61; W. Prosser & W. Keeton, Torts (5th Ed. 1984) §§ 121.  Mozzochi v. *Beck*, 204 Conn. 490, 494, 529 A.2d 171 (1987).

To prove that Defendants abused the legal process against Plaintiff, Plaintiff is not bound to allege or prove the termination of the original legal proceeding regarding the charges against him. Plaintiff is also not bound to allege or prove want or lack of probable cause in reference to the crimes he was charged with.

Schaefer v. O.K. Tool Co., Inc., 110 Conn. 528 (1929); 38 Corpus Juris, 384; 1 Ruling Case Law, 101; Burdick on Torts (4th Ed.) p. 323; Bigelow on Torts (8th Ed.) pp. 228, 232; 1 Cooley on Torts (3d Ed.) p. 354; McGann v. Allen, 105 Conn. 177, 185, 188, 134 Atl. 810 (1926).

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

For the plaintiff to prove a Defendant police officer violated the state law tort of intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the Defendant police officer intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that a defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. Carroll v. Allstate Insurance Co. 262 Conn. 433 (2003); Benton v. Simpson, 78 Conn. App. 746 (2003); Appleton v. Board of Education, 254 Conn. 205, 757 A.2d 1059 (2000); Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986).

"Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society . . . ." Petyan v. Ellis, supra, 200 Conn. 254 n.5, quoting, W. Prosser & W. Keeton, Torts (5th Ed. 1984) §§ 12, p. 60. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous! 1 Restatement (Second), Torts §§ 46, comment (d), p. 73 (1965). Conduct on the part of a defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction

of emotional distress. <u>Mellaly v. Eastman Kodak Co.</u>, 42 Conn. Sup. 17, 19, 597 A.2d 846 (1991);

<u>Appleton v. Board of Education</u>, 254 Conn. 205, 210-11, 757 A.2d 1059 (2000); <u>Carroll v. Allstate</u>

<u>Insurance Co.</u> 262 Conn. 433 (2003).


## DAMAGES, BASES, CAUSES

A person subjects another to the deprivation of a constitutional right, within the meaning of Section

1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an

act which he is legally required to do that causes the deprivation of which complaint is made.

Personal participation is not the only predicate for Section 1983 liability. Anyone who causes any

citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection

can be established not only by some kind of direct personal participation in the deprivation, but also

by setting in motion a series of acts by others which the actor knows or reasonably should know

would cause others to inflict the constitutional injury.
<u>Johnson v. Duffy</u>, 588 F.2d 740, 743-44 (9th Cir.1978); <u>Soto v. City of Sacramento</u>, 567 F.Supp.

662, 673-74 (E.D.Cal.1983).


## CAUSATION, ONE CAUSE

An injury or damage is legally caused by an act, or a failure to act, whenever it appears from the

evidence in the case that the act or omission played a substantial part in bringing about or actually

causing the injury or damage; and that the injury or damage was either a direct result or a reasonably

probable consequence of the act or omission.

<u>Harris v. City of Roseburg,</u> 664 F.2d 1121 (9th Cir.1981).

**CAUSATION, MULTIPLE CAUSES**

This does not mean that the law recognizes only one proximate cause of an injury or damage, consisting of only one factor or thing, or the conduct of only one person. On the contrary, many factors or things, or the conduct of two or more persons, may operate at the same time, either independently or together, to cause injury or damage; and in such a case, each may be a proximate cause.

Harris v. City of Roseburg, 664 F.2d 1121 (9th Cir.1981).

**CAUSATION, INTERVENING CAUSES**

A person is responsible for those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties.

Marshall v. Perez, 828 F.2d 845, 848 (1st Cir.1987), cert. denied, 484 U.S. 1065, 108 S.Ct. 1027, 98 L.Ed.2d 991 (1988).

**LIABILITY**

Plaintiff in a civil rights action, such as this action, is entitled to a verdict if it is proved, in accordance with these instructions, that a defendant acted under color of State law and that such action operated to deprive a plaintiff of rights under the Constitution or laws of the United States of America. A plaintiff need not prove damages in order to be entitled to a verdict, because it is the constitutional violation itself that is the damage.

See Memphis Comm. School Dist. v. Stachura, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); 42 U.S.C.A. § 1983.

**COMPENSATORY DAMAGES:**

The fact that plaintiff's constitutional rights are found to have been violated entitles him to compensation for the actual damages he has suffered. Therefore, if you decide for the plaintiff on the issue of liability, you must then fix the amount of money damages which will reasonably and fairly compensate him for any harm which the wrongful conduct of the defendants was a substantial factor in bringing about.

