FILED

2005 FEB 14 P 3: 46

U.S. DISTRICT COURT
HARTFORD, CT.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN ACZEL <br> Plaintiff | : <br> : CIVIL NO. 300 CV 1802 AWT <br> : |
| V. | : <br> : |
| LEONARD LABONIA <br> ETHAN MABLE <br> and CITY OF DANBURY <br> Defendants | : <br> : <br> : <br> : FEBRUARY 14, 2005 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE RE:
THE POLICE REPORT**

**I.    Nature of Case:**

This is a civil rights case brought by the plaintiff, John Aczel, under 42 U.S.C. Section 1983 and under 42 U.S.C. Section 1988 alleging that his Fourth and Fourteenth Amendment rights were violated. Plaintiff alleges that he was falsely arrested and subjected to excessive force on August 10, 1999 by Defendant, Leonard Labonia and Defendant, Ethan Mable, both of whom are police officers of the City of Danbury. Plaintiff alleges that he was subjected to excessive force by Defendant police officers when, without probable cause, the police officers placed him in the police cruiser and then subsequently repeatedly and violently struck his head, face, and body, pepper sprayed him and placed him under arrest. Plaintiff claims that Defendant police

officers had a realistic opportunity to prevent use of excessive force against him but did not do so, and that Defendant police officers denied him adequate medical care despite the obligation of police officers to provide medical treatment to persons injured by the police by falsely informing medical personnel at Danbury Hospital that he was intoxicated, although Defendant police officers did not seek to perform and did not perform any tests to confirm such claims.

Plaintiff also alleges that Defendant police officers violated the laws of the State of Connecticut. Plaintiff is suing Defendant police officers for violation of the state law tort of Assault and Battery. Plaintiff is also suing Defendant police officers for wrongfully and unlawfully confining him in an unventilated police car in hot weather (whereupon he experienced severe breathing difficulties) before assaulting him and later detaining him at the police station, all without reason, justification or authority in violation of the state law tort of False Imprisonment. Plaintiff is also suing Defendant police officers for using the criminal process against him in order to intimidate him from asserting his rights against them and in order to cover up their own wrongdoing and avoid civil and criminal liability for their own acts in violation of the state law tort of Abuse of Process. As part of the Abuse of Process claim, Plaintiff claims that Defendant police officers arrested him for committing the crime of interfering with a police officer and breach of peace to conceal and excuse their attack on him. Plaintiff further claims that Defendant police officers further attempted to conceal their attack on

him by preparing a false police report, (which they knew, and intended, would be forwarded to and relied upon by a prosecutor), and, by falsely informing medical personnel at Danbury Hospital that he was intoxicated, although Defendant police officers did not seek to perform and did not perform any tests to confirm such claims. Plaintiff is also suing Defendant police officers for violation of the state law tort of Intentional Infliction of Emotional Distress.

The Defendant police officers deny liability. With respect to most of the claims made by Plaintiff, Defendant police officers assert that all of their actions were objectively reasonable under the circumstances.

Plaintiff claims as part of his damages that he was incarcerated for four to five hours, was required to appear in Court as an accused criminal, and was required to spend money to hire an attorney to defend himself against the false charges. Additionally, Plaintiff claims that he suffered a loss of liberty, inconvenience and humiliation, great physical pain and disability, and extreme emotional distress, with associated economic loss. Plaintiff also claims to have suffered a traumatic brain injury, traumatic labyrinthitis, a fracture of the left wrist, traumatic headaches, TMJ injury, a fractured zygomatic arch requiring surgical repair, rib injuries, and a knee injury.

## II. Law and Argument

The Federal Rules of Civil Procedure provide, "[i]n every trial, the testimony of witnesses shall be taken in open court, unless a federal law, these rules, the Federal Rules of Evidence, or other rules adopted by the Supreme Court provide otherwise". Fed. R.Civ.P. 43.

Federal Rules of Evidence 801 (d) states that "A statement is not hearsay if (1) Prior Statement by Witness. The declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving the person".

Federal Rules 803 (5) entitled, "Recorded Recollection", states "A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party."

