UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN ACZEL
    Plaintiff                    : CIVIL NO. 300 CV 1802 AWT

V.

LEONARD LABONIA
ETHAN MABLE

    Defendants             : MARCH 10, 2005

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION IN LIMINE RE: CITY OF DANBURY POLICE RULES, REGULATIONS, POLICIES, CODE OF CONDUCT, POLICE DIRECTIVES, AND GENERAL ORDERS**

I.    **Nature of Case:**

This is a civil rights case brought by the plaintiff, John Aczel, under 42 U.S.C. Section 1983 and under 42 U.S.C. Section 1988 alleging that his Fourth and Fourteenth Amendment rights were violated. Plaintiff alleges that he was falsely arrested and subjected to excessive force on August 10, 1999 by Defendant, Leonard Labonia and Defendant, Ethan Mable, both of whom are police officers of the City of Danbury. Plaintiff alleges that he was subjected to excessive force by Defendant police officers when, without probable cause, the police officers placed him in an unventilated police cruiser in extremely hot weather (causing him to overheat and experience breathing difficulties) and then subsequently repeatedly and violently struck his head, face, and body, pepper sprayed him and placed him under arrest. Plaintiff claims that Defendant police officers had a realistic opportunity to prevent use of

1

excessive force against him but did not do so, and that Defendant police officers denied him adequate medical care despite the obligation of police officers to provide medical treatment to persons injured by the police by falsely informing medical personnel at Danbury Hospital that he was intoxicated, although Defendant police officers did not seek to perform and did not perform any tests to confirm such claims.

Plaintiff also alleges that Defendant police officers violated the laws of the State of Connecticut. Plaintiff is suing Defendant police officers for violation of the state law tort of Assault and Battery. Plaintiff is also suing Defendant police officers for wrongfully and unlawfully confining him in the police car before assaulting him and later detaining him at the police station, all without reason, justification or authority in violation of the state law tort of False Imprisonment. Plaintiff is also suing Defendant police officers for using the criminal process against him in order to intimidate him from asserting his rights against them and in order to cover up their own wrongdoing and avoid civil and criminal liability for their own acts in violation of the state law tort of Abuse of Process. As part of the Abuse of Process claim, Plaintiff claims that Defendant police officers arrested him for committing the crime of interfering with a police officer and breach of peace to conceal and excuse their attack on him. Plaintiff further claims that Defendant police officers further attempted to conceal their attack on him by preparing a false police report, (which they knew, and intended, would be forwarded to and relied upon by a prosecutor), and, by falsely informing medical personnel at Danbury Hospital that he was intoxicated, although Defendant police officers did not seek to perform and

GOLDSTEIN AND PECK, P.C.
ATTORNEYS AT LAW
1087 BROAD STREET • P.O. Box 1538 • BRIDGEPORT, CT 06601-1538 • TEL. (203) 334-9421 • FAx 12031 334-6949 • JuR,s No. 23640

did not perform any tests to confirm such claims. Plaintiff is also suing Defendant police officers for violation of the state law tort of Intentional Infliction of Emotional Distress.

The Defendant police officers deny liability. With respect to most of the claims made by Plaintiff, Defendant police officers assert that all of their actions were objectively reasonable under the circumstances.

Plaintiff claims as part of his damages that he was incarcerated for four to five hours, was required to appear in Court as an accused criminal, and was required to spend money to hire an attorney to defend himself against the false charges. Additionally, Plaintiff claims that he suffered a loss of liberty, inconvenience and humiliation, great physical pain and disability, and extreme emotional distress, with associated economic loss. Plaintiff also claims to have suffered a traumatic brain injury, traumatic labyrin    s, a fracture of the left wrist; traumatic headaches; TMJ injury; a fractured zygomatic arch requiring surgical repair, rib injuries, and a knee injury.

