UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN ACZEL
   Plaintiff                              : CIVIL NO. 300 CV 1802 AWT

V.

LEONARD LABONIA
ETHAN MABLE
  and CITY OF DANBURY
   Defendants                         : MARCH 10, 2005

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION IN LIMINE RE: CUMULATIVE AND UNNECESSARY TESTIMONY OF MEDICAL DOCTORS AND DENTISTS**

**Nature of** Case:

    This is a civil rights case brought by the plaintiff, John Aczel, under 42 U.S.C. Section 1983 and under 42 U.S.C. Section 1988 alleging that his Fourth and Fourteenth Amendment rights were violated. Plaintiff alleges that he was falsely arrested and subjected to excessive force on August 10, 1999 by Defendant, Leonard Labonia and Defendant, Ethan Mable, both of whom are police officers of the City of Danbury. Plaintiff alleges that he was subjected to excessive force by Defendant police officers when, without probable cause, the police officers placed him in an unventilated police cruiser on an extremely hot day (causing him to overheat and have severe breathing problems) and then subsequently repeatedly and violently struck his head, face, and body, pepper sprayed him and placed him under arrest. Plaintiff claims that Defendant police officers had a realistic opportunity to prevent use of excessive force against him but did not do so, and that Defendant police officers denied him adequate medical care despite the obligation of police officers to provide medical

treatment to persons injured by the police by falsely informing medical personnel at Danbury Hospital that he was intoxicated, although Defendant police officers did not seek to perform and did not perform any tests to confirm such claims.

Plaintiff also alleges that Defendant police officers violated the laws of the State of Connecticut. Plaintiff is suing Defendant police officers for violation of the state law tort of Assault and Battery. Plaintiff is also suing Defendant police officers for wrongfully and unlawfully confining him in the police car before assaulting him and later detaining him at the police station, all without reason, justification or authority in violation of the state law tort of False Imprisonment. Plaintiff is also suing Defendant police officers for using the criminal process against him in order to intimidate him from asserting his rights against them and in order to cover up their own wrongdoing and avoid civil and criminal liability for their own acts in violation of the state law tort of Abuse of Process. As part of the Abuse of Process claim, Plaintiff claims that Defendant police officers arrested him for committing the crime of interfering with a police officer and breach of peace to conceal and excuse their attack on him. Plaintiff further claims that Defendant police officers further attempted to conceal their attack on him by preparing a false police report, (which they knew, and intended, would be forwarded to and relied upon by a prosecutor), and, by falsely informing medical personnel at Danbury Hospital that he was intoxicated, although Defendant police officers did not seek to perform and did not perform any tests to confirm such claims. Plaintiff is also suing Defendant police officers for violation of the state law tort of Intentional Infliction of Emotional Distress.

The Defendant police officers deny liability. With respect to most of the claims made by Plaintiff, Defendant police officers assert that all of their actions were objectively reasonable under the circumstances.

Plaintiff claims as part of his damages that he was incarcerated for four to five hours, was required to appear in Court as an accused criminal, and was required to spend money to hire an attorney to defend himself against the false charges. Additionally, Plaintiff claims that he suffered a loss of liberty, inconvenience and humiliation, great physical pain and disability, and extreme emotional distress, with associated economic loss. Plaintiff also claims to have suffered a traumatic brain injury, traumatic labyrinthitis, a fracture of the left wrist; traumatic headaches; TMJ injury; a fractured zygomatic arch requiring surgical repair, rib injuries, and a knee injury.

## II.  **Law and Argument**

The Federal Rules of Civil Procedure provide, '[i]n every trial, the testimony of witnesses shall be taken in open Court, unless a federal law, these rules, the Federal Rules of Evidence, or other rules adopted by the Supreme Court provide otherwise." Fed. R. Civ. P. 43.

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

Federal Rules of Evidence 402 provides, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority, Evidence which is not relevant is not admissible."

Plaintiff has disclosed the following seven experts in this case.

Expert Witness

Dr. Jan Mashman
Associated Neurologists
69 Sand Pit Road, Suite 300
Danbury, CT 06810

