UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN ACZEL                               :     NO.: 3:00CV1802 (PCD)

v.

LEONARD LABONIA, ETHAN MABLE
AND CITY OF DANBURY                      :     DECEMBER 12, 2005

### DEFENDANTS' SUPPLEMENTAL REQUESTS TO CHARGE

I.   **INSTRUCTIONS ON 42 U.S.C. § 1983.**

#### The Statute

The law to be applied in this case is the federal civil rights law that provides a remedy for individuals (or other entities) who have been deprived of their constitutional (or statutory) rights under color of state law. Section 1983 of Title 42 of the United States Code states:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. 1983.

#### Purpose of Statute

Section 1983 creates a form of liability in favor of persons who have been deprived of rights, privileges and immunities secured to them by the United States Constitution and federal statutes. Before section 1983 was enacted in 1871, people so injured were not able to sue state officials or persons acting under color of state law for money damages in federal court. Section 1983 was enacted to give people a federal remedy enforceable in federal court because it was feared that adequate protection of federal rights might not be available in state courts.

**Authority:** *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

### *Burden of Proof*

I shall shortly instruct you on the elements of plaintiff's section 1983 claim, and on the elements of defendant's affirmative defenses. The plaintiff has the burden of proving each and every element of his section 1983 claim by a preponderance of the evidence. If you find that any one of the elements of plaintiff's section 1983 claim has not been proven by a preponderance of the evidence, you must return a verdict for the defendant. The defendant has the burden of proving each element of his affirmative defenses. I shall shortly instruct you on the elements of these defenses. If you find that any one of the elements of defendant's defenses has not been proven by a preponderance of the evidence, you must disregard the defense.

**Authority**: *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

### *Elements of a Section 1983 Claim*

To establish a claim under section 1983, the plaintiff must establish, by a preponderance of the evidence, each of the following three elements:

First, that the conduct complained of was committed by a person acting under color of state law;

Second, that this conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States; and

Third, that the defendant's acts were the proximate cause of the injuries and consequent damages sustained by the plaintiff.

I shall now examine each of the three elements in greater detail.

**Authority**: *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

### *First Element-Color of Law*

The first element of the plaintiff's claim is that the defendants acted under color of state law. The phrase "under color of state law" is a shorthand reference to the words of section 1983, which includes within its scope action taken under color of any statute, ordinance, regulation, custom or usage, of any state (or territory or the District of Columbia). The term "state" encompasses any political subdivision of a state, such as a county or city, and also any state agencies or a county or city agency.

Action under color of state law means action that is made possible only because the actor is clothed with the authority of the state. Section 1983 forbids action taken under color of state law where the actor misuses power that he possesses by virtue of state law.

An actor may misuse power that he possesses by virtue of state law even if his acts violate state law; what is important is that the defendant was clothed with the

authority of state law, and that the defendant's actions were made possible by virtue of state law.

**Authority**: *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); *United States v. Classic*, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1361 (1941); *Hague v. C.I.O.*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); *Home Telephone & Telegraph Co. v. City of Los Angeles*, 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510 (1913); *Ex parte Virginia*, 100 U.S. 339, 25 L.Ed. 676 (1880).

The act of a state official in pursuit of his personal aims that is not accomplished by virtue of his state authority is not action under color of state law merely because the individual happens to be a state officer.

**Authority**: *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Stengel v. Belcher*, 522 F.2d 438 (6th Cir. 1975); *cert. denied*, 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed. 269 (1976).

I instruct you that the parties have agreed that Officer Labonia and Officer Mable were acting under color of law.

### Second Element-Deprivation of Right

The second element of the plaintiff's claim is that he was deprived of a federal right by the defendants. The plaintiff claims that he was deprived of his right to be free from excessive force and false arrest in violation of the Fourth Amendment to the United States Constitution. I will explain the elements of the plaintiff's Fourth Amendment claim later.

