## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN ACZEL | : | NO.: 3:00 CV 1802 (PCD) |
| | : | |
| v. | : | |
| | : | |
| LEONARD LABONIA, ET AL | : | DECEMBER 27, 2005 |

### DEFENDANT LABONIA'S MEMORANDUM OF LAW IN SUPPORT OF
### RENEWED MOTION FOR JUDGMENT

## I.    BACKGROUND.

This is a civil rights case brought by the plaintiff, John Aczel, under 42 U.S.C. §

1983 alleging that he was subject to false arrest and excessive force on August 10,

1999, in the City of Danbury. The Plaintiff also joined pendent state law causes of action

for Assault and Battery, False Imprisonment, Abuse of Process, and Intentional Infliction

of Emotional Distress. The Defendant officers, Leonard Labonia and Ethan Mable,

denied liability, and plead affirmative defenses under federal and state law, asserting

that all of their actions were reasonable and justified under the circumstances. The case

was tried before a jury with evidence heard on December 7, 8, and 12, 2005. Closing

arguments and the jury charge took place on Tuesday, December 13.

The plaintiff's theory of the case cast Mr. Aczel as a compliant and obedient

citizen who was needlessly assaulted by 2 or more police officers. Plaintiff's theory

included a conspiracy between the offending officers to falsely claim Mr. Aczel was

intoxicated; and to influence the EMTs who transported Mr. Aczel to Danbury Hospital

and the ER physician to ensure the medical records reflected that information. Plaintiff's

theory denied plaintiff used profanity, denied noncompliance with Officer Labonia's commands that he stop resisting being handcuffed, denied any punch by Officer Labonia and instead complained of being choked, kneed to the ribs, kneed to the head and kicked by at least 4 legs for at least 10 minutes by police officers. The plaintiff's testimony was the only testimony at trial that supported these claims.

The defendants' theory of the case and the version believed by the jury is much different. Officer Labonia was faced with a possibly intoxicated, upset landlord who, already angry with the tenants who had been evicted but were holding over, was more angry with the arrival of the police. Mr. Aczel's anger was manifest in his failure to obey Officer Labonia's commands to stop walking away from him, his outburst while in the back seat of the cruiser and his resistance when Officer Labonia decided to arrest him. The resulting incremental uses of force, from the forcible turn of plaintiff while attempting to place him in handcuffs, to the hand strike when plaintiff spun around and faced Officer Labonia, to the move to the ground, to the pepper spray and ultimate handcuffing by three officers were dictated by Mr. Aczel's noncompliance with Officer Labonia's commands to cooperate and "stop resisting". The evidence was undisputed that Officer Labonia was on scene, alone, until Officers Mable and Murphy arrived. Mr. Aczel was never kicked by a group of officers for 10 minutes or more. From beginning to end, Officer Labonia was on scene for about 10 to 12 minutes and from the point Officers Mable and Murphy arrived, Officer Labonia and Mr. Aczel were on their way to Danbury Police Headquarters within 1 or 2 minutes.

The defendants moved for judgment as a matter of law pursuant of Fed.R.Civ.P. 50 at the close of the plaintiff's case in chief. In that motion, the defendants argued, *inter alia*, that based on the evidence, they were entitled to qualified immunity on the federal claims. The court reserved judgment on the motion. The defendants renewed their motion for judgment at the close of their case and prior to the charge and deliberation of the jury. The court again reserved judgment on the motion.

For the purposes of the only remaining issue before the court in the context of this motion, the jury was instructed on the law of excessive force, qualified immunity, state law assault, justification, and the consideration of liability before damages. *See* Charge to the Jury, pp. 16-26, 30.

In particular, the court instructed the jury that "negligent conduct is not a basis for a constitutional violation." Charge to the Jury, pp. 16-7. Further, the court instructed the jury that on the question of excessive force, the jury must consider whether one or more of the defendants committed the acts alleged and whether a defendant was in a position to intervene and prevent excessive force, but failed to intervene. *Id.*, p. 18. The court instructed the jury that officers may use force to effectuate an arrest and such a use of force is measured by the reasonableness of that officer's conduct. *Id.* Moreover, the court instructed the jury that the reasonableness of the use of force must be judged objectively, not with the knowledge of hindsight. *Id.* The court also instructed the jury that a citizen may not resist arrest, even if he or she thinks the arrest is unlawful. *Id.*, p. 19. The court specifically instructed the jury not to consider any subjective belief held by Officer Labonia. *Id.*

