**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JOHN ACZEL                  :        NO.:  3:00CV1802 (PCD)
                            :
v.                          :
                            :
LEONARD LABONIA, ET AL      :        JANUARY 5, 2006


**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR NEW TRIAL**

The defendants submit the following memorandum of law in opposition to the

plaintiff's motion for new trial dated December 21, 2005.


**I.    BACKGROUND.**

The plaintiff, John Aczel, has moved for a new trial on all counts of his complaint

"on the basis that the jury clearly and impermissibly reached a compromise verdict and

that the verdict was internally inconsistent." *See* Doc. #226, Pl. Mem. at 3. The

defendants reject this assertion on both counts and submit that a new trial is not

warranted.

Aczel's primary claim at trial was brought as a violation of the Fourth

Amendment, under 42 U.S.C. § 1983, alleging that he was subject to excessive force

when he was arrested on August 10, 1999. Aczel also joined pendent state law causes

of action for Assault and Battery, False Imprisonment, Abuse of Process, and

Intentional Infliction of Emotional Distress. The defendant police officers, Leonard

Labonia and Ethan Mable, denied liability, and asserted that all of their actions were

reasonable and justified under the circumstances. The case was tried before a jury with

evidence heard on Wednesday, December 7, Thursday, December 8, and Monday,

December 12. Closing arguments and the jury charge took place on Tuesday, December 13.

The jury deliberated from the afternoon of December 13 until late December 14. Late on December 14, the jury announced they have reached a verdict and returned the verdict form, signed by the foreperson, to the court. In that verdict form, (**Exhibit A**), the jury found that Officer Mable was not liable on any claim presented by the plaintiff – state or federal.  All of the questions on the verdict form that pertained to Officer Mable were answered in the negative. *See* **Exhibit A**, pp. 1-2, questions A1-6. Upon reading said verdict, the court accepted and recorded the jury's verdict as to Officer Mable. Also in that verdict form, the jury found that Officer Labonia was not liable on the plaintiff's federal false arrest claim, answering question A1 in the negative. *See* **Exhibit A**, p. 1. Similarly, the jury concluded that Officer Labonia was not liable to the plaintiff on any state law claim, answering the questions A3 – A6 in the negative. *See* **Exhibit A**, p. 2. Upon reading said portion of the verdict, the court accepted and recorded the jury's verdict as to Officer Labonia based on the jury's answers to questions A1, A3-A6.

The jury also concluded that Officer Labonia had used excessive force in the arrest of Mr. Aczel and so indicated by answering question A2 in the affirmative. However, the jury also found that Officer Labonia had proven he was protected by the affirmative defense of qualified immunity by answering question A2a in the affirmative. In open court on the record, the Court polled the jury as a group and each member nodded in assent that they agreed they had found that Officer Labonia had proven his entitlement to the affirmative defense of qualified immunity.

2

Despite instructions that it could not award damages absent a finding of liability, the jury awarded $12,078.61 dollars in damages. The verdict form was possibly confusing to the jury in that it did not clearly instruct the jurors that they could not award damages if they answered either of the qualified immunity questions in the affirmative.[1] The Court instructed the jury to eliminate the finding of damages, as they were not allowed in a case where the defendant police officer had been found to be protected by qualified immunity. The jury refused to comply and the court discharged the jury with the representation it would consider the issue on the defendants' renewed motion for judgment pursuant to Fed.R.Civ.P. 50.[2]

Plaintiff's explanation of these events on brief is both inaccurate and misleading. Not only does the plaintiff misstates the actual chronology of events, the plaintiff ignores the court's instructions to the jury. *See* Pl. Mem. at 2.  While the jury found excessive force, it next found that qualified immunity protected Officer Labonia, and then, either mistakenly or notwithstanding the court's instruction, awarded damages--not the other

---

[1] See Exhibit A, p. 2, Verdict Form. The form reads, in pertinent part:

If you answered "No" with respect to any individual in Interrogatory A1-A6, you should not consider that defendant with respect to any other question that follows. If you answered "No" to every individual listed, then your deliberations are complete.