Among the elements of injury and harm which you should consider are:

1. The loss of past earnings and impairment of future earning capacity.

2. The reasonable expense for property damaged or destroyed.

3. The reasonable expense of legal services required and received by the plaintiff to defend and clear himself.

4. The physical harm to the plaintiff during and after the impairment, including ill health, physical pain and suffering, disability, disfigurement, or discomfort, and any such physical pain, dis-ability, and discomfort which plaintiff will, with reasonable certainty, suffer in the future; any pain, suffering and mental anguish already suffered and proximately resulting from the incidents in question, and  for any pain, suffering and mental anguish which you find from the evidence in the case that is reasonably certain to be suffered in the future from the same cause.

5. The emotional and mental harm to the plaintiff during and after imprisonment, including fear, humiliation, and mental anguish and suffering, and any emotional harm, fear, or mental anguish that plaintiff will, with reasonable certainty, suffer in the future.

6. The reasonable expense of medical or psychological care, treatment, and services required and received by the plaintiff in connection with his physical and psychological injuries, and the expenses

for medical or psychological care that will be reasonably incurred in the future.

7.  The loss of ability to enjoy life's pleasures and the extent and duration of the injuries, including their continuation in the future.

Devitt, Blackmar, Wolff & O'Malley, Federal Jury Practice and Instructions, 4th, § 85.02 (modified).

## DAMAGES, COMPENSATORY ITEMS OF

Compensatory damages may include not only out-of pocket loss and other monetary harms, but also such injuries as impairment of reputation, personal humiliation, and mental anguish and suffering. Memphis Community School District v. Stachura, 477 U.S. 299, 307, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986) (quoting Gertz v. Welch, 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974), citing Carey v. Piphus, 435 U.S. 247, 264, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978)).

## DAMAGES, INFERRED, HUMILIATION

When there is no formal evidence of actual damage, such harm can be inferred from the circumstances as well as established by testimony. Humiliation is an item of damages. Howard v. Adkison, 887 F.2d 134, 139 (8th Cir.1989); Seaton v. Sky, 491 F.2d 634, 636 (7th Cir.1974).

## INTEREST-42 U.S.C. § 1983

If you have determined that compensatory damages should be awarded to the plaintiff, you must also decide whether to award interest. This lawsuit was commenced September 20, 2000, and you may award interest on the sum which you have decided is an appropriate compensatory damage award, from that time to the present. Whether you do award interest should depend upon whether you

conclude that interest is necessary to compensate the plaintiff fully for any injury suffered, bearing in mind that the plaintiff has not had the use of the damages you award during the time this litigation has been pending.  If you do award interest, the actual sum will be computed by the clerk at the rate provided by law.

Furtado v. Bishop, 604 F.2d 80 (1st Cir. 1980).

## DAMAGES, NOMINAL

If you return a verdict that constitutional rights were violated, but do not find that plaintiff has sustained provable damages, then you must return a verdict for that plaintiff in the nominal sum of one dollar.

The award of nominal damages would not preclude you from awarding punitive damages in such amount as you deem appropriate, if you find that the award of punitive damages is justified under these instructions.

Devitt, Blackmar, Wolff & O'Malley, Federal Jury Practice and Instructions, 4th, § 85.18 (modified).

## PUNITIVE DAMAGES

If you find the issues in favor of the plaintiff, and if the conduct of one or more of the defendants is shown to be in reckless or callous disregard of, or indifference to, the rights or safety of others, then you may assess punitive or exemplary damages in addition to any award of actual damages.

The function of punitive damages is to punish defendants for malicious conduct and to deter similar conduct by others. Whether you decide to award any punitive damages should be based on whether you find that a defendant acted willfully, deliberately, maliciously, or with reckless disregard of the plaintiff's constitutional rights. If you find that a defendant has done one of those things, then you may award punitive damages.

Punitive damages may be awarded even if the violation of plaintiff's rights resulted in only nominal compensatory damages. That is, even if the plaintiff can show no damages or other injury as a result of a defendant's actions, if these actions were deliberate, willful or made with reckless disregard of plaintiff's rights, punitive damages are appropriate.

Smith v. Wade, 461 U.S. 30 (1983); Adickes v. S.H. Kress & Co., 398 U.S. 144,234 (1970) (Brennan, J., concurring).


**DAMAGES, PUNITIVE**

Punitive damages are awarded to punish the defendants for their outrageous conduct and to deter them and others like them from similar conduct in the future. The award would send a message to others in the same department that they may be liable individually for their actions in violation of a person's civil rights.