In this case, the police report, which was dictated, adopted and signed by Officer Leonard Labonia and Ethan Mable, the Defendants in the above-captioned action, is merely prior statements by the parties (the Defendants) governed by Federal Rule of Evidence 801 and/or a recorded recollection of the parties (the Defendants) governed by Federal Rule of Evidence 803 (5). Officer Labonia and Officer Mable are available to testify at trial of this matter and are subject to cross-examination at trial. The parties have not offered any evidence of a charge of recent fabrication or improper influence of motive such that the prior statement of Officer Labonia and Officer Mable, as incorporated in the body of the police report, could be admitted through Federal Rule of Evidence 801. Rather, the allegations of the complaint, in the above matter, charge Defendants with fabrication dated at the time of the incident and not with recent fabrication.

Moreover, Defendants do not claim that they have insufficient recollection, such that the prior recorded recollection embodied in the police report could be admitted under Federal Rule of Evidence 803(5), to enable Labonia and Mable to testify fully and accurately.

Defendants may argue that the police report should be admitted under Federal Rules of Evidence 803(6). Federal Rules of Evidence 803 (6) entitled "Records of Regularly Conducted Activity", states "A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from

information transmitted by, a person with knowledge, if kept in the course of regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902 (12), or a stature permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit".

The police report in this instance does not fall within Federal Rule 803 (6), because the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness. Defendants, Officer Labonia and Officer Mable are being sued by Plaintiff because of their alleged use of excessive force on Plaintiff on the date of the incident, which is the subject of the police report. The police report in this instance is merely a self-serving document by those police officers. The officers are available to testify and their testimony must be presented in open court. Fed. R. Civ. P. 43. The identical argument that Defendants make regarding the use of deposition testimony in lieu of court testimony in their Motion in Limine Re: Deposition Transcripts of Defendants, Leonard Labonia and Ethan Mable dated January 31, 2005, as of record, and incorporated herein, apply to the police report, except that

the arguments are even more compelling when one examines the admissibility of the police report. Just as the deposition transcript, the paper or document itself, of Officers Labonia and Mable have no meaning independent of the testimony contained therein, so too the police report in this case has no meaning independent of the information contained therein. When Labonia and Mable gave testimony at their depositions they were placed under oath and they were subject to cross-examination. However, when Labonia and Mable dictated and adopted the statements contained in the police report in this case, they were not placed under oath and were not subject to cross-examination. Thus, in examining the admissibility of the police report, Rule 43 requiring testimony to be given in open court must prevail.

Furthermore, the police report should not be presented as an exhibit because this will unfairly prejudice Plaintiff by placing great emphasis on the police report, with little or no probative value, because, Defendants will already be testifying at trial and subject to cross-examination and impeachment regarding all matters contained in the police report. The presentation and submission of the police report into evidence will result in a waste of time and needless presentation of cumulative evidence. The police report will merely be cumulative and repetitious evidence insofar as the Defendants will be testifying as to the very essence of matters in the police report. District Courts, "notwithstanding Fed. R.Civ.P. 32(a)(2), may reject repetitious testimony." Gauthier v. Crosby Marine Service, Inc., 752

F.2d 1085, 1089 (5th Cir. 1985). The Court, therefore, may exclude the submission of the police report because it would result in needless presentation of cumulative evidence, while still allowing its fair use for cross-examination and impeachment purposes.

Additionally, during the course of discovery in this case two different versions of the police report were produced. Defendants are attempting to produce one version of the police report without introducing the second version. If the Court is inclined to admit the police report into evidence then both versions of the police report must be admitted in order to fairly represent the document to the jury.

Both versions of the police report contain numerous oral statements by non party witnesses which is inadmissible hearsay. If this Court allows Defendant to introduce the police reports into evidence, despite Plaintiff's objections herein, then Plaintiff requests that the police report be redacted to exclude all inadmissible hearsay, to exclude all statement made by the Labonia/Mable that do not relate to their personal observations, to exclude all statements that only an expert can testify to that are contained therein, to exclude all conclusions which the fact finder must determine and to exclude speculative information. Attached hereto and marked Schedule A is a copy of the police report. Plaintiff has highlighted on Schedule A, all matters in the police report that are objectionable insofar as the information is inadmissible hearsay and/or insofar as the information is speculative

and/or the information contained therein are statements that only a properly qualified expert can testify to, etc. Thus, if the Court denies Plaintiff motion to preclude the police report in its entirety, then Plaintiff requests that the police report be redacted to exclude all information that is highlighted on Schedule A attached hereto.

### III.   CONCLUSION

Based on the foregoing, the Plaintiff respectfully requests that this Court grant the Plaintiff's Motion in Limine, and preclude the Defendants from introducing the police report into evidence. In the alternative, if the Court denies the request to preclude Defendants from introducing the police report into evidence, then Plaintiff requests that a redacted version of the police report be admitted into evidence, per Schedule A attached hereto. All information highlighted on Schedule A is the information that Plaintiff seeks to redact from the police report.