II.   Law and Argument

   A. **THE CITY OF DANBURY POLICE RULES, REGULATIONS, POLICIES, CODE OF CONDUCT, POLICE DIRECTIVES AND GENERAL ORDERS ARE NOT BEING INTRODUCED BY PLAITNIFF INTO EVIDENCE FOR PURPOSES OF A MONELL V.DEPARTMENT OF SOCIAL SERVICES, 436 U.S. 658 (1978) ARGUMENT.**

Under Monell v. Department of Social Services, 436 U.S. 658 (1978), Section 1983 liability may be imposed on a municipality, if plaintiff demonstrates that any constitutional harm suffered was the result of a municipal policy or custom. Sorlucco v. New York City Police

3

GOLDSTEIN AND PECK, P.C.
ATTORNEYS AT LAW
1087 BROAD STREET • P.O. Box 1535 • BRIDGEPORT. CT 06601-1538 • TEL. 12031 334-9421 • FAx (203) 334-6949 • JURIs No. 23640

Dep't, 971 F.2d 864, 870 (2d Cir. 1992); Curry v. City of Syracuse, 316 F.3d 324 (2°' Cir. 2003). Monell held that municipalities may be sued directly under Section 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision.

The City of Danbury is not longer a party to this lawsuit. Thus, the present lawsuit no longer involves allegations which would satisfy the requirements of Monell v. Department of Social Services, 436 U.S. 658 (1978), for 42 U.S.C. Section 1983 claims against the City of Danbury as they relate to the provision of municipal policy or practice tolerating police brutality.

Thus, the City of Danbury police rules, regulations, policies, code of conduct, police directives and general orders are not being introduced by plaintiff into evidence for purposes of establishing a Monell argument, as hereinafter discussed.

    **B. THE CITY OF DANBURY POLICE RULES, REGULATIONS, POLICIES, CODE OF CONDUCT, POLICE DIRECTIVES AND GENERAL ORDERS ARE RELEVANT AND MATERIAL TOWARD THE ISSUE OF DEFENDANTS' STATE OF MIND REGARDING AS TO WHETHER DEFENDANTS' CONDUCT CONSTITUTED DELIBERATE INDIFFERENCE TO THE SERIOUS MEDICAL NEEDS OF PLAINTIFF**

Section 1983 liability may be imposed on Defendants if the jury finds that Defendants were deliberately indifferent to the serious medical needs of Plaintiff. Blisset v. Coughlin, 66 F.3d 531 (2"$^s$ Cir. 1995). Plaintiff in this case claims that Defendants denied him prompt medical care. Thus, Plaintiff must produce evidence to establish a deliberate indifference to serious medical needs of Plaintiff. "The deliberate indifference standard embodies both an

4

GOLDSTEIN AND PECK, P.C.
ATTORNEYS AT LAW
1067 BROAD STREET • P.O. Box 1538 • BRIDDEPORT, CT 06601-1538 • TEL. 12031 334.9421 • FAx 12031 334-6949 • Juas No. 23640

objective and subjective prong. First, the injury must be, in objective terms, `sufficiently serious.'    Second, the charged official must act with a sufficiently culpable state of mind (internal citations omitted)".  Lasher v. City of Schenectady,  02 CV 1395 (N.D.N.Y. 2004) quoting, Hathaway v. Couglin,  37 F.3d 63 (2d Cir. 1994), cert. denied, 513, U.S. 1154 (1995) and Wilson v. Seiter, 501 U.S. 294, 298 (1991).

"A serious medical need exists when `the failure to treat a prisoner's condition could result in further significant injury or the `unnecessary and wanton infliction of pain'. Chance v. Armstrong,  143 F.3d 698, 702 (2d Cir. 1993 (quoting Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)."  Lasher v. City of Schenectady, 02 CV 1395 (N.D.N.Y. 2004)...

"Deliberate indifference is shown .... by failure to provide prompt attention to the medical needs of a pre-trial detainee"  Estelle v. Gamble, 429 U.S. 98, 105 (1976). "A few hours' delay in receiving medical care for emergency needs such as broken bones and bleeding cuts  may constitute deliberate indifference".  Lasher v. City of Schenectady, 02 CV 1395 (N.D.N.Y. 2004), citing Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990).

In this case, the City of Danbury police rules, regulations, policies, code of conduct, police directives and general orders are relevant and admissible toward the issue of Defendants' state of mind regarding the issue of whether Defendants' Conduct constituted deliberate indifference to the serious medical needs of Plaintiff.