Subject Matter of Testimony

Dr. Jan Mashman is expected to testify as to the injuries and trauma suffered by the plaintiff as a result of the August 10, 1999 incident, in accordance with his records and reports previously disclosed. Dr. Mashman will testify concerning his respective course of treatment for such injuries and trauma, the extent of recovery, permanent partial disabilities and impairments of various bodily functions and body parts and body members as a result of the injuries, and the impact of said permanent partial disabilities and impairments on the plaintiffs future lifestyle, daily activities, and the casual relationship between said injuries and trauma and the subject incident. As a result of the incident described in the complaint, Dr. Mashman will testify that Plaintiff suffered from dizziness, swelling, forgetfulness, coordination problems, weakness of the frontalis

causing some obscuration of his left visual field, a fracture of his left zygoma, cervical myofascial pain and decreased vision on the left. Dr. Mashman will also testify that Plaintiff had swelling of his facial fracture regressing his zygomatic arch that had been repaired by Dr. Trusheim. This expert will testify that Plaintiff also suffered from persistent and severe positional vertigo that was exacerbated by bending, looking up, turning over in bed, etc. Dr. Mashman will testify that as a result of the incident more particularly described in the complaint, Plaintiff found that the eyelashes of his left eye drooped in front of his visual fields, obscuring his visual acuity. Dr. Mashman will testify that Plaintiff suffered from post-traumatic labyrinthitis, a left zygomatic arch fracture, and weakness of the left front talus. This doctor will also testify that he began Plaintiff on a course of physical therapy and vestibular rehab.   Dr. Mashman will testify that he conducted an electroencephalogram on Plaintiff. He will testify that a visual study and a brain stem auditory study were also conducted on Plaintiff. He will testify that after testing, Plaintiff showed an abnormal VER study on the right side consistent with an abnormality of the right visual pathway anterior to the optic chiasm. The EEG was normal and the BAER was normal. Dr. Maslunan will testify that Plaintiff will be permanently impaired in that he will continue to suffer from positional vertigo, balance difficulties, and co-ordination difficulties.

2.     <u>Expert Witness</u>

Dr. Raphael Schwartz
Danbury Internal Medicine
92 Locust Avenue
Danbury, CT 06810

Subject Matter of Testimony

Dr. Raphael Schwartz is expected to testify as to the injuries and trauma suffered by the plaintiff as a result of the August 10, 1999 incident, in accordance with his records and reports previously disclosed. He will testify concerning his respective course of treatment for such injuries and trauma, the extent of recovery, permanent partial disabilities and impairments of various bodily functions and body parts and body members as a result of the injuries, and the impact of said permanent partial disabilities and impairments on the plaintiffs future lifestyle, daily activities, and the casual relationship between said injuries and trauma and the subject incident. Dr. Schwartz will testify that as a result of the incident, more particularly described in the complaint, Plaintiff was rendered acutely incapacitated, in severe pain, involving the face, arms and legs. Plaintiff was barely able to speak due to facial swelling and had difficulty opening his mouth. This doctor will testify that Plaintiff had ecchymossis and swelling of the right eye and cheek. Dr. Schwartz will testify that Plaintiff had a tender left rib cage and had swelling of both knees, which were also tender to the touch. This expert will testify that Plaintiff, as a result of this incident, was required to wear a splint on his left arm and wrist. Dr. Schwartz will testify that Plaintiff had problems sleeping and difficulties getting out of bed because of pain in his back. Dr. Schwartz will testify that, Plaintiff suffered from

positional vertigo and dizziness. Dr. Schwartz will testify that, Plaintiff suffered from a cervical spine injury. Dr. Schwartz will testify that Plaintiff suffered from a right zygoma fracture, fracture of left 9-10-11 ribs, left kidney trauma, fracture of the left wrist, and patella fracture. Dr. Schwartz will testify that, he referred Plaintiff to an oral surgeon, Dr. H. Silver, for the fracture of the zygoma, and an orthopedic, Dr. Fish, for the left wrist. Dr. Schwartz will testify that X-rays were taken of Plaintiff's cervical spine, which showed severe degenerative disc and joint of Luschka changes present from C4 through C7 and a straightening of the normal cervical lordosis. Dr. Schwartz will also testify that Plaintiff underwent liver function studies. Dr. Schwartz will testify that a CT scan of the abdomen showed that Plaintiff had a moderate diffuse fatty infiltration with mild hepatomegaly and prominent left upper quadrant epigastric vessels raising the possibility of some degree of portal hypertension. Dr. Schwartz will testify that Plaintiff was required to undergo surgical correction of the fractured left zygoma and that Dr. Trusheim did the surgery.

3. <u>Expert Witness</u>

> Dr. Daniel N. Fish
> Brookfield Orthopedic Associates, P.C.
> 60 Old New Milford Road, Suite 3G
> Brookfield, CT 06804

<u>Subject Matter of Testimony</u>

Dr. Daniel N. Fish is expected to testify as to the juries and trauma suffered by the plaintiff as a result of the August 10, 1999 incident, in accordance with his records and reports

previously disclosed. He will testify concerning his respective course of treatment for such injuries and trauma, the extent of recovery, permanent partial disabilities and impairments of various bodily functions and body parts and body members as a result of the injuries, and the impact of said permanent partial disabilities and impairments on the plaintiff's future lifestyle, daily activities, and the casual relationship between said injuries and trauma and the subject incident. Dr. Fish will testify that he treated Plaintiff for the fracture to his left wrist (distal radius fracture). Dr. Fish will testify that, Plaintiff was splinted since the time of the injury. Dr. Fish will testify that Plaintiff's left wrist showed a moderate amount of swelling, Dr. Fish determined that Plaintiff suffered from a left wrist distal radius fracture, minimally displaced, as a result of the incident described in the complaint and placed Plaintiff in a short-arm cast and thereafter in a removable wrist brace.