**Authority**: Martin A. Schwartz and George C. Pratt, Section 1983 Litigation Jury Instructions, 2002 Supplement, Volume 4, § 3.01.1

### Third Element-Causation

The third element that the plaintiff must prove is that each of the defendants' acts was a proximate cause of the injuries allegedly sustained by the plaintiffs. Proximate cause means that there must be a sufficient causal connection between the act or omission of each defendant and any injury or damage allegedly sustained by the plaintiff. An act or omission is a proximate cause if it was a substantial factor in bringing about or actually causing injury; that is, if the injury or damage was a reasonably foreseeable consequence of each defendant's act or omission, it was proximately caused by such act or omission. In other words, if a defendant's act or omission had such an effect in producing the injury that reasonable persons would regard it as being a cause of the injury, then the act or omission is a proximate cause.

If you find that any defendant has proved, by a preponderance of the evidence, that the plaintiff complains about an injury which would have occurred even in the

absence of that defendant's conduct, you must find that the defendant did not proximately cause the plaintiff's injury.

A proximate cause need not always be the nearest cause either in time or in space. In addition, there may be more than one proximate cause of an injury or damage. Many factors or the conduct of two or more people may operate at the same time, either independently or together, to cause an injury.

A defendant is not liable if plaintiff's injury was caused by a new or independent source of an injury, or the plaintiff's own actions, which intervenes or supersedes the defendant's act or omission and the plaintiff's injury and which produces a result that was not reasonably foreseeable by the defendant.

**Authority**: *Graham v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); *Mt. Healthy City School District Board of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

### Injury Not Evidence of Intentional Act or Constitutional Violation.

The plaintiff in this case has claimed that he was injured by the intentional acts of the defendants and that his constitutional rights were violated. You are advised that the mere fact that a plaintiff may have been injured is not proof that an intentional harm or constitutional violation occurred. You may only impose liability on the defendant if the plaintiff proves an intentional harm or constitutional violation in accord with the tests and standards as I will explain them to you in the course of these jury instructions.

### Citizens Are Required To Comply With A Police Officer's Lawful Commands

Citizens have both duties and rights. Some of my instructions to you concern certain rights held by all citizens. However, citizens also have duties in a society based on laws. Citizens are required by statute to obey the lawful commands of a police officer while he or she is performing his or her official duties. A person may not disregard or ignores an officer while in the performance of his official duties may be guilty of a crime for such conduct.

**Authority:** Conn. Gen. Stat. §53a-167

### Use of Force

All claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other "seizure" of a free citizen are analyzed under the Fourth Amendment and its reasonableness standard. Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. The right to make an arrest or investigatory stop carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because the test of reasonableness under the Fourth Amendment is not capable of precise

definition or mechanical application, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he or she is actively resisting arrest or attempting to evade arrest by flight.

The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

The reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

Thus, by this standard, if you find that the defendant officer's use of force was objectively reasonable in the light of all the circumstances, you should find for the defendants.

**Authority**: *Graham v. Connor*, 490 U.S. 386 (1989); *Tennessee v. Garner*, 471 U.S. 1 (1985); *DeGraff v. District of Columbia*, 120 F.3d 298 (D.C. Cir. 1997); *Wardlaw v. Pickett*, 1 F.3d 1297 (D.C. Cir. 1993); *Washington v. District of Columbia*, 685 F. Supp. 264 (D.D.C 1988).

### *Officer Labonia's Actions Must Be Measured By The Fourth Amendment, Not What He Could Have Done Better Or Should Have Done Differently*

The Fourth Amendment does not mandate that an officer who uses force choose what in hindsight was the wisest or the best or the least intrusive alternative available. Officers making split second decisions must only act within a range of objective reasonableness. So it is not your responsibility to determine what Officer Labonia could have done better or should have done differently, but rather to decide whether his conduct was objectively reasonable under the Fourth Amendment. The reasonableness standard does not require that officers use alternative less intrusive means, nor does the officer have to explore or attempt all feasible alternatives to avoid the situation in which a more intrusive force was used. The Fourth Amendment does not ask whether the course of action chosen was the most prudent or the wisest one, but only whether the action chosen was objectively reasonable.