3

On the issue of qualified immunity, the court charged the jury that this defense operated to excuse the defendants from any liability. Charge to the Jury, p. 22. The court instructed the jury that the defendant officers are entitled to a qualified immunity defense if they found it was objectively reasonable for the officers to believe their acts did not violate the plaintiff's rights. *Id.*, p. 22. To be entitled to the absolute defense of qualified immunity, the court specially instructed the jury that they needed to find that the officers' conduct was within the scope of their duties and "***their conduct was not violative of constitutional rights clearly established at the time of the conduct.***" *Id.*, p. 23. (emphasis added). The court went on to instruct the jury that an officer would be entitled to the absolute defense of qualified immunity if "***he had a reasonable objective belief that the force used was reasonable necessary.***" *Id.*

On the state law claim of assault and battery, the court instructed the jury that an assault is an unlawful touching that is negligent, reckless or intentional. *See* Charge to Jury, p. 24. The court instructed the jury that a police officer is privileged in his or her use of force and such use of force is permitted is an officer "reasonably believes such to be necessary to: (1) Effect an arrest or prevent the escape from custody of a person whom he reasonable believes to have committed an offense, unless he knows that the arrest or custody is unauthorized; or (2) defend himself or a third person from the use of physical force was effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape." *Id.*, pp. 24-5. The court instructed the jury that the defendants needed to prove they were not the aggressors in order to take advantage of this affirmative defense. *Id.*, pp. 25-6. The court also instructed the jury that it was the

defendants' burden to establish his entitlement to justification, including the absence of aggression. *Id.*

Importantly, the court also charged the jury to consider the question of liability before the question of damages. *See* Charge to the Jury, p. 30. The court specifically instructed that "[the jury] should not consider the question of damages unless and until you decided the issue of liability in favor of the plaintiff." *Id.* Later, the court recharged the jury on this question and repeated that if they did not find liability, they could not consider the question of damages.

In the afternoon of Tuesday, December 13, the jury began their deliberations. The jury announced that it had reached a verdict in the early evening of Wednesday, December 14, returning the verdict form, signed by the foreperson to the court. In that verdict form, (**Exhibit A**), the jury found that Officer Mable was not liable on any claim – state or federal - presented by the plaintiff. All of the questions on the verdict form that pertained to Officer Mable were answered in the negative. *See* **Exhibit A**, pp. 1-2, questions A1-6. Upon reading said verdict, the court accepted and recorded the jury's verdict as to Officer Mable.

Also in that verdict form, the jury found that Officer Labonia was not liable on the plaintiff's federal false arrest claim, answering question A1 in the negative. *See* **Exhibit A**, p. 1. Similarly, the jury concluded that Officer Labonia was not liable to the plaintiff on any state law claim, answering the questions A3 – A6 in the negative. *See* **Exhibit A**, p. 2. Upon reading said portion of the verdict, the court accepted and recorded the jury's verdict as to Officer Labonia based on the jury's answers to questions A1, A3-A6.

The jury also concluded that Officer Labonia had used excessive force in the arrest of Mr. Aczel and indicated by answering question A2 in the affirmative. However, the jury found that Officer Labonia had proven he was protected by the affirmative defense of qualified immunity by answering question A2a in the affirmative. The Court polled the jury as a group and each member nodded in assent that they agreed they had found that Officer Labonia had proven his entitlement to the affirmative defense of qualified immunity.

Despite instructions that it could not award damages absent a finding of liability, the jury awarded $12,078.61 dollars in damages. The Court instructed the jury to eliminate the finding of damages, as such an award is not allowed in a case where the defendant police officer is protected by qualified immunity. The jury refused to comply and the court discharged the jury with the representation it would consider the issue on the defendants renewed motion for judgment pursuant to Fed.R.Civ.P. 50.

Based on the verdict that was recorded and accepted, the jury most likely found the following facts: Officer Labonia was dispatched to 42 Highland Avenue on August 10, 1999 at about 5:00 pm. Officer Labonia arrived and met Mr. Aczel who walked with him to two females. Before Officer Labonia could commence his investigation, Mr. Aczel began to walk away towards his restaurant and utilized profanity. Mr. Aczel refused to respond to Officer Labonia's commands to stop and return. Fearing that Aczel's return to the building could result in him hiding, obtaining a weapon or barricading himself, Officer Labonia determined that Aczel was involved in the situation and that he should briefly detain him in the rear of his police cruiser so that he could safely ascertain the

details of the situation. Aczel complied, sitting without handcuffs in the rear of the police cruiser. Officer Labonia then walked back to the two females to continue his investigation.