[2] Defendants have filed a memorandum of law in support of their oral Rule 50 Motion for Judgment. In open court, Plaintiff's counsel objected to the Court's consideration of the defendants' renewed Motion for Judgment pursuant to Fed.R.Civ.P. 50 in light of the claimed potential mistrial now reduced to the present Motion for New Trial dated December 21, 2005. On brief, the plaintiff abandoned this claim that one motion should (or must) be decided before the other. At the trial, the court correctly reserved judgment on both issues. It is well established that Rule 50(b) permits the filing by a party of a renewed motion for judgment as a matter of law even in the event that a mistrial has been declared. *DeMaine v. Bank One Akron, N.A.*, 904 F.2d 219, 220-221 (C.A.4 1990). Rule 50(b) specifically provides that if no verdict was returned by a jury, the Court may, in disposing of a renewed motion, "direct the entry of judgment as a matter of law." It is undisputed that the defendants moved for judgment at the close of the plaintiff's case. It is undisputed that the defendants renewed their motion for judgment at the close of the defendants' case, before charge and submission to the jury.  It is undisputed that the defendants renewed their motion for judgment following the return of the jury's verdict. Accordingly, the court is empowered to address the defendants' pending, renewed motion for judgment and enter judgment in favor of Officer Labonia on the defense of qualified immunity and deny the plaintiff's present motion for new trial.

way around. Further, the jury did not say it could not reach a unanimous verdict on excessive force or qualified immunity; rather, the jury declined to follow the Court's instruction that it could not award damages once it unanimously found that Officer Labonia was entitled to qualified immunity.

Based on the verdict that was recorded and accepted and the evidence presented at trial, the jury could have reasonably found the following facts: Officer Labonia was dispatched to 42 Highland Avenue on August 10, 1999 at about 5:00 pm. Officer Labonia arrived and met Mr. Aczel who walked with him to two females. Before Officer Labonia could commence his investigation, Mr. Aczel began to walk away towards his restaurant and utilized profanity. Mr. Aczel refused to respond to Officer Labonia's commands to stop and return. Fearing that Aczel's return to the building could result in him obtaining a weapon or barricading himself, Officer Labonia determined that Aczel was involved in the situation and that he should briefly detain him in the rear of his police cruiser so that he could safely ascertain the details of the situation. Aczel complied, sitting without handcuffs in the rear of the police cruiser. Officer Labonia then walked back to the two females to continue his investigation.

Before Officer Labonia could materially advance his investigation, Officer Labonia, one of the females, Veronica DeRosa, and a man across the street, saw Mr. Aczel bang his head, hand and feet on interior of the windows of the police cruiser. The banging was so intense that the cruiser rocked on it springs. Seeing the commotion by Aczel, Officer Labonia returned to the patrol cruiser and determined that Aczel's conduct along with Aczel's prior conduct amounted to violations of the law, breach of

the peace and interfering with an officer. Officer Labonia returned to the cruiser with the intention of putting Aczel under arrest and in handcuffs.

When Officer Labonia opened the door to remove Aczel for handcuffing, Aczel threw a punch that Labonia avoided.  Following his defensive tactics training, Officer Labonia took control of Aczel, spinning him around to face away from the officer, and he handcuffed Aczel's left hand. While refusing to allow his right hand to be cuffed, Aczel turned towards Officer Labonia who interpreted that motion as a threat to his safety. Responding in a manner consistent with his defensive tactics training, Officer Labonia applied a single hand strike to Aczel, punching him in the face. The hand strike dazed Aczel who turned back around but still refused to allow his right hand to be handcuffed.

Not able to secure the right hand, Officer Labonia, following his training, took Aczel to the ground and attempted to use this leverage to handcuff Aczel. At this point, Labonia called for backup. Still, Aczel refused and held his right hand underneath his body. Despite several attempts and repeated orders to "stop resisting", Officer Labonia was unable to handcuff Aczel. Consistent with his training, Officer Labonia applied a one-second burst of pepper spray on the face and chest of Aczel in an effort to gain compliance.  Aczel continued to struggle with Officer Labonia. Shortly thereafter, Officer Mable arrived and by the time he exited his cruiser, Officer Labonia had brought Aczel to a standing position. Each taking one arm, Officer Labonia and Officer Mable escorted Aczel back to Labonia's police cruiser. At that time, Officer Karl Murphy arrived. It took all three officers to secure handcuffs on Aczel.

At no time were multiple officers kicking and beating Aczel. At no time was Officer Mable present while Officer Labonia employed excessive and unreasonable

force. The only conclusion that can be drawn form the jury verdict is that the jury believed Officer Labonia's version – Aczel resisted arrest and force was necessary to control him, the use of force was excessive, but a reasonable officer in facing the facts and circumstances known to Labonia would have believed the hand strike and the use of pepper spray was objectively reasonable. The exoneration of Officer Mable by the jury demonstrates that they disbelieved the plaintiff's version that had at least four legs kicking him for 10 minutes or more. The court had instructed the jury on an officer's duty to intervene and by exonerating Officer Mable, they could have only disbelieved the plaintiff's version.