Bouman v. Block, 940 F.2d 1211, 1234 (9th Cir.1991)


**SECTION 1983, PURPOSES**

Section 1983 was intended not only to provide compensation to the victims of past abuses, but to serve as a deterrent against future constitutional deprivations, as well. Liability for injurious conduct is an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights.

Owen v. City of Independence, 445 U.S. 622, 651-52, 100 S.Ct. 1398, 1415-26, 63 L.Ed.2d 673 (1980).

**DAMAGES, PUNITIVE, POTENTIAL HARM**

It is appropriate to consider the magnitude of the potential harm that the defendants' conduct would have caused to its intended victim if the wrongful plan had succeeded, as well as the possible harm to other victims that might have resulted if similar future behavior were not deterred in deciding upon an amount of punitive damages.

TXO v. Alliance, 509 U.S. 443, 459-60, 113 S.Ct. 2711, 2721-22, 125 L.Ed.2d 366 (1993).

## DAMAGES, PUNITIVE

Punitive damages are not to be awarded based on an approach that concentrates entirely on the relationship between actual and punitive damages.

TXO v. Alliance, 509 U.S. 443, 460, 113 S.Ct. 2711, 2722, 125 L.Ed.2d 366 (1993).

## DAMAGES -STATE LAW CLAIMS

Plaintiff alleges that Defendant police officers violated the laws of the State of Connecticut. Plaintiff is suing Defendants for violation of the state law torts of Assault and Battery, False Imprisonment, Abuse of Process, and Intentional Infliction of Emotional Distress.

With respect to the state law claims asserted by Plaintiff, the rule of damages is as follows. Insofar as money can do it, the plaintiff is to receive fair, just and reasonable compensation for all injuries and losses, past and future, which are proximately caused by a defendant. Under this rule, the purpose of an award of damages is not to punish or penalize a defendant, but to compensate the plaintiff for his/her resulting injuries and losses. You must attempt to put the plaintiff in the same position, as far as money can do it, that he/she would have been in had the defendant not violated

state law.

Our laws impose certain rules to govern the award of damages in any case where liability is proven. Just as the plaintiff has the burden of proving liability by a fair preponderance of the evidence, he/she has the burden of proving his/her entitlement to recover damages by a fair preponderance of the evidence. To that end, the plaintiff must prove both the nature and extent of each particular loss or injury for which he/she seeks to recover damages and that the loss or injury in question was proximately caused by a defendant. You may not guess or speculate as to the nature or extent of the plaintiff''s losses or injuries. Your decision must be based on reasonable probabilities in light of the evidence presented at trial. Injuries and losses for which the plaintiff should be compensated include those he/she has suffered up to and including the present time and those he/she is reasonably likely to suffer in the future as a proximate result of a defendant's conduct.

Once the plaintiff has proven the nature and extent of his/her compensable injuries and losses, it becomes your job to determine what is fair, just and reasonable compensation for those injuries and losses. There is often no mathematical formula in making this determination. Instead, you must use human experience and apply sound common sense in determining the amount of your verdict.

There are two general types of damages with which you must be concerned: economic and non-economic damages. Economic damages are monies awarded as compensation for monetary losses and expenses which the plaintiff has incurred, or is reasonably likely to incur in the future, as a result of a defendant's conduct. They are awarded for such things as the cost of reasonable and necessary medical care and lost earnings. Non-economic damages are monies awarded as compensation for non-monetary losses and injuries which the plaintiff has suffered, or is reasonably likely to suffer in the future, as a result of a defendant's conduct. They are awarded for such things as physical pain

and suffering, mental and emotional pain and suffering, and loss of diminution of the ability to enjoy life's pleasures.

I will now instruct you more particularly on economic damages. In this case, the plaintiff seeks to recover economic damages for medical care and expenses incurred for the treatment of injuries sustained.

The plaintiff is entitled to recover the reasonable value of medical care and expenses incurred for the treatment of injuries sustained as a result of the defendant's violation of state law. The plaintiff must prove that the expenses he/she claims were reasonably necessary and proximately caused by the defendant's conduct.

Let me now turn to non-economic damages. In this case, the plaintiff seeks to recover non-economic damages for each of the following type of non-monetary losses or injuries: physical pain and suffering, mental and emotional suffering, loss of the ability to enjoy life's pleasures, and permanent impairment or loss of function.