PLAINTIFF,
JOHN ACZEL

BY _____
Tiziana M. Scaccia
Goldstein and Peck, P.C.
1087 Broad Street, P.O. Box 1538
Bridgeport, CT 06601-1538
(203) 334-9421
(203) 334-6949 (fax)
ct08713

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, U.S. Mail to the following counsel of record this 14th day of February, 2005

John J. Radshaw, III, Esquire
Howd & Ludorf, LLC
65 Wethersfield Avenue
Hartford, CT 06114

_____
Tiziana M. Scaccia, Esq.
Goldstein and Peck, P.C.
1087 Broad Street, P.O. Box 1538
Bridgeport, CT 06601-1538
(203) 334-9421
(203) 334-6949
ct08713

# DANBURY POLICE DEPARTMENT
## Incident Report

| INCIDENT NO | INCIDENT DATE | TIME | INCID CODE | TYPE OF INCIDENT | | Ofc. | INVESTIGATING OFFICER | | Report Type | BADGE |
|---|---|---|---|---|---|---|---|---|---|---|
| 99-22746 | 08/10/99-Tue | 1700:00 | | Breach of Peace/Interfering with a P.O. | | | Leonard | LaBonia | | 524 |

| DATE OF REPORT | LOCATION OF INCIDENT | ST NO | | STREET NAME | | | APT NO/LOCATION |
|---|---|---|---|---|---|---|---|
| 8/10/99 | | | | 42 Highland Avenue, Danbury | | | |

STATUS CODE  C - Complainant  A-Arrestee  I-Interviewed  J-Juvenile  M-Missing  S-Suspect  V-Victim  W-Witness  O-Other

| STATUS | LAST NAME | FIRST (M.I.) | SEX | RACE | DOB | PHONE | STREET | CITY | ST. | REG # |
|---|---|---|---|---|---|---|---|---|---|---|
| C | DeRosa | Veronica | F | W | 03/10/72 | 744-6512 | 42 Highland Avenue #2 | Danbury | CT | |
| C | Olsen | Gretchen | F | W | 07/23/65 | 744-6512 | 42 Highland Avenue #2 | Danbury | CT | |
| A | Aczel | John | M | W | 09/22/45 | | 42 Highland Avenue #1 | Danbury | CT | |

| STATUS | LAST NAME | FIRST (M.I.) | STATUTE-1 | OFFENSE-1 | STATUTE-2 | OFFENSE-2 | STATUTE-3 | OFFENSE-3 |
|---|---|---|---|---|---|---|---|---|
| C | DeRosa | Veronica | | | | | | |
| C | Olsen | Gretchen | | | | | | |
| A | Aczel | John | 53a-181 | Breach of Peace | 53a-167a | Interfering with Duties of P.O. | | |

### DETAILS

On 08/10/99 I was dispatched to 42 Highland Avenue in reference to a dispute. This address is occupied by the Goulash Place Restaurant as well as two apartments. The complainants, DeRosa and Olsen, reside in the second floor apartment. The arrestee, John Aczel, is the owner of the restaurant and owner of the building. Aczel resides in the first floor apartment at 42 Highland Avenue. Upon arrival I pulled into the restaurant parking lot which is behind the building. As I pulled in I observed Aczel yelling and shouting obscenities. He appeared to be yelling at two females, DeRosa and Olsen, who were washing a car in the parking lot approximately 20 feet away from Aczel. I then exited my vehicle and approached Aczel. He was obviously upset and continued shouting obscenities at DeRosa and Olsen. I could smell a strong odor of an alcoholic beverage on Aczel's breath. From his movements and his inability to and up straight it was obvious that Aczel was intoxicated. I asked Aczel what the problem was, and he stated that he has been having problems with his tenants, DeRosa and Olsen. I then asked Aczel to come with me to speak with DeRosa and Olsen. Aczel and I then walked over to DeRosa and Olsen. DeRosa and Olsen stated that they have been having problems with Aczel ever since they moved into the second floor apartment. They further stated that Aczel continually grabs them from behind and makes sexual gestures and advances at them. Olsen then stated that she intends to vacate the apartment with DeRosa on September 15. After hearing

| INVESTIGATING OFFICER'S SIGNATURE | BADGE # | DIST | REVIEWED FIELD SUPV | SHIFT COMM | FOLLOW-UP ACTIONS BY | PAGE |
|---|---|---|---|---|---|---|
| [signature] | 524 | | | [signature] | | 1 OF 4 |