For example, Directive 84-02, Exhibit 38, entitled Policy for the Use of Chemical Sprays, provides that police officers:

GOLDSTEIN AND PECK, P.C.
ATTORNEYS AT LAW
1087 BROAD STREET · P.O. Box 1538 · BRIDGEPORT. CT 06601.1538 • TEL. (203) 334-9421 • Fi (203) 334-6949 · JURIS No. 23640

are to use only that amount of force which is necessary to effect a legal arrest. This includes all the various options permitted by law up to and including deadly force. One of the most effective methods of subduing a person during a violent encounter is by the use of [chemical sprays]    It must be understood that a chemical spray is a weapon-a non-lethal weapon-but a weapon none the less. As such, [a chemical spray] should only be used where a weapon is absolutely required to control violent behavior and only as an alternative to a more extreme application of force. CHEMICAL SPRAYS SHOULD NEVER, UNDER ANY CIRCUMSTANCES, BE USED INDISCRIMINATELY OR PUNITIVELY. Chemical sprays may be used at such times as the officers discretion leads him to believe that it is necessary in subduing, controlling or apprehending a combative or physically aggressive person, when other reasonable means of control have been exhausted and the use of deadly force is prohibited. In using [chemical sprays] the following procedures are to be followed:

I.  The spray should be used at a distance of no less than (2), nor more than twelve (12) feet, away from the suspect. It must be remembered that [chemical sprays] is not a riot control device and, therefore, its range is somewhat limited Use outdoors at long range should be avoided, particularly on windy days, since the chemical may tend to blow back on the user. Similarly, it should not be used at a range of less than two (2) feet except under conditions of extreme personal danger to the officer involved.
2.  The most effective use of [a chemical spray] is a well aimed, one second burst. This burst must not be directed at the eyes, but rather should be aimed at the chest and clothes
8.  As soon as practical after the use of [a chemical spray], the suspect must be allowed to wash or rinse the affected area of his/her body and clothing with ample applications of cool, plain water. Under normal use, this is the only treatment which should be needed. If a suspect is exposed to a chemical spray and is subsequently confined to a cell, he must be checked periodically. If it is determined that the initial flooding of the exposed area has not neutralized the effects of the spray and the suspect is complaining of the effects, he/she is to be taken to the emergency room for additional professional treatment...".

See also, General Order 85-03, Exhibit 51, which states that "spray devices should not be used on persons who appear sick or intoxicated, or who are not in possession of their normal protective reflexes, such as being able to blink, to hold their breath, to turn away from the applied stream, etc....": and further states that "spray devices should never be used: (2) on persons secured and properly in custody".

6

> See also, General Order 98-05, Exhibit 54, which states that police officers, following the use of chemical sprays must "Insure that exposed areas are washed with cold water as soon as possible. Eyes should be fully flushed with water."

In this case Plaintiff claims that he was pepper sprayed by Defendant, Leonard Labonia while in the presence of Defendant, Ethan Mable. When Plaintiff was pepper sprayed Defendant, Leonard Labonia had complete control of him. At the time that Plaintiff was pepper sprayed one of Plaintiffs hands was handcuffed. Also, when Plaintiff was pepper sprayed, he was lying on the ground in a fetal position with Officer Labonia sitting on top of him. Furthermore, as Plaintiff was pepper sprayed one of Plaintiff's arms was pinned underneath his body as he was lying on the ground in a fetal position and Officer Labonia had Plaintiffs other arm in an arm hold. There will be testimony at trial evidencing that when Plaintiff was pepper sprayed he was sprayed at a distance less than two feet. There will also be testimony that Plaintiff was pepper sprayed in the direction of the eyes. There will also be testimony at trial that defendants failed to allow Plaintiff to wash or rinse the affected area of his body with cool, plain water, as soon as practical after the use of the pepper spray. Moreover, Defendant, Leonard Labonia will testify that he believed that Plaintiff was intoxicated, and yet he pepper sprayed him in direct violation of General Order 85-03.

Defendants' training as a police officers and their deliberate violation of danbury police rules, regulations, policies, code of conduct, police directives and general orders, in effecting the arrest gave Defendants notice as to the gravity of their misconduct under color of their official authority, as well as notice that such misconduct would hinder their career. The Defendants'

GOLDSTEIN AND PECK, P.C.
ATTORNEYS AT LAW
1087 BROAD STREET • P.O. Son 1538 • BnmoERORi, CT 06601-1538 • TEL. (203) 334-9421 • FAx (203) 334-6949 • Junis No. 23640

deliberate violation of danbury police rules, regulations, policies, code of conduct, police directives and general orders, in effecting the arrest and in pepper spraying Plaintiff is relevant to whether the officers were deliberately indifferent to the serious medical needs of the Plaintiff and are also relevant to the determination as to whether the officers mistake was a reasonable mistake in their application of force. Defendants' deliberate violation of danbury police rules, regulations, policies, code of conduct, police directives and general orders, in effecting the arrest will merely provide an aid to help jury answer question of whether the officers were deliberately indifferent and/or whether the officers used excessive force.