Expert Witness

Dr. Lewis Trusheim, DDS
Associated Oral and Maxillofacial Surgeons
107 Newtown Road, Suite lA
Danbury, CT 06810

Subject Matter of Testimony

Dr. Lewis Trusheim is expected to testify as to the injuries and trauma suffered by the plaintiff as a result of the August 10, 1999 incident, in accordance with his records and reports previously disclosed. He will testify concerning his respective course of treatment for such injuries and trauma, the extent of recovery, permanent partial disabilities and impairments of various bodily functions and body parts and body members as a result of

the injuries, and the impact of said permanent partial disabilities and impairments on the plaintiffs future lifestyle, daily activities, and the casual relationship between said injuries and trauma and the subject incident. Dr. Trusheim will testify that Dr. Silver referred Plaintiff to him for treatment of the left zygomatic arch fracture sustained in the assault of August 10, 1999. Dr. Trusheim will testify that Plaintiff complained of limited opening of his jaw and pain in the left side of his face radiating to the ear and temple. Dr. Tusheim will testify that the CAT scan study from 8-17-99 confirmed the clinical and panoramic exam diagnoses of a depressed left zygomatic arch fracture. Dr. Tusheim will testify that on August 27, 1999 an open reduction of the zygomatic arch fracture was accomplished at the ambulatory surgery unit at Danbury Hospital. This doctor will also testify that Plaintiff was also experiencing weakness of the muscles of the eyebrow and upper lid, secondary to inflammation in the area branches of the facial nerve. This expert will testify that Plaintiff also suffered from bilateral TMJ trauma.

Expert Witness

Harold Silver, DDS
93 West Street, Suite 5
Danbury, CT 06810

Subject Matter of Testimony

Dr. Harold Silver is expected to testify as to the injuries and trauma suffered by the plaintiff as a result of the August 10, 1999 incident, in accordance with his records and

reports previously disclosed. He will testify concerning his respective course of treatment for such injuries and trauma, the extent of recovery, permanent partial disabilities and impairments of various bodily functions and body parts and body members as a result of the injuries, and the impact of said permanent partial disabilities and impairments on the plaintiff's future lifestyle, daily activities, and the casual relationship between said injuries and trauma and the subject incident. Dr. Silver will testify as to the treatment of Plaintiff with respect to the zygomatic arch fracture that Plaintiff sustained as a result of the incident described in the complaint.

6.   Expert Witness

    Physicians and Staff Danbury Hospital
    24 Hospital Street
    Danbury, CT 06810

Subject Matter of Testimony

The physicians and staff of Danbury Hospital are expected to testify as to the injuries and trauma suffered by the plaintiff as a result of the August 10, 1999 incident, in accordance with their records and reports previously disclosed. They will testify concerning their respective course of treatment for such injuries and trauma, the extent of recovery, permanent partial disabilities and impairments of various bodily functions and body parts and body members as a result of the injuries, and the impact of said permanent partial disabilities and impairments on the plaintiff's future lifestyle, daily activities, and the

casual relationship between said injuries and trauma and the subject incident. These experts will testify that Plaintiff was admitted to Danbury Hospital on 8/10/99, handcuffed, and in the custody of the Danbury Police Department. These experts will testify that Plaintiff complained of being kicked and struck by the officers. These experts will testify that there were contusions and abrasions noted to Plaintiffs right temple and facial area, right arm, and both knees.  These experts will further testify that upon arrival to the hospital, Plaintiff complained of right shoulder, kidney, face arm, head, back, abdomen and knee pain. These experts will testify that Plaintiffs eyes were swollen. These experts will testify that Plaintiff had a contusion of the right eye and cheek and swelling. These experts will testify that Plaintiff had welling in his face, right periorbital ecchymosis, and abrasions to the left chin. These experts will testify that Plaintiff had tenderness of the right shoulder. These experts will testify that Plaintiff was discharged to the custody of the police and the hospital stressed about the patient's head injury precautions. These experts will testify that Plaintiff returned to the hospital on August 11, 1999, for evaluation of the right and left TMJ for possible fracture. These experts will testify that Plaintiff was sent for a CT scan. The diagnostic tests indicated that Plaintiff was suffering from a fracture of the left wrist and distal forearm and wrist soft tissue swelling and a fracture of the left zygomatic arch. These experts will testify will also testify that exam findings showed a bruise in Plaintiffs periorbital area on the right and tenderness to palpatin of zygoma bilateral with severe pain to palpation of the right

zygomatic arch and rightposterior belly of temporalis muscle.