**Authority**: *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001) ("[T]he reasonableness standard does not require that officers use alternative less intrusive means."); *Deering v. Reich*, 183 F.3d 645, 652-53 (7th Cir. 1999) (it was not improper for the trial court to instruct the jury that the deputies did not need to use "all feasible

alternatives" to avoid the situation in which deadly force was used); *Sigman v. Town of Chapel Hill*, 161 F.3d 782, 788 (4th Cir. 1998) ("Where an officer is faced with a split-second decision in the context of a volatile atmosphere about how to restrain a suspect who is dangerous, who has been recently – and potentially still is – armed, and who is coming towards the officer despite officers' commands to halt, we conclude that the officer's decision to fire is not unreasonable."); *Tauke v. Stine*, 120 F.3d 1363, 1366 (8th Cir. 1997) (court would not ask "whether the course of action chosen was the most prudent or the wisest one," but only "whether the decision to use deadly force was objectively reasonable, and we hold that it was as a matter of law."); *Schulz v. Long*, 44 F.3d 643, 648 (8th Cir. 1995) ("[T]he Fourth Amendment prohibits unreasonable seizures, not unreasonable or ill-advised conduct in general. Consequently, we scrutinize only the seizure itself, not the events leading to the seizure, for reasonableness under the Fourth Amendment."); *Roy v. Inhabitants of Lewiston*, 42 F.3d 691,696 (1st Cir. 1994) (although "[t]he police may have done the wrong thing . . . they were not 'plainly incompetent' nor were their actions 'clearly proscribed'"); *Scott v. Henrich*, 39 F.3d 912, 915-16 (9th Cir. 1994) ("[A]s the text of the Fourth Amendment indicates, the appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available to them."); *Plakas v. Drinsky*, 19 F.3d 1143, 1148-49 (7th Cir. 1994) ("The Fourth Amendment does not require officers to use the least intrusive or even less intrusive alternatives in search and seizure cases. The only test is whether what the police officers actually did was reasonable."); *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993); *Tom v. Voida*, 963 F.2d 952, 963 (7th Cir. 1992); *McRae v. Tena*, 914 F. Supp. 363, 367 (D. Arizona 1996); *Estate of Saldana by Saldana v. Weitzel*, 912 F. Supp. 413, 416 (D. Wisc. 1996); *Yellowback v. City of Sioux Falls*, 600 N.W.2d 554, 560 (S.D. 1999).

### Effect of Violation of Regulation or General Order

In the course of this trial, there may have been evidence of various City of Danbury Police Department rules, internal operating procedures, and general orders. While a violation of these rules, internal operating procedures, and general orders may subject an officer to discipline within the department, a violation does not necessarily determine whether the officer violated the reasonableness standard of the Fourth Amendment.

**Authority:** *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001) (claims based on violations of state law and police procedure not actionable under § 1983); *Mettler v. Whitledge*, 165 F.3d 1197, 1203 (8th Cir. 1999) ("Most of the guidelines cited are for the protection of the sheriff's deputies, not of armed suspects, and in any event the breach of such guidelines is not dispositive to our determination of whether the deputies violated a clearly established constitutional right."); *Soller v. Moore*, 84 F.3d 964, 969 (7th Cir. 1996) (IACP (International Association of Chiefs of Police) Model Policy on off-duty officers engaging in traffic stops under circumstances where they are personally involved ruled inadmissible: "[W]hether it is wise public policy to allow off-duty police officers to chase late night traffic violators is beside the point; the action is not unconstitutional and, more to the point, it has nothing to do with the key issue of whether the force used after a suspect is collared is excessive under the