Before Officer Labonia could materially advance his investigation, Officer Labonia, one of the females, Veronica DeRosa, and a man across the street, saw Mr. Aczel bang his head, hand and feet on interior of the windows of the police cruiser. The banging was so intense that the cruiser rocked on it springs. Seeing the commotion by Aczel, Officer Labonia returned to the patrol cruiser and determined that Aczel's conduct along with Aczel's prior conduct amounted to violations of the law, breach of the peace and interfering with an officer. Officer Labonia returned to the cruiser with the intention of putting Aczel under arrest and in handcuffs.

When Officer Labonia opened the door to remove Aczel for handcuffing, Aczel threw a punch that missed Officer Labonia.  Following his defensive tactics training, Officer Labonia took control of Aczel, spinning him around to face away from the officer, and he handcuffed Aczel's left hand. While refusing to allow his right hand to be cuffed, Aczel turned towards Officer Labonia who interpreted that motion as a threat to his safety. Responding in a manner consistent with his defensive tactics training, Officer Labonia applied a single hand strike to Aczel, punching him in the face. The hand strike dazed Aczel who turned back around but still refused to allow his right hand to be handcuffed.

Not able to secure the right hand, Officer Labonia, following his training, took Aczel to the ground and attempted to use this leverage to handcuff Aczel. At this point,

Labonia called for backup. Still, Aczel refused and held his right hand underneath his body. Despite several attempts and repeated orders to "stop resisting", Officer Labonia was unable to handcuff Aczel. Consistent with his training, Officer Labonia applied a one-second burst of pepper spray on the face and chest of Aczel in an effort to gain compliance.  Aczel continued to struggle with Officer Labonia. Shortly thereafter, Officer Mable arrived and by the time he exited his cruiser, Officer Labonia had brought Aczel to a standing position. Each taking one arm, Officer Labonia and Officer Mable escorted Aczel back to Labonia's police cruiser. At that time, Officer Karl Murphy arrived. It took all three officers to secure handcuffs on Aczel.

At no time were multiple officers kicking and beating Aczel. At no time was Officer Mable present while another officer was doing anything that would require his intervention.  The only conclusion that can be drawn from the jury verdict is that the jury believed Officer Labonia's version – Aczel resisted arrest and the force applied was necessary to control him; that some of the force applied was excessive, but a reasonable officer in facing the facts and circumstances known to Officer Labonia would have believed the hand strike and the use of pepper spray was objectively reasonable. The exoneration of Officer Mable by the jury demonstrates that they disbelieved the plaintiff's version that had at least four legs kicking him for 10 minutes or more. The court had instructed the jury on an officer's duty to intervene and by exonerating Officer Mable, they, therefore, must have disbelieved the plaintiff's version.

Based on the jury responses to the questions posed regarding qualified immunity and assault, with the guidance of the court's instructions to the jury, the jury found that

Officer Labonia acted reasonably, he reasonably believed the force he used was not

violative of the Fourth Amendment, and he reasonably believed the forced used was

necessary to effectuate the arrest of Mr. Aczel, particularly in light of Aczel's persistent

resistance. *See* **Exhibit A**, Verdict Form; Charge to the Jury, pp. 16-26. Accordingly,

the defendant, Officer Leonard Labonia, hereby moves for judgment as a matter of law

on his affirmative defense of qualified immunity.

II.     **LAW AND ARGUMENT.**

    A.     **STANDARD OF REVIEW.**

    Fed.R.Civ.P 50 provides in pertinent part:

> (a) Judgment as a Matter of Law.
>
> (1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.
>
> (2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

Fed.R.Civ.P. 50.

    In ruling on a motion for judgment as a matter of law, a district court must

consider the evidence in the light most favorable to the non-movant and draw all

reasonable inferences the jury could have drawn. Fed.R.Civ.P. 50; *Harris v. Niagara*

*Mohawk Power Corp.*, 252 F.3d 592, 597 (C.A.2 2001); *accord, Cweklinsky v. Mobil*

*Chemical Co.*, 364 F.3d 68, 75 (C.A.2 (Conn.) 2004).  On the other hand, judgment as a

matter of law must be granted if there is no legally sufficient evidentiary basis with

respect to a claim or defense under the controlling law. *Harolds Stores, Inc. v. Dillard Dept. Stores, Inc.*, 82 F.3d 1533, 1546 (C.A.10 1996). "A legally sufficient basis requires more than 'a scintilla of evidence' favoring the nonmoving party." *Maberry v. Said*, 927 F.Supp.1456, 1459 (D.Kan. 1996), *quoting Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (C.A.10 1988).