Based on the jury responses to the questions posed regarding qualified immunity and assault, with the guidance of the court's instructions to the jury, undoubtedly, the jury found that Officer Labonia acted reasonably; that he reasonably believed the force he used was not violative of the Fourth Amendment; and that he reasonably believed the forced used was necessary to effectuate the arrest of Mr. Aczel, particularly in light of Aczel's persistent resistance. *See* **Exhibit A**, Verdict Form; **Exhibit B**, Charge to the Jury, pp. 16-26.

Plaintiff has made much of the non-specific colloquy and claim the verdict is internally inconsistent. This is not the case. The jury found excessive force but qualified immunity; taken together, Officer Labonia is not liable, which ends the inquiry. The events at trial do not implicate the plaintiff's Seventh Amendment rights. This result is fair and balanced; there is no seriously erroneous result and no miscarriage of justice. No new trial is warranted as the jury's verdict form can be read in a harmonious

manner. Because Officer Labonia is entitled to qualified immunity, the plaintiff's motion for a new trial should be denied.

## II.     LAW AND ARGUMENT.

### A.     PLAINTIFF IS NOT ENTITLED TO A NEW TRIAL; NOTHING RAISED ON BRIEF OR IN THE RECORD ESTABLISHES A SERIOUSLY ERRONEOUS RESULT OR MISCARRIAGE OF JUSTICE.

Under Fed.R.Civ.P. 59(a) on a motion for a new trial, the district court may consider the credibility of the witnesses and weigh the evidence itself. This is a less stringent standard than that under Rule 50 for judgment as a matter of law. However, "[a] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Caruolo v. John Crane, Inc.*, 226 F.3d 46, 226 F.3d 46, 54 (C.A.2 2000) (citation and internal quotation marks omitted). "Rulings on motions under [Rule 59(a)] are committed to the sound discretion of the district court." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 143 (C.A.2 1998) (citations omitted).

Our Circuit has also stated the following alternative test for deciding a motion for a new trial pursuant to Fed.R.Civ.P. 59(a):

> Rule 61 sets out a workable test for when to grant a new trial, counseling that no error is ground for granting a new trial "unless refusal to take such action appears to the court inconsistent with substantial justice." Fed.R.Civ.P. 61. That is to say, a trial court should be most reluctant to set aside that which it has previously decided unless convinced that it was based on a mistake of fact or clear error of law, or that refusal to revisit the earlier decision would work a manifest injustice. *See Arizona v. California*, 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). Certainly, a trial court should not grant a new trial simply because, like the proverbial second bite at the apple, the losing party believes it can present a better case if afforded another chance.

*LiButti v. United States*, 178 F.3d 114, 118-19 (2d Cir.1999).

"Unlike a motion for judgment as a matter of law, a motion for a new trial may be granted even if there is substantial evidence to support the jury's verdict." *Caruolo*, 226

F.3d at 54 (citation and internal quotation marks omitted). "Also unlike a motion for judgment as a matter of law, a trial judge considering a motion for a new trial 'is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner.'" *United States v. Landau*, 155 F.3d 93, 104 (2d Cir.1998) (citation omitted). Nevertheless, "[w]here the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (C.A.2 (N.Y.) 1992)(citations omitted).

Based on the evidence adduced at trial, (*see, supra*, pp. 4-6), this court cannot conclude that the jury's decision or the disposition argued by the defendants in their Rule 50 motion would be seriously erroneous or a miscarriage of justice. The court cannot say that substantial justice requires a new trial in this case. The plaintiff was heard; the unanimous jury exonerated Officer Mable and concluded Officer Labonia was protected by qualified immunity. The plaintiff's theory of the case cast Mr. Aczel as a compliant, obedient and submissive citizen who was ruthlessly beaten by 3 or more police officers without warning and for no discernable reason whatsoever. Plaintiff's theory included a conspiracy between the offending officers to falsely claim Mr. Aczel was intoxicated and that such conspiracy influenced the EMTs who transported Mr. Aczel to Danbury Hospital and the emergency room physician to ensure the medical records reflected that information. Plaintiff's theory denied Aczel's use of profanity, his denied noncompliance with Officer Labonia's commands, claimed the interior of thhe police cruiser was 98-100 degrees on a day that the weather was in the mid-70s, denied any punch by Officer Labonia and instead complained of choking, being kneed to the

ribs, being kneed to the head and being punched and kicked by at least 4 legs for at least 10 minutes with officers who stood by and watched. Although argued differently at closing, the plaintiff's testimony was the only testimony at trial that supported these claims.