A plaintiff who is injured by the negligence of another is entitled to be compensated for all physical pain and suffering, mental and emotional suffering, loss of the ability to enjoy life's pleasures, and permanent impairment or loss of function that he/she proves by a fair preponderance of the evidence to have been proximately caused by a defendant's conduct.   As far as money can compensate the plaintiff for such injuries and their consequences, you must award a fair, just, and reasonable sum. You simply have to use your own good judgment in awarding damages in this category. You should consider the nature and duration of any pain and suffering that you find.

A plaintiff who is injured by the conduct of another is entitled to be compensated for mental suffering caused by a defendant's conduct for the results which proximately flow from it in the same

manner as he is for physical suffering.

You should consider, as a separate category for awarding damages in this case, the length of time the plaintiff was, or will probably be, disabled from engaging in activities which he enjoys.

If you find that it is reasonably probable that he has suffered permanent physical harm, loss of function or disfigurement, the plaintiff is entitled to be compensated for that category of injury. Your award should be in accordance with the nature and extent of such physical impairment, loss of function or disfigurement and the length of time he is reasonably expected to endure its negative consequences. It is stipulated and agreed that Plaintiff's life expectancy is _____.

## QUALIFIED IMMUNITY, BASIC

In this case, the constitutional rights plaintiff claims were violated were clearly established rights at the time of the alleged violation by the police.

Defendant police officers claim that, notwithstanding those clearly established constitutional rights, they had an objectively reasonable belief that the allegedly wrongful conduct in which they engaged was lawful.

It is a question of fact for, you, the jury to decide whether, in light of the clearly established constitutional rights, a reasonable police officer-not the officers in this case, but a reasonable police officer-would hold an objectively reasonable belief that his actions were constitutional. If a reasonable police officer would hold an objectively reasonable belief that his actions were lawful, in light of the clearly established constitutional rights, then the defendant officers are entitled to qualified immunity from damages in this action.

You must remember that all police officers are required and presumed to know what the law is and to act within its bounds, and that it is not objectively reasonable for a police officer to violate a

person's constitutional rights unless there are exceptional circumstances present. Any such exceptional circumstances must be proved by the police by a preponderance of the evidence, as the police have the burden of proving by a preponderance of the evidence that their conduct was objectively reasonable.

Thorsted v. Kelly, 858 F.2d 571 (9th Cir.1988).


## SPECIAL DEFENSE OF CONDITIONAL OR QUALIFIED PRIVILEGE

The individual defendants in their special defense claim a conditional or qualified immunity by virtue of being public officials performing their duties as employees of the City of Danbury. Under this doctrine a public employee is not liable if he acts reasonably and diligently in performing the duties of his employment. However, the public employee loses or abuses his immunity or privilege if he acts with malice, improper motive, or bad faith. Also, the courts have said that he also loses such immunity if he acts excessively.

Having made this claim of immunity or privilege, in their special defense, the individual defendants have the burden of proof, by a fair preponderance of the evidence, to persuade you that they are entitled to such immunity.

See Wright, FitzGerald and Ankerman, Conn. Law of Torts (3rd Ed.) § 157.


## ARRESTS, WARRANTLESS, IMMUNITY

When a reasonable police officer would have made further inquiry before effecting a warrantless arrest, such officer cannot claim the affirmative defense of qualified immunity.

Fuller v. M.G. Jewelry, 950 F.2d 1437 (9th Cir.1991); see also, Hutchinson v. Grant, 796 F.2d 288 (9th Cir.1986).


**FORCE, NO QUALIFIED IMMUNITY**

No officer could reasonably believe that the use of unreasonable force did not violate clearly established law. If you, the jury concludes that, even under all the circumstances, excessive force had been used, the inquiry is over.

Thus, since the determination of liability and the availability of qualified immunity depend on the same findings, the qualified immunity question is answered as part of your consideration of the excessive force claim.

Street v. Parham, 929 F.2d 537, 540 (10th Cir.1991);Hopkins o. Andaya, 958 F.2d 881,885 n.4 (9th Cir.1992); Curnow v. Ridgecrest Police, 952 F.2d 321 (9th Cir. 1991); Zuchel v. Spinharney, 890 F.2d 273, 274 (10th Cir. 1989).


**QUALIFIED IMMUNITY, MALICE DEFEATS**

Immunity is defeated if the officers took the complained of action with malicious intention to cause a deprivation of rights, or the official violated clearly established statutory or constitutional rights of which a reasonable person would have known.

McCord v. Maggio, 927 F.2d 844, 847 (5th Cir.1991).


**QUALIFIED IMMUNITY, NONE WHEN LAW CLEARLY ESTABLISHED**

Page 58 of 72

An official does not have immunity where the contours of the right allegedly violated were sufficiently clear that a reasonable officer would understand that what he is doing violates that right. Vasbinder v. Ambach, 926 F.2d 1333, 1341 (2d Cir.1991).