DEFENDANT'S EXHIBIT
CASE NO. 3:00cv1802
EXHIBIT NO. 1

# DANBURY POLICE DEPARTMENT
## Incident Report

| INCIDENT NO | DATE OF REPORT | INCIDENT DATE | TIME | INCID CODE | TYPE OF INCIDENT | INVESTIGATING OFFICER | | Report Type | BADGE |
|---|---|---|---|---|---|---|---|---|---|
| 99-22746 | 8/10/99 | 08/10/99-Tue | 1700:00 | | Breach of Peace/Interfering with a P.O. | Ofc. Leonard LaBonia | | | 524 |

| LOCATION OF INCIDENT | ST NO | STREET NAME | APT NO/LOCATION |
|---|---|---|---|
| | | 42 Highland Avenue, Danbury | |

Olsen's and DeRosa's comments Aczel stormed into a rage of anger. He again began yelling and shouting obscenities at Olsen and DeRosa calling them "fucking sluts" and "fucking bitches". Aczel then turned around and began to walk away from us. I requested for Aczel to return back so we could work this out, however he refused to listen and continued walking towards the entrance to the restaurant. As Aczel was walking away he was becoming louder and continued shouting obscenities. Aczel was so loud that neighbors from across the street at 50 Davis Street came across the street to the area of the dispute to see what was going on. I asked Aczel to come back and discuss this incident four times, but he kept walking towards the entrance of the restaurant. Aczel's obscene language and actions, which was a distraction for neighbors and kids playing in the area, had clearly caused a breach of peace. I grabbed onto Aczel as he approached the entrance into the restaurant and informed that he was not going into the restaurant. I told Aczel that he was going to be placed in the rear of my vehicle until I figured out what had transpired prior to my arrival. Aczel was then placed in the rear of my vehicle. At this point I was still unsure if any crimes had been committed by Aczel prior to my arrival. I was unable to hear DeRosa's or Olsen's entire complaint because Aczel walked away when he heard accusations made against him regarding sexual gestures or advances he was making towards the complainants. Once Aczel was secured in the rear of my vehicle I proceeded towards DeRosa and Olsen. As I began talking with DeRosa and Olsen I saw Aczel kicking the left rear window of my vehicle with his feet. As I proceeded towards my police vehicle Aczel then began banging his head against the glass which divides the front seat and the back seat where Aczel was seated. Aczel banged his head at least five times against the center glass. He then began banging his head against the left rear window. Aczel did this several times before I was able to gain access to my vehicle. Aczel's actions made it appear as though he was going to break the glass and injure himself. Aczel hit his head against the left rear window so hard that the glass bowed out slightly. I then opened the back door with the intent of arresting Aczel for creating the breach of peace before he was placed in the rear of my vehicle. Once the door was opened Aczel jumped out and immediately attempted to punch me in the face with closed fist. I was within one foot from Aczel and grabbed his left hand and attempted to place a handcuff on it. Aczel became controllable pushing me and attempting to get away from my hold. Aczel was able to break free of the hold I had on his left hand and continued pushing and kicking me. I then advised dispatch to send me backup. I continually told Aczel to "stop resisting", however he kept fighting. After several attempts to take Aczel into custody and his attempted assaults on me, I again radioed dispatch. I advised dispatch to send multiple backup units "Code 1". This meant that I was requesting an immediate backup

| INVESTIGATING OFFICER'S SIGNATURE | BADGE # | SHIFT COMM | DISTRIBUTION (FOR USE BY SHIFT COMM ONLY) | FOLLOW-UP ACTIONS BY | PAGE 2 OF 4 |
|---|---|---|---|---|---|
| | 524 | | | | |