### C. THE CITY OF DANBURY POLICE RULES, REGULATIONS, POLICIES, CODE OF CONDUCT, POLICE DIRECTIVES AND GENERAL ORDERS ARE RELEVENT AND MATERIAL TO THE ISSUE OF CREDIBILITY, TO THE ISSUE OF NOTICE, TO THE ISSUE OF WHETHER THE FORCE USED BY DEFENDANTS WAS OBJECTIVELY REASONABLE AND TO THE ISSUE OF WHETHER THE OFFICERS HAD AN OBJECTIVELY REASONABLE MISTAKEN UNDERSTANDING AS TO WHETHER A PARTICULAR AMOUNT OF FORCE WAS LEGAL IN THOSE CIRCUMSTANCES THEY WAS FACED WITH.

"To prevail on a claim under Section 1983, Title 42, United States Code, a plaintiff must demonstrate `the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" Carter v. Port Authority of New York and New Jersey, 03 Civ 8751 (S.D.N.Y. 2004), quoting, Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004). "A private party may incur liability for his conduct when he is a `willful participant in joint activity with the State or

8

GOLDSTEIN AND PECK, P.C.
ATTORNEYS AT LAW
1087 BROAD STREET • P.O. Box 1538 • BRIDGEPORT, CT 06601.1538 • TEL. (203) 334.9421 • FAx 12031 334-6949 • JURIS No. 23640

its agents."' Id, quoting, <u>Brentwood Academy v. Tenn. Secondary School Athletic Ass'n,</u> 531 U.S. 288, 296 (2001) (citations omitted).

"Police officers' use of force may be found excessive, in violation of the Fourth Amendment, `if it is objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.' <u>Maxwell v. City of New York,</u> 380 F.3d 106, 108 (2d Cir. 2004) (citation omitted). This determination requires analysis of circumstances specific to the arrest, including `severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. <u>Amnesty America v. Town of West Hartford,</u> 361 F.2d 113, 123 (2d Cir. 2003) (citation omitted)." <u>Carter v. Port Authority of New York and New Jersy,</u> 03 Civ 8751 (S.D.N.Y. 2004).

"[A]n officer may be held liable not only for his personal use of excessive force, but also for his failure to intervene in appropriate circumstances to protect an arrestee from the excessive use of force by his fellow officers." <u>Wilson v. Town of Mendon,</u> 294 F.3d 1, 6 (1st Cir. 2002); <u>Smith v. Mensinger,</u> 293 F.3d 641, 650-52 (3d Cir. 2002); <u>Miller v. Smith,</u> 220 F.3d 491, 495 (7th Cir. 2000); <u>Priester v. City of Rivera Beach,</u> Fla, 208 F.3d 919, 927 (11th Cir. 2000).

The jury will be asked to answer the question as to "whether the use of force could plausibly have been thought necessary" in that particular situation "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing

GOLDSTEIN AND PECK, P.C.
ATTORNEYS AT LAW
1087 BROAD STREET • PO. Box 1538 • BRIDGEPORT, CT 06601-1538 • TES. (203) 334-9421 • FA (203) 334-6949 • JuRis No. 23640

willingness that it occur.  <u>Stearns v. Dion</u> 03-226-P-S (Me. 2005), citing, <u>Whitley v. Albers,</u> 475 U.S. 312, 321 (1986).

"In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between the need and the amount of force used, the threat `reasonably perceived by the responsible officials and any efforts  made to temper the severity of a forceful response"'. <u>Steams v. Dion</u> 03-226-P-S (Me. 2005), quoting, <u>Whitley v. Albers,</u> 475 U.S. 312, 321 (1986).

In this case there are contrasting accounts as to the degree of force actually employed and its reasonableness.   The jury will need to decide these issues of fact. Defendants' training as a police officer and their deliberate violation of danbury police rules, regulations, policies, code of conduct, police directives and general orders, in effecting the arrest gave Defendants notice as to the gravity of their misconduct under color of their official authority, as well as notice that such misconduct would hinder their career. Thus, the fact that the officers violated the city of danbury police rules, regulations, policies, code of conduct, police directives and general orders, in effecting the arrest, are an indicia of whether the force used was objectively reasonable and as to whether the officers' mistake was a reasonable mistake in their application of force.