7.  <u>Expert Witness</u>

   Physicians and Staff
   Danbury Hospital Dental Services
   24 Hospital Street Danbury, CT 06810

<u>Subject Matter of Testimony</u>

The physicians and staff of Danbury Hospital Dental Services are expected to testify as to the injuries and trauma suffered by the plaintiff as a result of the August 10, 1999 incident, in accordance with their records and reports previously disclosed. They will testify concerning their respective course of treatment for such injuries, and trauma, the extent of recovery, permanent partial disabilities and impairments of various bodily functions and body parts and body members as a result of the injuries, and the impact of said permanent partial disabilities and impai    ents on the plaintiffs future lifestyle, daily activities, and the casual relationship between said injuries and trauma and the subject incident. These experts will testify that a Panorex view revealed findings of probable bilateral condyle fractures. They will also testify that Plaintiff was given six Percocet tablets to take home with him.

Each of the doctors disclosed by Plaintiff as expert witnesses, as listed above, treated Plaintiff for various injuries sustained in the subject incident.   Defendants argue that the testimony of Dr. Silver, DDS, Dr. Trushiem, DDS and Danbury Hospital Dental Services, Dr.

Maslmian, Dr. Scwarts and Dr. Fish, will be cumulative, unnecessary and a waste of time. Defendants' argument is nonsensical.

By way of summary, Danbury Hospital Dental Service evaluated Plaintiff for right and left TMJ and possible fractures. Danbury Hospital Dental Services performed a Panorex view which revealed probable bilateral condyle fractures. Danbury Hospital Dental Services also sent Plaintiff for a CT scan and provided Plaintiff with follow up treatment for TMJ. Danbury Hospital Dental Services also provided follow up treatment for Plaintiffs symptoms of bilateral TMJ pain and muscular tension in temporalis and masseter bilateral.

Dr. Schwartz, is Plaintiff primary care physician, who gave Plaintiff follow up treatment after Plaintiffs two visits to the hospital emergency room following the incident. Dr. Schwartz also provided follow up treatment to Plaintiff for his pain in his back, right shoulder, three fractured ribs, kidney trauma, patella fracture, and the straightening of the cervical lordosis. Dr. Schwartz referred Plaintiff to Dr. Silver for the zygoma fracture and to Dr. Fish for the wrist fracture.

Plaintiff treated with Dr. Silver, an oral surgeon, for the fracture of the zygoma. Dr. Silver referred Plaintiff to Dr. Trusheim, an oral and maxillofacial surgeon, for evaluation for upper jaw fracture.

Dr. Trusheim, DMD, surgically repaired the fracture to Plaintiff's left zygoma.

Plaintiff treated with Dr. Fish, an orthopedic doctor, for the right wrist fracture.

Dr. Trusheim referred Plaintiff to Dr. Mashman, a neurologist, who treated Plaintiff for

dizziness, vertigo and left eye drooping.

Each of the above doctors treated Plaintiff for various injuries sustained in the subject incident. The testimony of each of these witnesses is relevant and material to the issue concerning the Plaintiff's injuries and treatment received for those injuries. Each of the doctors listed above possesses a different area of expertise and the testimony of each doctor is relevant and material to their diagnosis and treatment of injuries sustained by Plaintiff as a result of the subject incident. These doctors each treated Plaintiff for a different injury that was encompassed in their field of study. The testimony of these doctors is necessary and will not be cumulative.

### III.    **CONCLUSION**

Based on the foregoing, the plaintiff respectfully requests that this Court deny the Defendants' Motion in Limine, and allow the plaintiff to introduce the testimony of each of the disclosed expert witnesses at trial.

PLA TIFF,
JOHN ACZEL

BY _/s/_

    Tiziana M. Scaccia
    Goldstein and Peck, P.C.
    1087 Broad Street, P.O. Box 1538
    Bridgeport, CT 06601-1538
    (203) 334-9421
    (203) 334-6949 (fax)
    ct08713

## **CERTIFICATION**

      This is to certify that a copy of the foregoing has been sent, handling charges prepaid, U.S. Mail to the following counsel of record this 10th day of March, 2005

John J. Radshaw, III, Esquire
Howd & Ludorf, LLC
65 Wethersfield Avenue
Hartford, CT 06114

_____
Tiziana M. Scaccia

GOLDSTEIN ANO PECK, P.C.
ATTORNEYS AT LAW
1087 BROAD STREET • P.O. Box 1536 • BRIDGEPORT, CT 06601-1538 • TEL. 12031 334-9421 • Fnx 12031 334-6949 • JURIS No. 23640