circumstances."); *Romero v. Board of County Commissioners*, 60 F.3d 702, 705 (10th Cir. 1995) (that officer failed to arrest and handcuff drunk driver as required under state law and procedures irrelevant: "[V]iolations of state law and police procedure generally do not give rise to a § 1983 claim."); *Marti v. City of Maplewood,* 57 F.3d 680, 684 (8th Cir. 1995) (where plaintiff alleged officers failed to follow written policies, policies themselves not probative of municipal liability); *Scott v. Henrich,* 39 F.3d 912, 915-16 (9th Cir. 1994) ("[Plaintiff] argues the police officers' conduct violated department guidelines for dealing with barricaded suspects. . . . Assuming internal police guidelines are relevant to determining whether use of force is objectively reasonable, they are relevant only when one of their purposes is to protect the individual against whom force is used."); *Plakas v. Drinsky,* 19 F.3d 1143, 1150-51 (7th Cir. 1994) ("[W]e think it is clear that the Constitution does not enact a police administrator's equipment list. We decline to use this case to impose constitutional equipment requirements on the police."); *Drewitt v. Pratt,* 999 F.2d 774 (4th Cir. 1993) ("failure of" the officer "to display his badge when announcing himself as a police officer" and demanding that the driver stop, even if it was a violation of state law, was "irrelevant to the issue of whether at the moment of the shooting" the officer had probable cause to shoot); *Fraire v. City of Arlington,* 957 F.2d 1268, 1276 (5th Cir. 1992) ("[E]ven a negligent departure from established police procedure does not necessarily signal violation of constitutional protections."); *Smith v. Freland,* 954 F.2d 343, 954 (6th Cir. 1992) (court rejected plaintiff's claim that officer should be liable for violating city policy that forbids officers to fire at moving vehicles and to apprehend misdemeanor suspect; issue was whether the officer violated the Constitution, "not whether he should be disciplined by the local police force. A city can certainly choose to hold its officers to a higher standard than that required by the Constitution without being subjected to increased liability under § 1983."); *Elliott v. Cheshire County,* 940 F.2d 7 (1st Cir. 1991) (in suicide, properly posed constitutional question is not whether defendant adhered to agency protocols, but whether it disregarded known risk particular detainee would commit suicide); *Edwards v. Baer,* 863 F.2d 606, 608 (8th Cir. 1988) (officer's arrest on invalid warrant violated special order; but "police department guidelines do not create a constitutional right"); *Edwards v. Thomas,* 31 F. Supp. 2d 1069, 1076 (N.D. Ill. 1999) (objective reasonableness, standard for excessive force claims, requires analysis of what hypothetical reasonable officer would have known and done in light of circumstances confronting actual officer in case; police regulations, general orders and officer training provide relevant (although not conclusive) benchmark for making such comparison); *Estate of Saldana by Saldana v. Weitzel,* 912 F. Supp. 413, 416 (D. Wisc. 1996) (decedent was holding knife, shouting, drunk and threatening people; officer shot from about fifteen feet; even if the plaintiff's expert was correct and closing gap to fifteen feet was poor policing, poor policing, however, not constitutional violation); *Charles v. Cotter,* 867 F. Supp. 648, 663-64 (N.D. Ill. 1994) (evidence that defendants violated police rules, regulations relevant with respect to claim they violated constitutional rights, but, granting plaintiff's motion, court limited use to impeachment and refreshing witnesses' recollection); *Jones v. Chieffo,* 833 F. Supp. 498, 507 (E.D. Pa. 1993) (under then-existing reckless indifference standard, "[officer's] choice to pursue the vehicles and to prevent them from causing any future harm without the use of his siren and without explaining his reasons for the pursuit may have violated state law, police directives, or

even constituted a common law tort, but it may not state a claim for a constitutional deprivation of due process."); *Cf. Townsend v. Benya*, 287 F. Supp. 2d 868, 876 (N.D. Ill. 2003) (because knowledge and state of mind are required elements of plaintiff's § 1983 claims, knowing violations of department regulations by defendants are relevant).

### Fourth Amendment Claim Specific Claim of Unreasonable Use of Force

Plaintiff claims that Officer Labonia violated his Fourth Amendment rights by using excessive force because he struck him with his knee in the ribs and face, and was thereafter joined by other officers and punched and kicked the plaintiff while on the ground.