"A post-trial motion for judgment under Rule 50 is a renewal of an earlier motion made at the close of the evidence, and can be granted only on grounds advanced in the pre-verdict motion." *Pappas v. New Haven Police Dept.*, 278 F.Supp.2d 296, 301 (D.Conn. 2003), *quoting* Fed.R.Civ.P. 50, Advisory Committee's Note (re 1991 Amendment, Subdivision (b)) (*citing Kutner Buick, Inc. v. American Motors Corp.,* 868 F.2d 614 (C.A.3 1989)). "It cannot assert new grounds; the rules limit the grounds for post-verdict judgment as a matter of law to those 'specifically raised' in the pre-verdict motion." *Pappas v. New Haven Police Dept.*, 278 F.Supp.2d 296, 301 (D.Conn. 2003), *quoting Lambert v. Genesee Hosp.*, 10 F.3d 46, 53-54 (C.A.2 1993) (*citations and internal quotations omitted*).

A verdict can be allowed to stand only if it is reasonably based on the evidence in the record. *Michelman v. Clark-Schwebel Fiber Glass Corp.*, 534 F.2d 1036, 1042 (C.A.2), *cert. denied,* 429 U.S. 885, 97 S.Ct. 236, 50 L.Ed.2d 166 (1976). "When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding ... by judgment notwithstanding the verdict." *Brady v. Southern Railway Co.*, 320 U.S.

476, 479-80, 64 S.Ct. 232, 88 L.Ed. 239 (1943). *See also, Otero v. Hous. Auth. of City of Bridgeport,* 140 F.Supp.2d 157, 163-4 (D.Conn. 2001).

**B.    OFFICER LABONIA IS PROTECTED BY THE DOCTRINE OF QUALIFIED IMMUNITY; THEREFORE, THE COURT MUST ENTER JUDGMENT IN HIS FAVOR ON THE PLAINTIFF'S CLAIMS OF EXCESSIVE FORCE UNDER THE FOURTH AMENDMENT.**

The defendant, Officer Labonia, submits that based on the jury's findings, the court should conclude that the force employed was not excessive as a matter of law based on the version the jury must have believed. If the court declines to resolve that issue, the defendant submits that he is protected by the doctrine of qualified immunity because that portion of the jury's verdict accepted and recorded by the court establishes a conclusive factual basis for determination of the question of qualified immunity by the court.

In the present case, the plaintiff's counsel objected to the Court's consideration of the defendants' renewed Motion for Judgment pursuant to Fed.R.Civ.P. 50 concerning the doctrine of qualified immunity in light of a potential mistrial in the construction of the jury's verdict answering questions A2, A2a and B1. Correctly, the court reserved judgment on both issues. It is well established that Rule 50(b) permits the filing by a party of a renewed motion for judgment as a matter of law even in the event that a mistrial has been declared. *DeMaine v. Bank One Akron, N.A.*, 904 F.2d 219, 220-221 (C.A.4 1990). Rule 50(b) specifically provides that if no verdict was returned by a jury, the Court may, in disposing of a renewed motion, "direct the entry of judgment as a matter of law." It is undisputed that the defendants moved for judgment at the close of

the plaintiff's case. It is undisputed that the defendants renewed their motion for judgment at the close of the defendants' case, before charge and submission to the jury. It is undisputed that the defendants renewed their motion for judgment following the return of the jury's verdict. Accordingly, the court is empowered to address the defendants' pending, renewed motion for judgment and enter judgment in favor of Officer Labonia on the defense of qualified immunity.

### 1. *The Doctrine of Qualified Immunity.*

The defense of qualified immunity shields government agents "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McEvoy v. Spencer*, 124 F.3d 92, 97, (C.A.2 1997) quoting, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is "clearly established" when "[t]he contours of the right [are] . . . sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . [T]he unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). *See, e.g. Malley v. Briggs*, 475 U.S. 335, 341 (qualified immunity protects "all but the plainly incompetent or those who knowingly break the law."); *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985) (officials are immune unless "the law clearly proscribed the actions they took.")