The defendants' theory of the case and the version believed by the jury is much different. Officer Labonia was faced with a possibly intoxicated, belligerent landlord who, already angry with the tenants who had been evicted but were holding over, became more angry with the arrival of the police. Mr. Aczel's anger was manifest in his failure to obey Officer Labonia's commands, his outburst while in the back seat of the cruiser and his resistance when Officer Labonia decided to arrest Mr. Aczel. The resulting incremental uses of force, from the turn, to the hand strike, to the move to the ground, to the pepper spray and resultant handcuffing by three officers were dictated by Mr. Aczel's noncompliance with Officer Labonia's commands to "stop resisting". It took three officers to secure handcuffs on Aczel and to secure him inside Labonia's police cruiser. Officer Labonia was on scene, alone, until Officers Mable and Murphy arrived. Mr. Aczel was never kicked by a group of officers for 10 minutes or more. From beginning to end, Officer Labonia was on scene for about 10 to 12 minutes and once Mable and Murphy arrived, Officer Labonia and Mr. Aczel left for Danbury Police Headquarters within 1 or 2 minutes. The defendants' version of events is supported by the officers' testimony and the testimony of Fesh and DeRosa.

Based on the result as evidenced by the verdict form, the only conclusion is that the jury believed the defendants' version. Based on the competing versions, the jury's choice to believe one version over another, particularly as the evidence developed in

the present case, does not represent a seriously erroneous result. Plaintiff's essential claims were not substantiated by any other evidence that his own self-serving, inconsistent testimony. The objective, non-party witnesses, David Fesh and Veronica DeRosa, corroborated more of the defendants' version of the events. To the extent they could not corroborate, either they had failed to remember or were not in a position to observe. In this case, the jury had to pick which side to believe – and they did. They believed the defendants. This is not a miscarriage of justice.  Certainly, a trial court should not grant a new trial simply because, like the proverbial second bite at the apple, the losing party believes it can present a better case if afforded another chance.  At no time were multiple officers kicking and beating Aczel. At no time was Officer Mable present while Officer Labonia employed excessive and unreasonable force.  The only conclusion that can be drawn form the jury verdict is that the jury believed Officer Labonia's version – Aczel resisted arrest and force was necessary to control him, the use of force was excessive, but a reasonable officer in facing the facts and circumstances known to Labonia would have believed the hand strike and the use of pepper spray was objectively reasonable. The exoneration of Officer Mable by the jury demonstrates that they disbelieved the plaintiff's version that had at least four legs kicking him for 10 minutes or more. The court had instructed the jury on an officer's duty to intervene and by exonerating Officer Mable, they could have only disbelieved the plaintiff's version.

The single punch by Officer Labonia was not excessive under these circumstances and it was not clearly established that one punch was excessive in 1999 when faced with a resisting suspect. In 1995, a police officer did not use excessive

force, in violation of Fourth Amendment, when he struck detainee in eye with closed fist while trying to remove detainee, who was unrestrained and resisting, from a vehicle. *Winters v. Adams*, 254 F.3d 758, 764-5 (C.A.8 (Iowa),2001) (Reviewing court finds "incredulous" that "no reasonably competent officer" would have concluded that an officer was justified in striking appellee in the eye during the fracas in the vehicle.). Similarly, it cannot be said that it was clearly established that the use of pepper spray was unlawful. Courts have consistently concluded that using pepper spray is reasonable, where the plaintiff was either resisting arrest or refusing police requests, such as requests to enter a patrol car or go to the hospital. *See, e.g., Jackson v. City of Bremerton*, 268 F.3d 646, 652- 53 (C.A.9 2001); *Wagner v. Bay City*, 227 F.3d 316, 324 (C.A.5 2000); *Monday v. Oullette*, 118 F.3d 1099, 1104-05 (C.A.6 1997); *Ludwig v. Anderson,* 54 F.3d 465, 471 (C.A.8 1995); *Fernandez v. City of Cooper City*, 207 F.Supp.2d 1371, 1380 (S.D.Fla.2002); *Gainor v. Douglas County*, 59 F.Supp.2d 1259, 1287-88 (N.D.Ga.1998); *Griffin v.  City of Clanton*, 932 F.Supp. 1359, 1369 (M.D.Ala.1996). Furthermore, "'as a means of imposing force, pepper spray is generally of limited intrusiveness,' and it is 'designed to disable a suspect without causing permanent physical injury.'" *Gainor v. Douglas County*, 59 F.Supp.2d 1259, 1287 (N.D.Ga.1998) (*quoting Griffin v. City of Clanton*, 932 F.Supp. 1359, 1369 (M.D.Ala.1996)). Indeed, pepper spray is a very reasonable alternative to escalating a physical struggle with an arrestee. *Vinyard v. Wilson*, 311 F.3d 1340, 1348 -1349 (C.A.11 (Ga.), 2002). Officer Labonia's use of pepper spray was consistent with his training and singularly reasonable under the circumstances when viewed in the context of existing law.