## QUALIFIED IMMUNITY, NONE WHEN WRONGFULNESS OF CONDUCT APPARENT

Where a police officer could be expected to know that certain conduct would violate constitutional rights, he should be made to hesitate and may not claim the defense of qualified immunity. Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L,Ed.2d 396 (1982).

## QUALIFIED IMMUNITY, BURDEN ON DEFENSE, NONE WHERE DELIBERATE INDIFFERENCE

Qualified immunity is an affirmative defense; if the plaintiff proves that the right allegedly violated was clearly established, the burden shifts to the defendant police officers to prove that his conduct was reasonable even though it might have violated the law.

A finding of deliberate indifference necessarily precludes a finding of qualified immunity.

Hamilton v. Endell, 981 F.2d 1062 (9th Cir.1992).

## BURDEN OF PROOF WITH RESPECT TO THE CRIMINAL CHARGES PRESUMPTION OF INNOCENCE

Plaintiff was charged by Defendant police officers with breach of peace, a specific intent offencse, in violation of Section 53a-181(a) of the Penal Code and with interfering with an officer, also a specific intent crime, in violation of Section 53a-167a of the Penal Code.  An accused in a criminal case is

presumed to be innocent; this presumption of innocence remains with the accused throughout the trial unless and until the state proves beyond a reasonable doubt the essential elements of a crime charged. The accused does not have to prove that he is innocent.

See, State of Connecticut, Judicial Branch, Form Criminal Jury Instructions @ http://www.jud.state.ct.us/ and cases cited therein.

**REASONABLE DOUBT**

The meaning of reasonable doubt can be arrived at by emphasizing the word reasonable. It is not a surmise, a guess or mere conjecture.  It is not a doubt suggested by counsel which is not warranted by the evidence.  It is such a doubt as, in serious affairs that concern you, you would heed; that is, such a doubt as would cause reasonable men and women to hesitate to act upon it in matters of importance.  It is not hesitation springing from any feelings of pity or sympathy for the accused or any other persons who might be affected by your decision. It is, in other words, a real doubt, an honest doubt, a doubt that has its foundation in the evidence or lack of evidence.  It is doubt that is honestly entertained and is reasonable in light of the evidence after a fair comparison and careful examination of the entire evidence.

Proof beyond a reasonable doubt does not mean proof beyond all doubt; the law does not require absolute certainty on the part of the jury before it returns a verdict of guilty. The law requires that, after hearing all the evidence, if there is something in the evidence or lack of evidence that leaves in the minds of the jurors, as reasonable men and women, a reasonable doubt as to the guilt of the accused, then the accused must be given the benefit of that doubt and acquitted. Proof beyond a reasonable doubt is proof that precludes every reasonable hypothesis except guilt and is inconsistent with any other rational conclusion.

See, State of Connecticut, Judicial Branch, Form Criminal Jury Instructions @ http://www.jud.state.ct.us/ and cases cited therein.

**BURDEN OF PROOF**

The burden of proof is on the state to prove beyond a reasonable doubt the essential elements of a crime charged under a count before a jury can find an accused guilty of that crime. I now explain the essential elements of each crime that Plaintiff was charged with committing.

See, State of Connecticut, Judicial Branch, Form Criminal Jury Instructions @ http://www.jud.state.ct.us/ and cases cited therein.

**PROBABLE CAUSE, SPECIFIC INTENT**

When specific intent is a required element of the offense for which an arrest is made, the arresting officer must have probable cause for each and every element of the offence in order to reasonably believe that a crime has occurred.

Kennedy v. Los Angeles Police Dept., 901 F.2d 702, 705 (9th Cir.1989); Gasho Y. U.S., 39 F.3d 1420, 1428 (9th Cir.1994).

**BREACH OF THE PEACE § 53a-181**

The plaintiff was charged by the police with breach of the peace, a specific intent offense, in violation of §§ 53a-181(a) of the Penal Code, which provides as follows: "A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior

in a public place; or (2) assaults or strikes another; or (3) threatens to commit any crime against another person or his property; or (4) publicly exhibits, distributes, posts up or advertises any offensive, indecent or abusive matter concerning any person; or (5) in a public place, uses abusive or obscene language or makes an obscene gesture; or (6) creates a public and hazardous or physically offensive condition by any act which he is not licensed or privileged to do; or (7) places a nonfunctional imitation of an explosive or incendiary device in a public place."

For an accused to be found guilty of this charge, the state must first prove that the accused

acted with the intent to cause inconvenience, annoyance or alarm.