REVIEWED FIELD SUPV

# Incident Report

| INCIDENT NO | INCIDENT DATE | TIME | INCID CODE | TYPE OF INCIDENT | INVESTIGATING OFFICER | | Report Type | BADGE |
|---|---|---|---|---|---|---|---|---|
| 99-22746 | 08/10/99-Tue | 1700:00 | | Breach of Peace/Interfering with a P.O. | Ofc. Leonard | LaBonia | | 524 |

| DATE OF REPORT | LOCATION OF INCIDENT | STREET NAME | APT NO/LOCATION |
|---|---|---|---|
| 8/10/99 | | 42 Highland Avenue, Danbury | |

of response. Attempts to place Aczel on the ground were unsuccessful. As Aczel turned to face me he grabbed onto me. I then struck Aczel in the face with my fist. I was then able to place Aczel on the ground so that I could attempt to take him into custody. This was also unsuccessful. Once on the ground Aczel fell to his stomach and tucked his hands in against his chest. As I tried to pull his hands out he attempted to strike me in the face with his elbows. Aczel was also kicking me with the heels of his feet as I was on his back. Aczel refused to be handcuffed. Family members and friends of Aczel then began approaching me yelling for me to let go of him. While on the ground Aczel made several attempts to push me off him and escape. I was finally able to turn Aczel on his right side. I again attempted to grab and handcuff his left hand, however he tried again to punch me in the face. The situation had quickly grown of control and Aczel's actions were making me fear for my safety. I had exhausted every possible attempt to take Aczel into custody. Being familiar with the effects of pepper spray from training and experience I sprayed a one second burst into Aczel's face. I did this to prevent Aczel from fleeing the scene and increasing the intensity of his combativeness. The pepper spray appeared to have no effect on Aczel. He continued fighting and resisting arrest. I then picked Aczel up from the ground and placed him against my police vehicle. I did this because I thought that I would have a better chance of separating Aczel's hands and placing him in handcuffs. This was also unsuccessful. Ofc. Mable arrived at this point. Ofc. Mable was the first Officer to arrive as a backup unit. Ofc. Mable and I attempted to handcuff Aczel as he was standing up against my vehicle, however Aczel continued to fight and resist arrest. Ofc. K. Murphy, Ofc. Riolo as well as several other Police Officers arrived on scene to assist. Ofc. K. Murphy, Ofc. Mable and I were then able to take Aczel into custody. He was handcuffed and placed into the rear of my police vehicle. Sgt. Merrick then arrived on scene to assist.

After being secured in the rear of my vehicle, Aczel was transported to Headquarters. Throughout the duration of his ride to headquarters Aczel continued to bang his head on the center glass which separated the front seat from the back.

Upon arrival to Headquarters I was met by the ambulance who had been called by Ofc. Murphy. Aczel complained to Murphy at the scene that he was having trouble breathing after being sprayed with pepper spray. The paramedics then transported Aczel to the hospital. Ofc. Murphy rode with the paramedics to the hospital. After being treated at the hospital Aczel was returned to Headquarters. Aczel was then processed and released on a $1,000 bond for breach of peace and interfering with the duties of a police officer. Aczel was given a court date of 08/18/99.

| INVESTIGATING OFFICER'S SIGNATURE | REVIEWED FIELD SUPV | BADGE # | SHIFT COMM | DISTRIBUTION (FOR USE BY SHIFT COMM ONLY) | FOLLOW-UP ACTIONS BY | PAGE 3 OF 4 |
|---|---|---|---|---|---|---|
| | | 524 | | | | |

# Incident Report

| INCIDENT NO | INCIDENT DATE | TIME | INCID CODE | TYPE OF INCIDENT | INVESTIGATING OFFICER | | Report Type |
|---|---|---|---|---|---|---|---|
| 99-22746 | 08/10/99 | 1700:00 | | Breach of Peace/Interfering with a P.O. | Ofc. Leonard | | |

| DATE OF REPORT | LOCATION OF INCIDENT | STREET NAME | APT NO/LOCATION | BADGE |
|---|---|---|---|---|
| 8/10/99 | ST NO | 42 Highland Avenue, Danbury | | 524 |

It should be noted that Aczel did not cause any damage to my police vehicle. Investigation indicates that Aczel and DeRosa and Olsen were involved in a verbal argument. Olsen stated that Aczel was mad at her for wanting to move from the apartment and put a lock on the laundry room. This made it impossible for Olsen or DeRosa to access the laundry room. Olsen stated that the washer and dryer in the laundry room belong to her. She also stated that she has always been permitted to use these facilities. Olsen and DeRosa stated that on this date Aczel yelled and shouted obscenities at them when they requested access to the laundry room. Both DeRosa and Olsen stated that only a verbal dispute took place with Aczel on this date.