Plaintiff alleges that when he was placed in the police cruiser the first time there was no probable cause for an arrest. Plaintiff further alleges that despite the extreme hot temperature, the police cruiser's windows were up and the air conditioning was turned off, so that the cruiser was completely unventilated. Inside the police cruiser, Plaintiff became overheated and began to

10

GOLDSTEIN AND PECK, P.C.
ATTORNEYS AT LAW
1087 BROAD STREET • P.O. Box 1538 • BRIDGEPORT, CT 06601-1538 • TEL. 12031 334-9421 • FAX (203) 334-6949 • JURis No. 23640

experience extreme breathing difficulties. Defendant, Leonard Labonia, on the other hand argues that the air conditioning in the police cruiser was on and the windows were down. Danbury Police Department Directive, Exhibit 35 and Exhibit 42, provides that the "air conditioners in the patrol cars will not be used unless actually necessary." This directive is both relevant and material to the credibility of the witnesses and as to the issue of the amount of force used and as to whether that force was objectively reasonable.

    Moreover, the following exhibits provide as follows:

    General Order 83-06, Exhibit 47, states that "A person may be stopped if it is reasonable suspected that he has committed, is committing or is about to commit a crime".

    General Order 83-09, Exhibit 48, states "An officer of the Danbury Police Department may use deadly force to protect himself or others from what he reasonably believes to be an immediate threat of death or (near death) critical bodily harm ... An officer may use deadly force to effect the capture or prevent the escape of a suspect whose freedom is reasonably believed to represent an imminent threat of grave bodily harm or death to the officer or other person(s).".

    Directive 85-02, Exhibit 39, provides "Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm either to the officer or to others, it is then permissible to prevent escape by the use of deadly force. Thus if the suspect threatens the officer with a weapon or there is probable cause to believe that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape <u>and if, where feasible, some warning has been given.</u> Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend the suspect does not justify the use of deadly force to do so".

    General Order 83-09, Exhibit 48, states "An officer of the Danbury Police Department may use deadly force to protect himself or others from what he reasonably believes to be an immediate threat of death or (near death) critical bodily harm ... An officer may use deadly force to effect the capture or prevent the escape of a suspect whose freedom is reasonably believed to represent an imminent threat of grave bodily harm or death to the officer or other person(s).".

11

Danbury Police Department Code of Conduct provides sanctions to officers of up to 30 days suspension or dismissal for the intentional, unnecessary and excessive use of force in effectuating an arrest or in the performance and execution of other official duties. Section 6.01 of the Danbury Police Department Code of Conduct.

Directive 84-02, Exhibit 38, entitled Policy for the Use of Chemical Sprays, see Section B above.

Plaintiff will argue at trial that when Defendant, Leonard Labonia, without probable cause, placed Plaintiff in the unventilated police cruiser in extremely hot temperatures, he used deadly force on Plaintiff. As such, the fact that the officer violated the city of Danbury police rules, regulations, policies, code of conduct, police directors and general orders are an indicia as to whether the force used was reasonable and whether the officers mistake was a reasonable mistake in his application of force, especially knowing that he would be sanctioned for use of excessive force. Directive 84-02, Exhibit 38, entitled Policy for the Use of Chemical Sprays, see Section B above, is also relevant and admissible to the issue of whether the amount of force (used when the officer pepper sprayed Plaintiff) was objectively reasonable and whether the officers use of force was a reasonable mistake.

The Plaintiff alleges that while he was at the police station the officers taunted him with dinner but intentionally refused to provide him with diner. General Order 84-01, Exhibit 49, states that "Meals shall be served three times daily during a 24 hour period. No meals shall be withheld from an arrestee as a punishment nor extra meals be served as a reward measure". General Order 84-01, is relevant and material toward the issue of the credibility of the parties as

GOLDSTEIN AND PECK. P.C.
ATTORNEYS AT LAW
1057 BROAD STREET • P.O. Box 1538 • BRIDGEPORT. CT 06601-1538 • TEL (203) 334-9421 • FAA 203) 334-6949 • JURis No. 23640

well as the officers' state of mind for purposes of determination of "reasonable mistake", objectively reasonable force, and punitive damages, as hereinafter discussed.