In a case such as this, where the parties' factual contentions are disputed, you must determine what actually occurred. Officer Labonia denies that he kneed Mr. Aczel in the ribs and face, and admits only the one punch after Mr. Aczel came out of the police cruiser and the use of pepper spray while on the ground. The mere fact that the evidence in this case may show that Officer Labonia struck Aczel with his fist and used pepper spray would not be sufficient by itself to demonstrate that the defendant violated the plaintiff's constitutional rights.

If you find that Officer Labonia could have reasonably believed, based on the circumstances confronting him that Mr. Aczel was actively resisting being handcuffed and that Mr. Aczel's turning towards him posed a threat to his safety, then he would be justified in using the one hand strike or punch he imparted to Mr. Aczel. If, however, you find that no reasonable officer could conclude Mr. Aczel posed a threat to Officer Labonia's safety, his use of force would not be justified. Furthermore, if you find that Officer Labonia could reasonably have believed that Mr. Aczel was resistant to handcuffing while on the ground or represented a threat to his safety, then Officer Labonia's use of pepper spray would be justified. On the other hand, if no reasonable police officer could conclude that Mr. Aczel was resistant to handcuffing or was a threat to safety while on the ground then the use of pepper spray would be unreasonable.

**Authority:** *Graham v. Connor*, 490 U.S. 386 (1989); *Tennessee v. Garner*, 471 U.S. 1 (1985); *DeGraff v. District of Columbia*, 120 F.3d 298 (D.C. Cir. 1997); *Wardlaw v. Pickett*, 1 F.3d 1297 (D.C. Cir. 1993); *Washington v. District of Columbia*, 685 F. Supp. 264 (D.D.C 1988).

## III. **PENDENT STATE LAW CLAIMS.**

### *Assault And Battery*

The plaintiff also sets forth a state law claim against the defendant officer based on the tort of assault and battery. The elements of this state law claim of assault and battery generally track the elements of the federal Section 1983 unreasonable force claim.

The defendant has plead as affirmative defenses, that his use of force was justified as self-defense pursuant to Conn. Gen. Stat. §53a-19 and 53a-22. The law recognizes the right of an individual, including a police officer, to defend himself or herself and those the officer has a duty to protect, and he or she need not wait to do so at their peril or the perils of others. In other words, he or she need not delay his or her defense until unmistakably and in fact the supposed aggressor has harmed the officer or others. The test is if an officer had reasonable fear for his or her own safety or the safety of third persons by reason of the conduct of another, he or she may take reasonable steps to defend himself or herself or those third persons. The reasonableness or unreasonableness of any action by police officers must be determined as of the time it occurred, and by an evaluation of all the circumstances that confronted the officer at that time. An officer is called upon to, indeed, by statute he or she must, make judgments and decisions in many situations where there is no opportunity to pause and reflect, nor is there time to plan or evaluate different courses of conduct. In determining what is reasonable and unreasonable, you must take into consideration all of the factors and circumstances that presented themselves at the time the officer was called upon to act.

In determining whether the officer in this case used excessive force in defending himself or herself, you must consider all the circumstances under which he or she acted. The claim of defense of self or others is not defeated if greater force than would have seemed necessary to a calm mind was used by the officer in the heat of passion generated by an assault or threatened assault upon himself, herself or others. A belief which may be unreasonable to a calm mind may be actually and reasonably entertained in the heat of passion.

Thus, for plaintiff to prevail, you must find that plaintiff has shown by a preponderance of the evidence that the officer used clearly unreasonable force in the circumstances of this case. If plaintiff has not convinced you that the officer used unreasonable force in defending himself, then you must return a verdict in favor of Officer Labonia.

**Authority**: *State v. Smith*, 73 Conn.App. 173, 807 A.2d 500 (2002), Conn. Gen. Stat. §53a-19, §53a-22; Martin A. Schwartz and George C. Pratt, Section 1983 Litigation Jury Instructions 2002 Supplement, § 12.01.1 Supplemental State Law Claims, p. 12-5.

If the officer had reasonable grounds to believe that he was in danger of injury, the officer was not required to retreat or to consider whether he could safely retreat.

The officer was entitled to stand his ground and use such force as was reasonably necessary under the circumstances to protect himself from harm.