In determining whether a particular right was clearly established at the time defendants acted, the Second Circuit has considered three factors: (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the [Second Circuit] support the existence of the right in

question; and (3) whether under preexisting law a reasonable defendant or official would have understood that his or her acts were unlawful. *Jermosen v. Smith*, 945 F.2d 547, 550 (C.A.2 1991). *See Francis v. Coughlin*, 891 F.2d 43, 46 (C.A.2 1989), *citing Anderson*, 483 U.S. at 640.

It is the order of the examination – that is, this court must consider first whether the right is clearly established, then consider whether the conduct was objectively reasonable. If the right was not clearly established, the inquiry ends, and the official is protected by qualified immunity. *See Poe v Leonard*, 282 F.3d 123 (C.A.2 2002). In the context of cases where defendants may be protected by qualified immunity, factual disputes must be resolved by the jury and the qualified immunity issue is "a question of law better left for the court to decide." *Cowan v. Breen*, 352 F.3d 756, 764-5 (C.A.2 2003), *citing Warren v. Dwyer*, 906 F.2d 70, 76 (C.A.2 1990).

      **2.**       ***It Was Not Clearly Established On August 10, 1999 That It Was Not A Violation Of The Fourth Amendment To Apply A Single Hand Strike, Take An Arrestee To The Ground And Use Pepper Spray In The Face Of Continued Resistance Of Handcuffing.***

The parties presented opposing theories of the case. Essentially, the plaintiff claims he was choked, kneed to the side, kneed to the back, thrown to the ground, pepper sprayed, and kicked and beaten by more than one police officer, perhaps as many as four officers. The plaintiff claimed that he was so beaten for at least 10 minutes, losing consciousness on at least one occasion. Plaintiff denied ever being struck with Officer Labonia's fist. Plaintiff denied ever resisting arrest; denied ever taking a swing at Officer Labonia, and maintained he was completely submissive and

compliant to Officer Labonia's commands. Plaintiff argued that Officer Mable either participated in the unprovoked attack or stood idly by as the attack occurred, breaching his constitutional duty to intervene.

The defendants, on the other hand, presented a version of the events that established Aczel refused to obey Officer Labonia's commands, that Aczel became violent inside the police cruiser, that Aczel took a swing at Officer Labonia, that only after Aczel refused to submit to handcuffing and made a threatening move by turning around did Officer Labonia apply a single hand strike consistent with his training. Despite Officer Labonia's multiple, loud commands to stop resisting, heard by witnesses present nearby, Aczel continued to resist. Officer Labonia, consistent with his training, applied a one-second burst of pepper spray. Shortly thereafter, Officer Mable arrived and he saw Officer Labonia bring Aczel to his feet. Together with Officer Murphy, Officers Labonia and Mable handcuffed Aczel and secured him in Labonia's police cruiser.

Based on the competing versions, it is undisputed that had the jury believed the version presented by the plaintiff, such a use of force would have been excessive, unreasonable and neither officer could possibly be protected by qualified immunity. In 1999 and for along time prior, no reasonable officer could have believed that it was lawful to assault and attack a compliant and submissive suspect as argued by the plaintiff.

However, a single punch is not excessive under these circumstances and it was not clearly established that one punch was excessive in 1999 when faced with a

resisting suspet. In 1995, a police officer did not use excessive force, in violation of Fourth Amendment, when he struck detainee in eye with closed fist while trying to remove detainee, who was unrestrained and resisting, from a vehicle. *Winters v. Adams*, 254 F.3d 758, 764-5 (C.A.8 (Iowa),2001) (Reviewing court finds "incredulous" that "no reasonably competent officer" would have concluded that an officer was justified in striking appellee in the eye during the fracas in the vehicle.).

Similarly, it cannot be said that it was clearly established that the use of pepper spray was unlawful. Courts have consistently concluded that using pepper spray is reasonable, where the plaintiff was either resisting arrest or refusing police requests, such as requests to enter a patrol car or go to the hospital. *See, e.g., Jackson v. City of Bremerton*, 268 F.3d 646, 652- 53 (C.A.9 2001); *Wagner v. Bay City*, 227 F.3d 316, 324 (C.A.5 2000); *Monday v. Oullette*, 118 F.3d 1099, 1104-05 (C.A.6 1997); *Ludwig v. Anderson*, 54 F.3d 465, 471 (C.A.8 1995); *Fernandez v. City of Cooper City*, 207 F.Supp.2d 1371, 1380 (S.D.Fla.2002); *Gainor v. Douglas County*, 59 F.Supp.2d 1259, 1287-88 (N.D.Ga.1998); *Griffin v.  City of Clanton*, 932 F.Supp. 1359, 1369 (M.D.Ala.1996).