Based on the facts reasonably found by the jury and establish law discussed above, it cannot be said that the jury "reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Caruolo v. John Crane, Inc.*, 226 F.3d 46, 226 F.3d 46, 54 (C.A.2 2000). The evidence adduced at trial and established by the verdict form that Officer Labonia acted in accordance with his training and such establishes his entitlement to qualified immunity. *See Greene v. Barber*, 310 F.3d 889, 898, 899 (6th Cir. 2002) (Given the fact that the defendant officer was simply following established departmental procedures for dealing with non-cooperative arrestees, we do not think he should be deemed to have known that his conduct might be illegal. The district court thus acted properly in granting him qualified immunity on this score.).

Therefore, the plaintiff's motion for new trial should be denied.

**B.    THE JURY'S VERDICT IS NOT INCONSISTENT AND THE COURT IS OBLIGATED TO READ THE VERDICT IN A HARMONIOUS MANNER; THE JURY CONSISTENTLY FOUND THAT OFFICER MABLE WAS COMPLETELY EXONERATED AND OFFICER LABONIA, TO THE EXTENT NOT LIABLE ON OTHER CLAIMS, WAS PROTECTED BY THE DOCTRINE OF QUALIFIED IMMUNITY.**

To the extent that the plaintiff so claims, Fed.R.Civ.P. 59(a) motion for new trial is also an appropriate vehicle for a party to challenge a jury verdict on the ground that it is inconsistent. *See Hardy v. Saliva Diagnostic Sys., Inc.*, 52 F.Supp.2d 333, 339-40 (D.Conn.1999). This ground for a new trial arises from the requirement that, "[w]hen a jury returns a verdict by means of answers to special interrogatories, the findings must be consistent with one another, as they form the basis for the ultimate resolution of the action." *Crockett v. Long Island R.R.*, 65 F.3d 274, 278 (C.A.2 1995) (citation omitted). The defendants reject any characterization of the verdict as inconsistent.

However, "[w]hen confronted with a potentially inconsistent jury verdict, the court must 'adopt a view of the case, if there is one, that resolves any seeming inconsistency.'" *Turley v. Police Dep't of the City of N.Y.*, 167 F.3d 757, 760 (C.A.2 (NY) 1999) (citation omitted). "Before a court may set aside a special verdict as inconsistent and remand the case for a new trial, it must make every attempt 'to reconcile the jury's findings, by exegesis if necessary.'" *Id.* (citations omitted); *see also Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (C.A.2 1995) ("A court's role is to reconcile and preserve whenever possible a seemingly inconsistent jury verdict." (citations omitted)). Thus, "if the answers returned by the jury appear to be inconsistent with one another, '[i]t is the duty of the district court to attempt to harmonize the jury's answers, if it is at all possible under a fair reading of the responses.'" *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (C.A.2 (NY) 1995)(citation omitted). "The court must search for a reasonable way to read the verdicts as expressing a coherent view of the case . . . and if there is any way to view a case that makes the jury's answers to the special verdict form consistent with one another, the court must resolve the answers that way even if the interpretation is strained." *McGuire v. Russell Miller*, 1 F.3d 1301, 1311 (C.A.2 (NY) 1993) (citations omitted). "The district court should refer to the entire case and not just the answers themselves." *Id.* (citation omitted).

The verdict form may be read in a harmonious manner, notwithstanding the plaintiff's argument to the contrary. That reading is found in the court's instructions to the jury and the answers in the verdict form themselves. The jury was instructed on the law of excessive force, qualified immunity, state law assault, justification, and the consideration of liability before damages. *See* Charge to the Jury, pp. 16-26, 30. In

particular, the court instructed the jury "negligent conduct is not a basis for a constitutional violation." Charge to the Jury, pp. 16-7. Further, the court instructed the jury that on the question of excessive force, the jury must consider whether one or more of the defendants committed the acts alleged and whether a defendant was in a position to intervene and prevent excessive force, but failed to intervene. *Id.*, p. 18. The court instructed the jury that officers may use force to effectuate an arrest and such a use of force is measured by the reasonableness of that officer's conduct. *Id.* Moreover, the court instructed the jury that the reasonableness of the use of force must b judged objectively, not with the knowledge of hindsight. *Id.* The court also instructed the jury that a citizen may not resist arrest, even if he or she thinks the arrest is unlawful. *Id.*, p. 19. The court specifically instructed the jury not to consider any subjective belief held by Officer Labonia. *Id.*