Intent relates to the condition of mind of the person who commits the act; his purpose in doing it. As defined by our statute, a person acts "intentionally" with respect to a result or to conduct when his conscious objective is to cause such result or to engage in such conduct.

What a person's purpose, intention or knowledge has been is usually a matter to be determined by inference. No person is able to testify that he looked into another's mind and saw therein a certain purpose or intention or a certain knowledge to do harm to another. The only way in which a jury can ordinarily determine what a person's purpose, intention, or knowledge was, at any given time, aside from that person's own statements or testimony, is by determining what that person's conduct was and what the circumstances were surrounding that conduct, and from that infer what his purpose, intention, or knowledge was.

The predominant intent must be to cause what a reasonable person operating under contemporary circumstances would consider a disturbance to or impediment of a lawful activity, a deep feeling of

vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm.

or

alternatively, if intent to cause inconvenience, annoyance or alarm can not be proven, then for a person to be guilty of breach of peace, in violation of Section 53a-181(a), it must be proven that he recklessly created a risk of causing inconvenience, annoyance or alarm.

A person acts "recklessly" with respect to a result or to a circumstance described by a statute defining an offense when the accused is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. The standard of conduct of a reasonable person in the same situation as the accused is the doing of something that a reasonably prudent person would do under the circumstances or omitting to do what a reasonably prudent person would not do under the circumstances.

A gross deviation is a great or substantial deviation, not just a slight or moderate deviation. There must be a great or substantial difference between, on the one hand, the accused's conduct in disregarding a substantial and unjustifiable risk, and, on the other hand, what a reasonable person would have done under the circumstances. Whether a risk is substantial and unjustifiable is a question of fact for you to determine under all the circumstances.

The words "inconvenience, annoyance or alarm" refer to what a reasonable person operating under contemporary community standards would consider to be a disturbance to or impediment of a lawful

activity, a deep feeling of vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm.

Such acts or conduct must occur in a public place. "Public place" means any area that is used or held out for use by the public whether owned or operated by public or private interests. The conduct forbidden must be substantial and more than a display of mere bad manners. It must cause inconvenience, annoyance or alarm or the risk thereof among members of the public.

The next element that must be proven beyond a reasonable doubt for a person to be guilty of breach of peace, is that the accused engaged in fighting or in violent, tumultuous or threatening behavior that actually involves physical violence or portends imminent physical violence.

The accused's speech, absent actual physical conduct, may constitute the prohibited behavior when it can be identified as "fighting words" that portend physical violence. "Fighting words" constitute speech that has a direct tendency to cause imminent acts of violence or an immediate breach of the peace. Such speech must be of such a nature that it is likely to provoke the average person to retaliation. Thus, speech that properly can be characterized as "fighting words" is prohibited when, under the totality of the circumstances, that speech amounts to violent, tumultuous or threatening behavior that portends violence.

The next element that must proven beyond a reasonable doubt for a person to be found guilty of breach of peace is that the accused assaulted or struck another. An "assault" is a demonstration of an unlawful intent to inflict immediate injury on the person of another who is then present; an intentional attempt by violence to do injury to the person of another.

The statute also prohibits the striking of another, that is, the intentional use of force or violence on the person of another and inflicted without the consent of the other. The term "violence" as used here is synonymous with "physical force." An accused may be liable for striking another where the force or violence is applied through some intervening agency that he has put in motion as, for example, intentionally throwing an object that strikes another person. The striking must be accompanied with an intent to do harm, although it is not necessary that any actual harm resulted from the unlawful act.

The two offenses prohibited under this section are worded in the disjunctive, that is, assaults, "or" strikes another. While frequently the assault and striking exist together, the acts or conduct constituting each are separate and different. Since a striking is a consummated or completed assault, it necessarily includes an assault; however, as I have stated, an assault can occur without a striking. But whether the state proves an assault or a striking or both, the state must also prove that the conduct of the accused was intended to cause inconvenience, annoyance or alarm or recklessly created a risk thereof to another person.

The next element that the state must prove beyond a reasonable doubt for a person to be found guilty of breach of peace is that the accused threatened to commit any crime against another person or his property. "Threaten" means declaring an intention or determination to injure another person or his property by the commission of the threatened crime. A threat imparts the expectation of bodily harm to one's person or harm to one's property by the crime threatened, thereby inducing fear or apprehension.

The next element that the state must prove beyond a reasonable doubt for a person to be found guilty of breach of peace is that the accused publicly exhibited, distributed, posted up or advertised any

offensive, indecent or abusive matter concerning any person. The words "offensive, indecent or abusive" are to be tested by what people of common intelligence would understand, under contemporary community standards, as being so grossly offensive, indecent or abusive to the person to whom the matter is directed as to amount to a serious annoyance.