| INVESTIGATING OFFICER'S SIGNATURE | BADGE # | DISTRIBUTION (FOR USE BY SHIFT COMM ONLY) |
|---|---|---|
| REVIEWED FIELD SUPV | SHIFT COMM | FOLLOW-UP ACTIONS BY |
| | 524 | PAGE 4 OF 4 |

DANBURY POLICE DEPARTMENT

# DANBURY POLICE DEPARTMENT
## Incident Report

| INCIDENT NO | INCIDENT DATE | TIME | INCID CODE | TYPE OF INCIDENT | | INVESTIGATING OFFICER | | Report Type | Suppl. |
|---|---|---|---|---|---|---|---|---|---|
| 99-22746 | 08/10/99-Tue | 17:00 | | Breach of Peace / Disturbance | | Ofc. Karl | Murphy | | BADGE 446 |

| DATE OF REPORT | LOCATION OF INCIDENT | STREET NAME | APT NO/LOCATION |
|---|---|---|---|
| 8/10/99 | ST NO | Highland Avenue and Davis Street Danbury, CT | |

On the above date and approximate time, I responded to an Officer Needs Assistance call at Highland Avenue and Davis Street. When I arrived, I helped P.O. LaBonia and P.O. Mable take a white male into custody. After he was subdued, I requested that an ambulance meet us at headquarters because a chemical agent was used to help subdue the male and he was complaining of breathing difficulties. I followed P.O. LaBonia into headquarters and was present when ambulance personnel interviewed the male, John Aczel. He had noticeable abrasions on his arms, legs and face. He complained of a head injury and a shoulder injury. I rode with the ambulance and accompanied Aczel to the hospital. He was there for approximately 45-60 minutes and was checked out by the emergency Room doctor on call. They did not find any injuries other than the abrasions and contusions. He was then transported back to HQ.

INVESTIGATING OFFICER'S SIGNATURE | BADGE # 446 | DISTRIBUTION (FOR USE BY SHIFT COMM ONLY) | FOLLOW-UP ACTIONS BY
REVIEWED FIELD SUPV | SHIFT COMM | | PAGE 1 OF 1

# DANBURY POLICE DEPARTMENT
## Incident Report

| INCIDENT NO | INCIDENT DATE | ST NO | TIME | INCID CODE | TYPE OF INCIDENT | | STREET NAME | APT NO/LOCATION | Report Type |
|---|---|---|---|---|---|---|---|---|---|
| 99-22746 | 08/10/99-Tue | | 17:00 | | Dispute | | 42 Highland Ave, Danbury, CT | | Suppl. |

| | INVESTIGATING OFFICER | | | BADGE |
|---|---|---|---|---|
| | Ofc. | Ethan | Mable | 515 |

| DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|
| 8/10/99 | |

On the above date and time, while on patrol on Park Ave., I heard Off. Labonia calling for back-up at the above location. I responded to that location and when I arrived, a found Off. Labonia struggling on the ground with an older white male, later identified as Mr. Anzel.

Off. LaBonia was able to get Mr. Anzel off the ground and both Off. Labonia and myself brought the man to the hood of Off. Labonia cruiser. Off. Labonia managed to get one handcuff on Mr. Anzel, but was unable to cuff the second hand. As we were trying to hold Mr. Anzel down, he kept rearing his upper body up so that he could free himself. In order to prevent Mr. Anzel from freeing himself, I pushed Mr. Anzel's upper body down several times. Mr. Anzel smelled of alcohol and continued to struggle with us. Off. [Mur]phy (#446) then arrived and the three of us were able to handcuff Mr. Anzel by successfully holding both of his arms behind his back and the three of us held him still.

Mr. Anzel was then placed into Off. Labonia's cruiser, but not without struggling with us while doing so. Off. Murphy then pulled Mr. [A]nzel into the back of the cruiser while Off. Labonia and I pushed him into the back of the cruiser.

Because Mr. Anzel had been sprayed with a chemical agent, and he complained of labored breathing, Off. Murphy called for an ambulance to meet Mr. Anzel at headquarters.

Off. Labonia and Off. Murphy transported Mr. Anzel to H.q. and I stayed on scene to take statements from the two female residents of 42 Highland Ave.

| INVESTIGATING OFFICER'S SIGNATURE | BADGE # | SHIFT COMM. | DISTRIBUTION (FOR USE BY SHIFT COMM ONLY) | FOLLOW-UP ACTIONS BY |
|---|---|---|---|---|
| O. E. Mable | 515 | | Prosecutor | Investigator |

REVIEWED FIELD SUPV

PAGE 1 OF 1