Moreover, Directive 83-16, Exhibit 37, provides that "No member of employee of the Department shall make false official reports, or knowingly enter, or cause to be entered in any Department books or records, any inaccurate, false or improper "booking" or registration of police information or matter". In this case Plaintiff alleges that Defendants made a false police reports to cover up their unconstitutional attack on Plaintiff. If the jury belies Plaintiff's recitation of facts then the Directive 83-16, Exhibit 37, is relevant and/or material to whether Defendants had notice as to the gravity of their misconduct under color of their official authority, as well as notice that such misconduct would hinder their career and is further relevant on the issue of punitive damages, as hereinafter discussed.

In summary, Defendants' deliberate violation of danbury police rules, regulations, policies, code of conduct, police directives and general orders, in effecting the arrest will merely provide an aid to help jury answer questions concerning credibility, notice, reasonableness, and mistake.

**D. THE CITY OF DANBURY POLICE RULES, REGULATIONS, POLICIES, CODE OF CONDUCT, POLICE DIRECTIVES AND GENERAL ORDERS ARE RELEVANT AND MATERIAL TOWARD THE ISSUE OF DEFENDANTS' STATE OF MIND FOR THE JURY'S DETERMINATION AS TO WHETHER TO AWARD PUNITIVE DAMAGES**

GOLDSTEIN AND PECK, P.C.
ATTORNEYS AT LAW
1087 BROAD STREET • P.O. Box 1538 • BRIDGEPORT. CT 06601-1538 • TEL. (203) 334-9421 • FAx (203) 334-6949 • Jums No. 23640

"Punitive damages may be awarded for violations of federal law where a defendant acts with reckless or callous disregard for the Plaintiff's rights, and intentionally violates federal law". Id. quoting, Ragin v. Harry Macklowe Real Estate Co. 6 F.3d 898, 909 (2d cir 1993) (citation omitted). "A jury may `assess punitive damages in an action under Section 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others' , Smith v. Wade.461 U.S. 30, 56 (1983)". Disorbo v. Roy, 343 F.3d 172 (2"⁽ Cir. 2003). "'Perhaps the most important indicium of the reasonableness of a punitive damage award is the degree of reprehensibility of the defendant's conduct.' Gore, 517 U.S. at 575. Reprehensibility in this context entails more than merely asking whether the conduct was unacceptable. Lee v. Edwards, 101 F.3d 805, 809 (2d Cir. 1996). The fact that conduct is sufficiently reprehensible so as to trigger tort liability and damages `does not establish the high degree of culpability that warrants a substantial punitive damages award.' Gore, 517 U.S. at 580.    The Court in Gore identified certain aggravating factors to be considered when assessing the degree of reprehensibility: 1) whether a defendant's conduct was violent or presented a threat of violence; 2) whether a defendant acted with malice as opposed to mere negligence; and 3) whether a defendant has engaged in repeated instances of misconduct. Id. at 576." Disorbo v. Hoy, 343 F.3d 172 (2'" Cir. 2003).

Plaintiff must present evidence to support a finding that the officers intended to violate federal law or operated with reckless disregard for the Plaintiffs rights. This claim goes to the heart of the Plaintiffs claim for punitive damages.    The fact that Defendants violated the City of

14

Danbury police rules, regulations, policies, code of conduct, police directives and general orders (some of which were designed for the protection of arrestee from physical harm or inhumane treatment) is relevant and material to the issue of whether the defendants intended to harass, provoke, or physically attack Plaintiff.   The question of punitive is one for the jury to resolve. Also, see discussions in Sections B and C above.

### E.  THE CITY OF DANBURY POLICE RULES, REGULATIONS, POLICIES, CODE OF CONDUCT, POLICE DIRECTIVES AND GENERAL ORDERS ARE RELEVANT AND MATERIAL TO THE ISSUE OF WHETHER IT WAS `OBJECTIVELY REASONABLE' FOR DEFENDANTS TO BELIEVE THAT THEIR ACTS DID NOT VIOLATE CLEARLY ESTABLISHED RIGHTS

"[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. What this means in practice is that whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken, Wilson v. Layne, 526 U.S. 603, 614 (1999) (internal citations and quotation marks omitted)." " Curry v. City of Syracuse, 316 F.3d 324 (2ⁿᵈ Cir. 2003).