**Authority**: *State v. Smith*, 73 Conn.App. 173, 807 A.2d 500 (2002), Conn. Gen. Stat. §53a-19, §53a-22; Martin A. Schwartz and George C. Pratt, Section 1983 Litigation Jury Instructions 2002 Supplement, § 12.01.1 Supplemental State Law Claims, p. 12-5.

In this assault and battery cause of action, you must determine whether the force used by the defendants was reasonably believed to be necessary.

In making that decision, you must take into consideration all of the circumstances confronting Officer Labonia at the time and place of the incident, including what he saw and what he heard and all the circumstances surrounding the dispute. Officer Labonia is not required, at his own peril, to measure the precise amount of force necessary.

On the other hand, if you find that the plaintiff has established by a preponderance of the evidence that the defendant used more force than he reasonably could have believed was necessary then he committed an assault and battery.

**Authority**: *State v. Smith*, 73 Conn.App. 173, 807 A.2d 500 (2002), Conn. Gen. Stat. §53a-19, §53a-22; Martin A. Schwartz and George C. Pratt, Section 1983 Litigation Jury Instructions 2002 Supplement, § 12.01.1 Supplemental State Law Claims, p. 12-5.

The plaintiff has claimed that the defendant police officers lacked probable cause to arrest him and that the arrest and subsequent prosecution was wrongful. A citizen may not use force to resist arrest. As this case has presented, whether an arrest is legal or illegal can be a very difficult factual question; any rule to the contrary invites violence; and that it is better social policy to require the arrestee to submit to handcuffing, and challenge the arrest in court, rather than to permit him to use force at the place of arrest subject to a later judicial determination of the legality of the arrest.

**Authority**: Conn. Gen. Stat. §53a-23.

## IV. DAMAGES.

### *Consider Damages Only If Necessary*

If the plaintiff has proven by a preponderance of the credible evidence that defendant is liable on any of the plaintiff's claims, then you must determine the damages to which the plaintiff is entitled. However, you should not infer that the plaintiff is entitled to recover damages merely because I am instructing you on the elements of damages. It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance should you decide that the plaintiff is entitled to recovery.

**Authority:** *Eulo v. Deval Aerodynamics, Inc.*, 47 F.R.D. 35 (E.D. Pa. 1969) *modified on other grounds*, 430 F.2d 325 (3d Cir. 1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1189, 28 L.Ed.2d 322 (1971); *Krieger v. Bausch*, 377 F.2d 398 (10th Cir. 1967).

### *Compensatory Damages*

The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from the defendants' violation of the plaintiff's rights. If you find that the defendant is liable on the claims, as I have explained them, then you must award the plaintiff sufficient damages to compensate him for any injury proximately caused by the defendant's conduct.

These are known as "compensatory damages." Compensatory damages seek to make the plaintiff whole - that is, to compensate her for the damage that she has suffered. Furthermore, compensatory damages are not limited merely to expenses that plaintiff may have borne. A prevailing plaintiff is entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, shock and discomfort that he has suffered because of a defendant's conduct.

I remind you that you may award compensatory damages only for injuries that a plaintiff proved were proximately caused by a defendant's allegedly wrongful conduct. The damages that you award must be fair and reasonable, neither inadequate nor excessive. You should not award compensatory damages for speculative injuries, but only for those injuries that a plaintiff has actually suffered or which he is reasonably likely to suffer in the near future. You may not award compensatory damages against the defendants for conduct you find to have been merely negligent.

In awarding compensatory damages, if you decide to award them, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a plaintiff to prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

Your award may not include any compensation for attorney's fees or legal costs related to this civil proceeding.

The plaintiff is not entitled to damages based solely on the subjective importance of the constitutional right allegedly violated. In other words, violation of a constitutional

right, in and of itself, does not entitle plaintiff to an award of damages. Your award, if any, should be based upon proof of actual injuries, not a demonstrated infringement of an abstract constitutional right.