Based on the foregoing, it cannot be said that it was clearly established that Officer Labonia's actions were unlawful and violative of the Constitution. This ends the inquiry. No constitutional violation occurred as the jury necessarily believed Officer Labonia's version of events, not the version proffered by the plaintiff, and the Court should enter judgment in favor of Officer Labonia, finding he is protected by the doctrine of qualified immunity.

**3.** ***Reasonable Police Officers Could Disagree Whether It Was Unlawful To Apply A Single Hand Strike, Take An Arrestee To The Ground And Utilize Pepper Spray When Faced With Continued Resistance To Handcuffing Under The Circumstances Presented By Aczel To Officer Labonia On August 10, 1999.***

Based on the factual findings implicit and explicit in the jury's verdict, the court can only conclude as a matter of law that Officer Labonia's actions were objectively reasonable. The jury's verdict establishes that Aczel refused to obey Officer Labonia's commands, that Aczel became violent inside the police cruiser, that Aczel took a swing at Officer Labonia, that only after Aczel refused to submit to handcuffing and made a threatening move by turning around did Officer Labonia apply a single hand strike consistent with his training. Despite Officer Labonia's multiple, loud commands to stop resisting, Aczel continued to resist. Labonia, consistent with his training, apply a one-second burst of pepper spray. Shortly thereafter, Officer Mable arrived and he saw Labonia bring Aczel to his feet. Together with Officer Murphy, Officers Labonia and Mable handcuffed Aczel and secured him in Labonia's police cruiser. There can be no doubt that Officer Labonia's actions were objectively reasonable. The jury's verdict in favor of Officer Mable and to that portion of the verdict in favor of Officer Labonia that was accepted and recorded by the court demonstrates that fact.

With the jury having concluded that Officer Mable was not liable under any theory advanced by the plaintiff, the only reasonable conclusion drawn is that Officer Mable did not use any excessive force on Aczel. Officer Mable did not fail to intervene and from that conclusion, there was no impermissible or unlawful use of force in which Officer

Mable should have intervened. The only permitted version supported by the accepted and recorded verdict as to Officer Mable is the version presented by Officer Labonia.

Like Officer Mable, Officer Labonia was exonerated from any liability on the plaintiff's state law claim of assault and battery. This conclusion has a direct bearing on which version of events the jury chose to believe and upon which this court may conclude that Officer Labonia's use of force was not excessive and objectively reasonable. The Court of Appeals for the Second Circuit has repeatedly recommended to the District Courts to reserve the qualified immunity decision, but to obtain factual findings from the jury that would aid it in deciding the qualified immunity issue. *See Cowan v. Breen*, 352 F.3d 756, 764-5 (C.A.2 2003). The jury's findings enable this court to follow this procedure. The jury's findings, read in context of the jury charge, represents specific findings that:

- Officer Labonia reasonably could have believed that the force he used was reasonable and necessary to effectuate the arrest of Mr. Aczel;

- Officer Labonia reasonably could have believed that the force used upon Mr. Aczel was not violative of the Fourth Amendment; and

- Officer Labonia was justified in using physical force upon Mr. Aczel because he reasonable believed such force was necessary to effectuate the arrest of Mr. Aczel.

Based on these specific findings, this Court can readily determine the qualified immunity issue.

On the state law claim of assault and battery, the court instructed the jury on the defendant's affirmative defense of justification under Conn. Gen. Stat. §53a-22[1] which allows officers to use force in both self-defense and to effectuate arrests. The defense of justification under Conn. Gen. Stat. §53a-22 has a higher burden than the affirmative defense of qualified immunity to a Fourth Amendment claim of excessive force. Conn. Gen. Stat. §53a-22 has a subjective/objective measurement while qualified immunity considers only the objective nature of the officer's actions. *See State v. Smith*, 73 Conn.App. 173, 185-8, 807 A.2d 500, 507-10, *cert. denied*, 262 Conn. 923, 812 A.2d 865 (2002). In finding for Officer Labonia on the plaintiff's assault claim, the jury necessarily found: (1) that Officer Labonia had proven he reasonably believed it was necessary to arrest Mr. Aczel; (2) that he reasonably believed he needed to employ force to arrest Mr. Aczel; (3) that the force so employed was reasonable; and (4) that

---

[1] Conn. Gen. Stat. 53a-22 reads in pertinent part:

(a) For purposes of this section, a reasonable belief that a person has committed an offense means a reasonable belief in facts or circumstances which if true would in law constitute an offense. If the believed facts or circumstances would not in law constitute an offense, an erroneous though not unreasonable belief that the law is otherwise does not render justifiable the use of physical force to make an arrest or to prevent an escape from custody. ...