On the issue of qualified immunity, the court charged the jury that this defense operated to excuse the defendants from any liability. Charge to the Jury, p. 22. The court instructed the jury that the defendant officers are entitled to a qualified immunity defense if they found it was objectively reasonable for the officers to believe their acts did not violate the plaintiff's rights. *Id.*, p. 22. To be entitled to the absolute defense of qualified immunity, the court specially instructed the jury that they needed to find that the officers' conduct was within the scope of their duties and "***their conduct was not violative of constitutional rights clearly established at the time of the conduct.***" *Id.*, p. 23. (emphasis added). The court went on to instruct the jury that an officer would be entitled to the absolute defense of qualified immunity if "he had a reasonable objective belief that the force used was reasonable necessary." *Id.*

On the state law claim of assault and battery, the court instructed the jury that an assault is an unlawful touching that is negligent, reckless or intentional. *See* Charge to Jury, p. 24. The court instructed the jury that a police officer is privileged in his or her use of force and such use of force is permitted is an officer "reasonably believes such to be necessary to: (1) Effect an arrest or prevent the escape from custody of a person whom he reasonable believes to have committed an offense, unless he knows that the arrest or custody is unauthorized; or (2) defend himself or a third person from the use of physical force was effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape." *Id.*, pp. 24-5. The court instructed the jury that the defendants needed to prove they were not the aggressors in order to take advantage of this affirmative defense. *Id.*, pp. 25-6. The court also instructed the jury that it was the defendants' burden to establish his entitlement to justification, including the absence of aggression. *Id.*

Importantly, the court also charged the jury to consider the question of liability before the question of damages. *See* Charge to the Jury, p. 30.  The court specifically instructed that "[the jury] should not consider the question of damages unless and until you decided the issue of liability in favor of the plaintiff." *Id.* Later, the court recharged the jury on this question and repeated that if they did not find liability, they could not consider the question of damages. Reading these instructions together, the jury followed its instructions with the exception of one line on the verdict form itself.

Where "the district court properly instructed the jury on the elements of plaintiffs' causes of action," the Second Circuit has held that "[t]here is a strong presumption that the jury in reaching its verdict complied with those instructions." *Bingham v. Zolt*, 66

F.3d 553, 563 (2d Cir.1995) (citation omitted). As such, "[a] jury's verdict reached after proper instructions must be upheld where there is a reasonable explanation for the jury's seemingly inconsistent answers." *Id.* It is undisputed that the court's instructions to the jury must control. The court heard the evidence, it gave the jury charge, it has the verdict form and the polling of the jury in open court; no new trial is warranted; Officer Labonia is protected by qualified immunity.

The court must adopt a view of the case that resolves any seeming inconsistency.'" *Turley v. Police Dep't of the City of N.Y.*, 167 F.3d 757, 760 (C.A.2 (NY) 1999). It must make every attempt "to reconcile the jury's findings" *Id.* (citations omitted); *see also Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (C.A.2 1995). The defendants discussion above establishes the fair reading and nothing advanced by the plaintiff suggests otherwise.

Plaintiff's order of analysis misapprehends the jury instructions and the order of the questions in the verdict form. In the plaintiff's mind, the jury found excessive force, awarded damages, yet found qualified immunity. There is no support for that claim given the form itself, the charge, and the polling of the jury. Plaintiff claims no unanimity on the questions of excessive force and qualified immunity. That is incorrect. The jury was merely declined to follow the court's instructions to eliminate damages after being recharged.

The plaintiff relies on *Atkins v. City of New York*, 143 F.3d 100 (C.A.2 1998) and *Maher v. Isthmain Steamship Co.*, 253 F.2d 414 (C.A.2 1958), for the proposition that the plaintiff is entitled to a new trial on all questions, liability and damages. Further, the plaintiff attempts to employ *Atkins* as some rule of law pertaining to compromise

verdicts. Rather than support his claim, *Maher* supports the defendant's position that "Deadlocked" or colloquies are not some indicia of compromise.

In *Atkins*, the plaintiff claimed to have suffered from excessive force and false arrest at the hands of four police officers. In *Atkins*, the jury found that one officer had falsely arrested and detained the plaintiff and the same officer had used excessive force to stop and arrest him; that two other police officers present had failed to intervene in the arrest and use of excessive force. A fourth officer was exonerated. Based on this verdict, the jury awarded the *Atkins* plaintiff $1 in nominal damages, denying him compensatory and punitive damages. The plaintiff moved for a new trial. The district court denied that motion and the plaintiff appealed, complaining that the damages award was inadequate. The Court of Appeals reversed, finding the substantial evidence of the plaintiff's injuries was inconsistent with a finding of liability and a nominal damages award. There is no mention of the application of the doctrine of qualified immunity by the district court or the court of appeals or whether the judge or jury even considered that issue. With no finding on the application of qualified immunity as to any one of the police officers in Atkins, the case cannot serve as support for Aczel's argument that his damage award is inadequate.