The next element that the state must prove beyond a reasonable doubt for a person to be found guilty of breach of peace is that the accused, in a public place, used abusive or obscene language or made an obscene gesture. The alleged language used or the obscene gesture made must not only occur in a public place but also, if it is language, it must be overheard by others; or if it is a gesture, it must be seen by others.

Language is "abusive" if it is so coarse and insulting as to create a substantial risk of provoking violence. The state must prove that the accused's language had a substantial tendency to provoke violent retaliation or other wrongful conduct. The words used must be "fighting words"-those that by their very utterance inflict injury or tend to incite an immediate breach of the peace.

If the language or gesture alleged is obscene, it must, under contemporary community standards, be so grossly offensive to members of the public who actually overhear the language or who see the gesture, as to amount to a serious annoyance.

As to obscene language or an obscene gesture, such action must be in a significant way, erotic and must appeal to prurient interest in sex or portray sex in a patently offensive way.

The next element that the state must prove beyond a reasonable doubt for a person to be found guilty of breach of peach is that the accused created a public and hazardous or physically offensive

condition by any act that he was not licensed or privileged to do. The act must create a public and hazardous or physically offensive condition. "Hazardous" means "risky, dangerous, perilous." "Physically offensive" refers to matter, material or substance that is revolting, disgusting or repugnant. The test is whether under contemporary community standards the accused created a condition that was hazardous to other persons or created a condition that under contemporary community standards was so physically offensive to members of the public as to amount to a serious annoyance. The state must further prove that the accused was not licensed or privileged to create the alleged condition.

The next element that the state must prove beyond a reasonable doubt for a person to be found guilty of breach of peace is that the accused placed a nonfunctional imitation of an explosive or incendiary device in a public place.

For a person to be found guilty of breach of the peace, each elements of the crime of breach of peace must be proven beyond a reasonable doubt.   A person must be found not guilty of breach of the peace if on the other hand, if any one of the elements can not be proven beyond a reasonable doubt.

See, State of Connecticut, Judicial Branch, Form Criminal Jury Instructions @ http://www.jud.state.ct.us/ and cases cited therein.

## INTERFERING WITH AN OFFICER §§ 53a-167a

The Plaintiff was also charged with interfering with an officer, a specific intent crime, in violation of § 53a-167a of the Penal Code, which provides as follows: "A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace in the performance of such peace officer's duties."

For an accused to be found guilty of this charge, the following elements must be proven beyond a reasonable doubt: (1) that the accused obstructed, resisted, hindered or endangered a peace officer; (2) that the conduct of the accused occurred while the peace officer was "in the performance of such peace officer's duties"; and (3) that the accused intended to obstruct, resist, hinder or endanger a peace officer while the officer was in the performance of such peace officer's duties.

A "peace officer" means organized local police department

If the officer involved was not a "peace officer", then the accused is not guilty of this offense. If the officer was a "peace officer",  the elements of the crime must be considered to make a determination of whether or not the accused is guilty of the offense.

With respect to the first element, there are four words describing the ways interference may be committed. "Obstructs" means to interpose obstacles or impediments; to hinder, impede or in any manner intrude or prevent. This word and its definition does not necessarily imply the employment of direct force or the exercise of direct means. "Resists" means to oppose by direct, active forcible or quasi-forcible means. "Hinders" means to make slow or difficult the progress of. It means to hold back, to delay, impede or prevent action. "Endangers" means to expose to danger or harm.

Intent is an element of the crime of interfering with a police officer.  The statute only applies to actions that are intended to interfere with the performance of an officer's duty and to exclude any accidental or inadvertent interference.  Thus, one can only be found guilty of interfering with a police officer if his action intended to interfere with the performance of an officer's duty.

Intent relates to the condition of mind of the person who commits the act; his purpose in doing it.

As defined by our statute, a person acts "intentionally" with respect to a result or to conduct when his conscious objective is to cause such result or to engage in such conduct.

What a person's purpose, intention or knowledge has been is usually a matter to be determined by inference. No person is able to testify that he looked into another's mind and saw therein a certain purpose or intention or a certain knowledge to do harm to another. The only way in which a jury can ordinarily determine what a person's purpose, intention, or knowledge was, at any given time, aside from that person's own statements or testimony, is by determining what that person's conduct was and what the circumstances were surrounding that conduct, and from that infer what his purpose, intention, or knowledge was.