"[T]o establish the qualified immunity defense, a police officer must satisfy one of two tests: either that his conduct did not violate `clearly established rights' of which a reasonable

GOLDSTEIN AND PECK, P.C.
ATTORNEYS AT LAW
1087 BROAD STREET · P.O. Box 1538 · BRIDGEPORT, CT 06601-1538 · TEL. 12031 334-9421 · FAX 12031 334-6949 • Junis No. 23640

person would have known, or that it was `objectively reasonable' to believe that his acts did not violate these clearly established rights". Finnegan v. Fountain, 915 F.2d 817 ($2^{Rd}$ Cir. 1990), citing, Warren v. Dwyer, 906 F.2d 70, 74 (2d Cir. 1990); Calamia vs. City of New York, 879 F.2d 1025, 1035 (2d Cir. 1989).

Whether Defendants' use of force was constitutionally excessive is measured under the objective reasonableness standard. The fact that Defendants violated the City of Danbury police rules, regulations, policies, code of conduct, police directives and general orders is relevant and material to the issue of whether it was objectionably reasonable for Defendants to use the amount of force they used. After all, any use of constitutionally excessive force, including intentional excessive force violates `clearly established' rights and implicates a civil rights violation. Also, see discussions in Sections B and C above.

### F. EVIDENTIARY RULES ALLOWING FOR THE ADDMISSIBILITY OF THE CITY OF DANBURY POLICE RULE, REGULATIONS, POICES, CODE OF CONDUCT, POLICE DIRECTIVES AND GENERAL ORDERS

Federal Rules of Evidence 104 (a) entitled "Questions of Admissibility Generally", provides that "Preliminary questions concerning (emphasis added) the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, (emphasis added) subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges".

GOLDSTEIN AND PECK, P.C.
ATTORNEYS AT LAW
1087 BROAD STREET • P.O. Box 1538   BRIDGEPORT, CT 06601-IS38 • TEL. (203) 334-9421 • FAA (203) 334-6949 • JuRIs No. 23640

Federal Rule of Evidence 104(e) entitled Weight and Credibility also states "This rule does not limit the right of a party to introduce before the jury evidence relevant to weight or credibility".

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible."

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801. Hearsay is inadmissible except as provided by the Federal Rules of Evidence, rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress". Fed. R. Evid. 802.

Federal Rules of Evidence 807 provides for a residual exception to the hearsay rule for "A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purpose of these rules and the interests of justice will best be served by admission of the statement into evidence." Federal Rule of Evidence 807.

In this case, the Defendants do not seek to introduce the Danbury police rules, regulations, policies, code of conduct, police directives, and general orders to prove the truth of the matters contained therein but to prove the state of mind of Defendants during the attack on

17

Plaintiff. As such, the police rules, regulations, policies, code of conduct, police directives, and general orders, are not inadmissible hearsay.

Moreover, assuming arguendo that the police rules, regulations, policies, code of conduct, police directives, and general orders are hearsay, then they are admissible under the Business Rule exception, Federal Rules of Evidence 803 (6) or Federal Rules of Evidence 803 (8) or under the Residual Exception, Federal Rules of Evidence 807.

### III.  CONCLUSION

Based on the foregoing, the plaintiff respectfully requests that this Court deny the Defendants' Motion in Limine, and allow the plaintiff to introduce the city of danbury police rules, regulations, policies, code of conduct, police directives and general orders into evidence, at trial.

```
                              PLAINTIFF,
                              JOHN ACZEL

                              BY _____
                                 Tiziana M. Scaccia
                                 Goldstein and Peck, P.C.
                                 1087 Broad Street, P.O. Box 1538
                                 Bridgeport, CT 06601-1538
                                 (203) 334-9421
                                 (203) 334-6949 (fax)
                                 ct08713
```

GOLDSTEIN AND PECK, P.C.
ATTORNEYS AT LAW
1087 BROAD STREET • P.O. Box 1538 • BRIDGEPORT. CT 06601-1538 • TEL. (203) 334-9421 • FAX (203) 334-6949 • JuRIs No. 23640

## **CERTIFICATION**

     This is to certify that a copy of the foregoing has been sent, handling charges prepaid, U.S. Mail to the following counsel of record this $10^{0'}$ day of March, 2005

John J. Radshaw, III, Esquire
Howd & Ludorf, LLC
65 Wethersfield Avenue
Hartford, CT 06114

_____
Tiziana M. Scaccia

GOLDSTEIN AND PECK, P.C.
ATTORNEYS AT LAW
1087 BROAD STREET • P.O. Box 1538 • Bnmceaoan CT 066061538 • TEL. (203) 334-9421 • FAx (203) 334-6949 • JDRIS No. 23640