In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

**Authority:** *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 51 S.Ct. 248,, 75 L.Ed. 544 (1931); *Kinty v. United Mine Workers of America*, 544 F.2d 706 (4th Cir. 1976), *cert. denied*, 429 U.S. 1093 (1977); *Northwestern National Casualty Co. v. McNulty*, 307 F.2d 432 (5th Cir. 1962); *U.C. Castings Co. v. Knight*, 754 F.2d 1363 (7th Cir. 1985); *Luria Brothers & Co., Inc. v. Pielet Brothers Scrap Iron Metal, Inc.*, 600 F.2d 103 (7th Cir. 1979); Connecticut Law of Torts, 3d Ed. § 174; *Markey v. Santangelo*, 195 Conn. 76, 485 A.2d 1305 (1985); *Abraham v. Gendlin*, 84 U.S. App. D.C. 307, 172 F.2d 881 (D.C. Cir. 1949); *Brandon v. Capitol Transit Co.*, 71 A.2d 621 (D.C. App. 1950); *Memphis Community School District v. Stachura*, 477 U.S. 299 (1986); *Carey v. Piphus*, 435 U.S. 247 (1978); Wayne C. Beyer, Police Misconduct: Principles Governing Money Damages and Other Relief Under 42 U.S.C. § 1983, 32 TORT & INSURANCE LAW JOURNAL, 154, 157-59 (ABA 1996).

### Punitive Damages

Punitive damages may be awarded against individual defendants to punish the offender and to deter others from committing similar wrongs. You may not award punitive damages unless you find that the defendant's conduct was motivated by evil motive or intent, or it involved reckless indifference or callous indifference to the federally protected rights of the plaintiff.

**Authority:** *Smith v. Wade*, 461 U.S. 30 (1983); *Morgan v. Woesner*, 997 F.2d 144; 1255 (9th Cir. 1993); *Angarita v. St. Louis County*, 981 F.2d 1537, 1546, 1548 (8th Cir. 1992); *Davis v. Mason County*, 927 F.2d 1473, 1485 (9th Cir. 1991).

## V.    SPECIAL VERDICT WITH INTERROGATORIES

When you retire to the jury room to conduct your deliberations, I will ask you to record your findings on a special verdict form which the clerk will provide for you. The special verdict form contains a number of interrogatories to which you are asked to respond either "YES" or "NO." You should carefully follow the instructions contained on the special verdict form, and answer each and every one of the interrogatories on the special verdict form except where the instructions indicate otherwise. Your response to each interrogatory must be unanimous, and must reflect the conscientious judgment of each juror.

Should you need to reach the damages issue, the special verdict form also contains appropriate spaces in which you are asked to record the amount of damages to be awarded. As with your answers to each of the questions contained on the form,

your award of damages, if any, must be unanimous and must reflect the conscientious judgment of each juror.

**Authority:** Adapted from Modern Federal Jury Instructions § 78.01, Instruction No. 78-8 (1993).

## VI. ADDITIONAL REQUESTS.

The defendants respectfully request leave to supplement their request for jury instructions after the evidence and prior to the charging conference.

This request is made in an abundance of caution and on the theory that the defendants cannot reasonably anticipate how the evidence will be presented and what instructions, in addition to the foregoing and accompanying legal issues, will be necessary to enable the jury to reach their verdict.

RESPECTFULLY SUBMITTED,

THE DEFENDANTS,
LEONARD LABONIA and ETHAN MABLE

/s/John J. Radshaw, III
John J. Radshaw, III, ct19882
HOWD & LUDORF, LLC
65 Wethersfield Avenue
Hartford, CT 06114-1190
(860) 249-1361
(860) 249-7665 (fax)

## CERTIFICATION

This is to certify that a copy of the foregoing sent this 12th day of December 2005 via facsimile and US Mail and hand-delivered to counsel.

Tiziana M. Scaccia, Esquire
GOLDSTEIN & PECK, P.C.
1087 Broad Street
P.O. Box 1538
Bridgeport, CT 06601-1538

/s/ John J. Radshaw, III
John J. Radshaw, III, ct19882
HOWD & LUDORF, LLC
65 Wethersfield Avenue
Hartford, CT 06114-1190