(b) Except as provided in subsection (a) of this section, a peace officer … is justified in using physical force upon another person when and to the extent that he or she reasonably believes such to be necessary to: (1) Effect an arrest or prevent the escape from custody of a person whom he or she reasonably believes to have committed an offense, unless he or she knows that the arrest or custody is unauthorized; or (2) defend himself or herself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest ...

Officer Labonia was not an aggressor. *See* **Exhibit A,** p. 2. *and* Charge to Jury, pp. 25-6**.**

Moreover, the jury's finding in favor of the defendants on the constitutional claim of false arrest and the state law claim of false imprisonment conclusively establishes that Mr. Aczel's conduct (despite his testimony to the contrary) violated Conn. Gen. Stat. §53a-167, Interfering with an Officer, and Conn. Gen. Stat. §53a-181, Breach of the Peace. Indeed, the jury was instructed on the elements of these crimes. *See* Charge to Jury, p. 20-1. The jury's verdict for the defendants on the federal false arrest claim and the state law false imprisonment claim establishes the illegality of Aczel's conduct and the probable cause for Officer Labonia to arrest Mr. Aczel for those crimes.

As the jury found, a single punch under these circumstances was undoubtedly objectively reasonable. Based on his defensive tactics training, a single hand strike was appropriate. It was measured and it had the effect intended – plaintiff Aczel was turned back around and the perceived threat ended.  *Winters v. Adams*, 254 F.3d 758, 764-5 (C.A.8 (Iowa), 2001) (In an incident that occurred in 1995, police officer did not use excessive force, in violation of Fourth Amendment, when he struck detainee in eye with closed fist while trying to remove detainee, who was unrestrained and resisting, from vehicle. Reviewing court finds "incredulous" that "no reasonably competent officer" would have concluded that an officer was justified in striking appellee in the eye during the fracas in the vehicle.). This is what the jury found and such is fully supported by existing law.

Additionally, pepper spray is an accepted use of force, especially when utilized after the arrestee continues to resist. *Fernandez v. City of Cooper City,* 207 F.Supp.2d 1371 (S.D.Fla.,2002) (Use of pepper spray was reasonable and not excessive where arresting officer's perception that arrestee posed threat to officers and to others, was possibly under influence of alcohol, arrestee violently resisted officers, and would not submit to officers' attempts at restraining him). Courts have consistently concluded that using pepper spray is excessive force in cases where the crime is a minor infraction, the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else. *See, e.g., Headwaters Forest Defense v. County of Humboldt*, 276 F.3d 1125, 1129-30 (C.A.9), *cert. denied sub nom. County of Humboldt v. Burton*, 537 U.S. 1000, 123 S.Ct. 513, 154 L.Ed.2d 394 (2002); *Park v. Shiflett*, 250 F.3d 843, 852-53 (C.A.4 2001); *LaLonde v. County of Riverside*, 204 F.3d 947, 961 (C.A.9 2000); *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir.1994). However, Courts have also consistently concluded that using pepper spray is reasonable, where the plaintiff was either resisting arrest or refusing police requests, such as requests to enter a patrol car or go to the hospital. *See, e.g., Jackson v. City of Bremerton*, 268 F.3d 646, 652- 53 (C.A.9 2001); *Wagner v. Bay City*, 227 F.3d 316, 324 (C.A.5 2000); *Monday v. Oullette*, 118 F.3d 1099, 1104-05 (C.A.6 1997); *Ludwig v. Anderson*, 54 F.3d 465, 471 (C.A.8 1995); *Fernandez v. City of Cooper City*, 207 F.Supp.2d 1371, 1380 (S.D.Fla.2002); *Gainor v. Douglas County*, 59 F.Supp.2d 1259, 1287-88 (N.D.Ga.1998); *Griffin v.  City of Clanton*, 932 F.Supp. 1359, 1369 (M.D.Ala.1996). Furthermore, "'as a means of imposing force, pepper spray is generally of limited intrusiveness,' and it is 'designed to

disable a suspect without causing permanent physical injury.'" *Gainor v. Douglas County*, 59 F.Supp.2d 1259, 1287 (N.D.Ga.1998) (*quoting Griffin v. City of Clanton*, 932 F.Supp. 1359, 1369 (M.D.Ala.1996)). Indeed, pepper spray is a very reasonable alternative to escalating a physical struggle with an arrestee. *Vinyard v. Wilson,* 311 F.3d 1340, 1348 -1349 (C.A.11 (Ga.), 2002).