The decision in *Maher v. Isthmain Steamship Co.*, 253 F.2d 414 (C.A.2 1958), is similarly inapplicable. In *Maher*, the substance of plaintiff's claim is that the injuries were so serious (herniated disc, prolonged unemployment) and the pain and suffering of plaintiff so self-evident, that an award of $3,500 dollars was inadequate and the result of an improper compromise between the jurors who wanted to find for the ship owner and those who wished to award substantial damages far in excess of what plaintiff regards

as an obviously inadequate sum. Id. at 416 . The *Maher* plaintiff complained that this represented a condition known as a "quotient" verdict. *See Id.*  The *Maher* court established the rule that "the record itself viewed in its entirety must clearly demonstrate the compromise character of the verdict, otherwise it is not error for the trial judge to refuse to set the verdict aside on this ground." In applying that principle, the court of appeals found the verdict should stand. In *Maher*, the jury's report of being 'hopelessly deadlocked' is of no significance. Similarly, the court of appeals held that no pressure of any kind was exerted on the jury; nor had the deliberations of the jury been unduly prolonged. Therefore, no compromise existed and jury's claim of being "deadlocked" did not establish any evidence of same.

The plaintiff's reliance on *Finnegan v. Fountain*, 915 F.2d 817 (C.A.2 1990) is similarly misplaced. As a threshold matter, the Court of Appeals in *Finnegan* utilized an interpretation of the doctrine of qualified immunity that was odds with the Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194 (2001). *See, Saucier*, 533 U.S. at 204. On that basis alone, *Finnegan* offers no support for the plaintiff's claims. Furthermore, the procedure utilized by the court in *Finnegan* was entirely different than the procedure in the present case. In *Finnegan*, the court posed more special interrogatories than simply whether the defendant officer was protected by qualified immunity. In *Finnegan*, the court improperly injected a "good faith" component into the qualified immunity defense and when it also asked whether the defendant officers' conduct was "malicious, wanton or oppressive". *See Finnegan*, 915 F.2d at 819-20. No such questions were asked in the present case. Therefore, the inconsistency found in *Finnegan* is not present in the present case.

Similarly, the Court of Appeals decision in *Stephenson v. Doe*, 332 F.3d 68 (C.A.2 2003) is inapplicable. The case is factually distinguishable as it involved the use of deadly force when a police officer shot a fleeing suspect in the back. As recognized in *Stephenson*, such conduct is clearly established as unlawful, if true. In this case, the forensic evidence showed that the plaintiff was shot in the back. It has been long held that no reasonable officer would believe shooting someone in the back it lawful or reasonable. In this case, the factual basis of the event and the answers to the special interrogatories did not allow the court to separate out the officers' claimed mistake – about the facts (which goes to the constitutional violation in the first instance) or about the law (which goes to the question of objective reasonableness). In *Stephenson*, the inconsistency did not arise from the answers to the special interrogatories themselves, but only when informed by the facts of the case, particularly the use of deadly force against a fleeing felon who posed no danger to the officer in question.

The district court's decision in *Kent v. Katz*, 327 F.Supp.2d 302 (D. Vt. 2004) shows the plaintiff's flawed application of *Stephenson*. In *Kent*, the district court denied the plaintiff's motion for judgment as a matter of law when the jury found that the officer in question had used excessive force, but was protected by qualified immunity. Like in *Stephenson v. Doe*, the *Kent* plaintiff claimed the instructions on excessive force and qualified immunity both required the jury to determine whether the defendant police officer acted reasonably when using force to arrest him. The *Kent* plaintiff contended the jury rendered a legally inconsistent verdict when it determined that the defendant police officer had used excessive force against him , but was nevertheless entitled to qualified immunity on that claim.

The *Kent* court found that argument without merit. Relying on *Saucier v. Katz*, the *Kent* court observed that the reasonableness inquiry in a qualified immunity determination is distinct from the reasonableness inquiry in an excessive force determination. Further, the K*ent* court observed that in *Saucier*, the Supreme Court explained that the inquiry as to whether a police officer used excessive force hinges on the facts and circumstances facing the officer at the scene. Correctly, the court observed that an officer could be reasonably mistaken about a given fact, for example, whether a suspect was likely to fight back, and would therefore be justified in using more force than was needed. Also, the court observed In contrast, in a qualified immunity determination the relevant question is whether the officer's mistake about the legality of his conduct was reasonable. In resolving the verdict finding for the plaintiff on the excessive force claim, the *Kent* court held that jury could have concluded that defendant police officer was unreasonably mistaken about the facts and circumstances facing him during the incident with the plaintiff and was therefore unreasonably mistaken about the appropriate level of force needed to arrest him. But the jury also could have found that the defendant officer reasonably believed the amount of force he used to arrest the plaintiff was legal, and thus concluded that the defendant police officer was entitled to qualified immunity. The *Kent* court held these were legally consistent determinations that a reasonable jury could have reached." Although unpublished, the Court of Appeals affirmed the district court's decision. *See Kent v. Katz*, No. 125 Fed.Appx. 334 (2005)[3].