For a person to be found guilty of interfering with an officer, each elements of the crime of interfering with an officer must be proven beyond a reasonable doubt.   A person must be found not guilty of interfering with an officer, if on the other hand, if any one of the elements can not be proven beyond a reasonable doubt.

See, State of Connecticut, Judicial Branch, Form Criminal Jury Instructions @ http://www.jud.state.ct.us/ and cases cited therein.

## ISSUES TO BE DECIDED

The issues to be determined by the jury in this case are these: First, did defendant police officers knowingly, while acting under color of law, act or fail to act outside the bounds or limits of their lawful authority. Plaintiff alleges that he was falsely arrested and subjected to excessive force on August 10, 1999 by Defendant, Leonard Labonia and Defendant, Ethan Mable, both of whom are police officers of the City of Danbury.   Plaintiff alleges that he was subjected to excessive force by

Defendant police officers when, without probable cause, the police officers placed him in the police cruiser and then subsequently repeatedly struck his head, face, and body, pepper sprayed him and placed him under arrest.  You will need to decide whether Defendant police officers had probable cause to arrest Plaintiff when Plaintiff was placed in the police cruiser the first time.  You will also separately need to decide whether Defendant police officers had probable cause to arrest Plaintiff when they placed him in the police cruiser the second time.  You will need to decide wether Defendant police officers, individually and/or jointly used excessive force on Plaintiff.   Plaintiff claims that Defendant police officers had a realistic opportunity to prevent use of excessive force against him but did not do so.  Thus, you will need to decide whether Defendant police officers had a realistic opportunity to prevent use of excessive force against Plaintiff but did not do so.  Plaintiff also claims that Defendant police officers denied him adequate medical care despite the obligation of police officers to provide medical treatment to persons injured by the police by falsely informing medical personnel at Danbury Hospital that he was intoxicated, although Defendant police officers did not seek to perform and did not perform any tests to confirm such claims.  You will also need to decide whether Defendant police officers injured Plaintiff and whether Defendant police officers then denied Plaintiff adequate medical care.

In this case, Plaintiff also alleges that Defendant police officers violated the laws of the State of Connecticut. Plaintiff is suing Defendant police officers for violation of the state law tort of Assault and Battery.   You will need to decide whether any Defendant in this case committed the tort of Assault and Battery upon Plaintiff.

Plaintiff is also suing Defendant police officers for wrongfully and unlawfully confining him in the police car before assaulting him and later detaining him at the police station, all without reason,

justification or authority in violation of the state law tort of False Imprisonment.    You will need to decide whether any Defendant in this case committed the tort of False Imprisonment upon Plaintiff. Plaintiff is also suing Defendant police officers for using the criminal process against him in order to intimidate him from asserting his rights against them and in order to cover up their own wrongdoing and avoid civil and criminal liability for their own acts in violation of the state law tort of Abuse of Process.    As part of the Abuse of Process claim, Plaintiff claims that Defendant police officers arrested him for committing the crime of interfering with a police officer and breach of peace to conceal and excuse their attack on him.    Plaintiff further claims that Defendant police officers further attempted to conceal their attack on him by preparing a false police report, (which they knew, and intended, would be forwarded to and relied upon by a prosecutor), and, by falsely informing medical personnel at Danbury Hospital that he was intoxicated, although Defendant police officers did not seek to perform and did not perform any tests to confirm such claims.    You will need to decide whether any Defendant in this case committed the tort of Abuse of Process upon Plaintiff.

Plaintiff is also suing Defendant police officers for violation of the state law tort of Intentional Infliction of Emotional Distress.    You will need to decide whether any Defendant in this case committed the tort of Intentional Infliction of Emotional Distress upon Plaintiff.

If your unanimous answer to all parts of the  questions I have just read to you is "no," the jury should return a verdict in favor of defendant officers, but if your unanimous answer to ANY part of the questions I have just read to you is "yes," then the jury should return a verdict in favor of the plaintiff for such nominal or compensatory damages as you find appropriate.

If you find for the plaintiff and award nominal or compensatory damages, you must decide

whether it appears that the acts or omissions conduct of a defendant toward plaintiff were callously, or maliciously, or wantonly, or oppressively done, and, if so, what amount, if any, of punitive damages you think are warranted under the circumstances.

You may award punitive damages in addition to compensatory or nominal damages, or you may award compensatory or nominal damages without punitive damages, all in accordance with the facts you find and the court's instructions.

<u>Monroe v. Pape,</u> 365 U.S. 167, 172, 81 S.Ct. 473, 476, 5 L.Ed.2d 472 (1961).