Accordingly, the jury's responses to the questions posed regarding qualified immunity and assault, with the guidance of the court's instructions to the jury, demonstrate that Officer Labonia acted reasonably, he reasonably believed the force he used was not violative of the Fourth Amendment, and he reasonably believed the forced used was necessary to effectuate the arrest of the plaintiff, particularly in light of the plaintiff's persistent resistance. *See* **Exhibit A**, Verdict Form; Charge to the Jury, pp. 16-26. Accordingly, the defendant, Officer Leonard Labonia, submits that judgment should enter as a matter of law on his affirmative defense of qualified immunity.

### C.   THE JURY'S VERDICT AS EXPRESSED BY THE VERDICT FORM AND THE UNANIMOUS ASSENT OF THE JURORS TO THAT VERDICT IN OPEN COURT MUST BE CONSTRUED TO FIND THAT OFFICER LABONIA IS PROTECTED BY THE ABSOLUTE DEFENSE OF QUALIFIED IMMUNITY.

In the present case, the jury returned a verdict finding that Officer Labonia had used excessive force, but was completely shielded by the doctrine of qualified immunity. On the record, the Court polled the jurors who each assented that they decided to find that Officer Labonia had used excessive force, but Officer Labonia was completely shielded by the doctrine of qualified immunity and therefore, not liable.

Absent extraordinary circumstances, the law assumes that jurors follow the jury instructions. *See Richardson v. Marsh*, 481 U.S. 200, 206, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); *Francis v. Franklin*, 471 U.S. 307, 325 n. 9, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *see also Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 340 (C.A.2 1993). "[O]ur jury system is predicated on the fundamental truth that courts are capable of fashioning adequate and correct instructions on the applicable law, which the jury will understand and follow." *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). It is well established that "juries are presumed to follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).

In the present case, the jury was instructed to find liability before damages. The court recharged the jury on this issue after the verdict form was returned.  The jury was fully charged on the use of excessive force and on the doctrine of qualified immunity. Our law holds that jurors are presumed to follow the instructions. All of the jurors assented in open court that their answer to question A2 – finding excessive force – was in the affirmative and their answer to question A2a – finding qualified immunity – was in the affirmative. The note from the jury, Court Exhibit 5, demonstrates that the jury wanted to exonerate Officer Labonia and find him protected by qualified immunity.  The only rational way to construe the verdict with the evidence in the record – particularly in light of the exoneration of Officer Mable - is to find that Officer Labonia is protected from liability by qualified immunity and that a group of jurors persisted in an effort to award plaintiff his out of pocket expenses notwithstanding.

Accordingly, the court should enter judgment in favor of Officer Labonia on the plaintiff's Fourth Amendment claim, finding Officer Labonia protected by the doctrine of qualified immunity.

**III.     <u>CONCLUSION</u>.**

For the reasons set forth above, the defendant, Leonard Labonia, prays that the Court grants his motion for judgment and finds that he is shielded by the doctrine of qualified immunity on the plaintiff's claim of excessive force and enter judgment in his favor of defendant Labonia on the plaintiff's claim of excessive force.

RESPECTFULLY SUBMITTED,

THE DEFENDANT,
LEONARD LABONIA

/s/ John J. Radshaw, III
Thomas R. Gerarde, ct05640
John J. Radshaw, III, ct19882
Jeffrey E. Potter, ct26356
HOWD & LUDORF, LLC
65 Wethersfield Avenue
Hartford, CT 06114-1190
(860) 249-1361
(860) 249-7665 (fax)

## CERTIFICATION

This is to certify that a copy of the foregoing sent this 27th day of December 2005 via US Mail to all counsel of record.

Tiziana M. Scaccia, Esquire
GOLDSTEIN & PECK, P.C.
1087 Broad Street
P.O. Box 1538
Bridgeport, CT  06601-1538

The undersigned hereby certifies that this pleading is filed in conformance to the Court's Supplemental Order on Motion Filing Procedures.

/s/ John J. Radshaw, III
HOWD & LUDORF, LLC
65 Wethersfield Avenue
Hartford, CT 06114-1190
(860) 249-1361
(860) 249-7665 (fax)