---

[3] The Court of Appeals in Kent v. Katz, No. 04-0880, 2005 WL 38794 (C.A.2 Feb. 17, 2005) held that:

[i]insofar as the defense in this case was that it was reasonable for defendant to believe his conduct was lawful because the conduct (the relevant wrist-hold restraining maneuver) was consistent with

This is exactly the situation posed in the present case. Officer Labonia repeatedly referred to his training as the basis for his action. None of that testimony was ever impeached or contradicted. Recalling the salient portion of the evidence, when Officer Labonia opened the door to remove Aczel for handcuffing, Aczel threw a punch that Labonia avoided. *Following his defensive tactics training*, Officer Labonia took control of Aczel, spinning him around to face away from the officer, and he handcuffed Aczel's left hand. While refusing to allow his right hand to be cuffed, Aczel turned towards Officer Labonia who interpreted that motion as a threat to his safety. *Responding in a manner consistent with his defensive tactics training*, Officer Labonia applied a single hand strike to Aczel, punching him in the face. The hand strike dazed Aczel who turned back around but still refused to allow his right hand to be handcuffed.

Not able to secure the right hand, Officer Labonia, *following his training*, took Aczel to the ground and attempted to use this leverage to handcuff Aczel. At this point, Labonia called for backup. Still, Aczel refused and held his right hand underneath his body. Despite several attempts and repeated orders to "stop resisting", Officer Labonia was unable to handcuff Aczel. *Consistent with his training*, Officer Labonia applied a one-second burst of pepper spray on the face and chest of Aczel in an effort to gain compliance. Aczel continued to struggle with Officer Labonia. Shortly thereafter, Officer Mable arrived and by the time he exited his cruiser, Officer Labonia had brought Aczel to a standing position. Each taking one arm, Officer Labonia and Officer Mable escorted

---

his police training, the jury was required to make the factual determination whether defendant in fact believed his conduct to be consistent with his training. Thus, even if the ultimate legal decision had been left to the Court, the jury's factual finding that defendant's actions were consistent with his police training (and that he believed them to be consistent) indicates that those actions would not be found 'clearly unlawful.'").

125 Fed.Appx. at 335.

Aczel back to Labonia's police cruiser. At that time, Officer Karl Murphy arrived. It took

all three officers to secure handcuffs on Aczel. Thus, the jury's finding that qualified

immunity applied establishes the factual basis that Officer Labonia acted in accordance

with his training. Thus, the concerns presented in *Stephenson* are inapplicable to the

present case. *See also Greene v. Barber*, 310 F.3d 889, 898, 899 (6th Cir. 2002) (Given

the fact that the defendant officer was simply following established departmental

procedures for dealing with non-cooperative arrestees, we do not think he should be

deemed to have known that his conduct might be illegal. The district court thus acted

properly in granting him qualified immunity on this score.).

Accordingly, the plaintiff's motion for a new trial must be denied.

## III.   **CONCLUSION**.

For the reasons set forth above, the defendant, Leonard Labonia, prays that the

Court denies the plaintiff's motion for new trial, grants his motion for judgment as a

matter of law, and finds that he is shielded by the doctrine of qualified immunity on the

plaintiff's claim of excessive force and enters judgment in his favor of defendant Labonia

on the plaintiff's claim of excessive force.

RESPECTFULLY SUBMITTED,

THE DEFENDANT,
LEONARD LABONIA
/s/John J. Radshaw, III
Thomas R. Gerarde, ct05640
John J. Radshaw, III, ct19882
Jeffrey E. Potter, ct26356
HOWD & LUDORF, LLC
65 Wethersfield Avenue
Hartford, CT 06114-1190
(860) 249-1361
(860) 249-7665 (fax)

## **CERTIFICATION**

This is to certify that a copy of the foregoing sent this 5th day of January 2006 via US Mail to all counsel of record.

Tiziana M. Scaccia, Esquire
GOLDSTEIN & PECK, P.C.
1087 Broad Street
P.O. Box 1538
Bridgeport, CT  06601-1538

The undersigned hereby certifies that this pleading is filed in conformance to the Court's Supplemental Order on Motion Filing Procedures.

/s/John J. Radshaw,III
HOWD & LUDORF, LLC
65 Wethersfield Avenue
Hartford, CT 06114-1190
(860) 249-1361
(860) 249-7665 (fax)